UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

..............................................
                                            :
UNITED STATES OF AMERICA,                   :
                                            :         Case Number:
        Plaintiff,                          :         6:22-cr-00102-WWB-RMN-1
                                            :
v.                                          :         Orlando, Florida
                                            :         June 20, 2023
                                            :         Excerpt of Volume 1 of 3
                                            :
BRIAN PATRICK DURNING,                      :
                                            :
        Defendant.                          :
                                            :
..............................................


REDACTED TRANSCRIPT OF EXCERPT OF JURY TRIAL
VOIR DIRE PROCEEDINGS
BEFORE THE HONORABLE WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          Michael Felicetta
                            Courtney D. Richardson-Jones
                            U.S. ATTORNEY'S OFFICE
                            400 West Washington Street
                            Suite 3100
                            Orlando, Florida 32801

For the Defendant:          Jeremy Lasnetski
                            LASNETSKI GIHON LAW
                            121 West Forsyth Street
                            Suite 520
                            Jacksonville, Florida 32202

Proceedings recorded by real-time mechanical stenography.
Transcript produced by computer-aided transcription.

Stenographically reported before:
Heather Suarez, RDR, CRR, FCRR, FPR-C, WA CCR, CA CSR
FPR-C #790 | WA CCR #23017624 | CA CSR #14538
(407) 801-8921 | heather@stenosuarez.com
PO Box 3574, Orlando, Florida 32802

1

**T A B L E   O F   C O N T E N T S**

2

**June 20, 2023**
**Excerpt of Volume 1 of 3**

3

PAGE

4

5

VOIR DIRE (PANEL 1) .......................................3

6

CAUSE CHALLENGES ........................................85

7

INDIVIDUAL VOIR DIRE
     Prospective Juror 1 ...............................88
8    Prospective Juror 9 ...............................91
     Prospective Juror 12 ..............................92
9    Prospective Juror 14 ..............................93
     Prospective Juror 19 ..............................95
10   Prospective Juror 21 ..............................96

11

CAUSE CHALLENGES ........................................98

12

PEREMPTORY CHALLENGES ...................................98

13

VOIR DIRE (PANEL 2) .....................................103

14

INDIVIDUAL VOIR DIRE
     Prospective Juror 31 .............................146
15   Prospective Juror 39 .............................147

16

CAUSE CHALLENGES .......................................149

17

PEREMPTORY CHALLENGES ..................................150

18

INDIVIDUAL VOIR DIRE OF PROSPECTIVE JUROR 42 ..............153

19

PEREMPTORY CHALLENGES ..................................165

20

COLLOQUY RE: BODY CAM FOOTAGE ..........................167

21

CERTIFICATE OF REPORTER ................................170

22

23

24

25

1          **P R O C E E D I N G S**

2          (The following is an excerpt of these proceedings.)

3                          * * * * *

4          (Venire Panel 1 in at 9:26 AM.)

5          **THE COURT:**  Good morning, and welcome to the

6    United States District Court for the Middle District of

7    Florida.  My name is Judge Berger, and I'll be the judge

8    presiding over the case that we are selecting a jury for this

9    week.  It's a criminal trial, the United States v. Brian

10   Patrick Durning.

11         Before we begin, let me introduce to you our

12   courtroom personnel as well as the attorneys for the Government

13   and the attorneys for Mr. Durning.

14         Regina Fermer is my courtroom deputy.  She keeps a

15   record of everything that's going on in the courtroom today.

16   She maintains all of the evidence, basically, makes sure that

17   everything runs smoothly.

18         Heather Suarez over here is my court reporter.

19   She'll be taking down everything that we say today and

20   throughout the course of this trial.  So what I ask of

21   everyone -- and we do pass a microphone around -- is if

22   everyone will speak clearly so that she can take everything

23   down and loud enough so that we can all hear you.

24         And it's difficult to take down "uh-huhs" and

25   "uh-uhs" and nods of the head.  We know what you are saying,

but it reads kind of funny sometimes in a transcript; and so if

you say "uh-huh" or "uh-uh," I may say, "Is that a yes?" or "Is

that a no?"  And although I know what you mean -- I do it

throughout the course of the trial with witnesses too, because

it's just the way we talk.  I may ask that so -- just so we can

make sure that the record is clear.

But, anyway, she takes down everything that is going

on in the courtroom.

Kassandra Reardon, who is over here, is my law clerk,

and she helps me with any legal issues that may come up

throughout the course of the trial, and so she will be in here

throughout the entire trial as well.

Carlos Noriega back there is my court security

officer.  You will get to know him very well because he will

help you as you come and go from the courtroom.  If you have

any questions -- if we are on a break and outside the

courtroom, if you have any questions or concerns, whether it be

today or if you are selected to serve as a juror in this case,

throughout the course of the week, if you will let Carlos know

and then he will inform me.

The assistant United States attorneys trying this

case are Courtney Richardson-Jones and Michael Felicetta; and

counsel for the defendant is Jeremy Lasnetski, and then sitting

next to him is the defendant in this case, Brian Patrick

Durning.

1             Do any of you know any of the counsel or Mr. Durning?

2             No?

3             **THE VENIRE:**  No.

4             **THE COURT:**  Okay.  I'm going to read off a list of

5   names of potential witnesses in this case.  They may or may not

6   be called, but I do have a list here; so I'm going to read them

7   off, and if you could let me know whether or not any of you

8   know any of these witnesses.

9             The first is Z█ B█.  Do any of you know Miss B█?

10            **THE VENIRE:**  No.

11            **THE COURT:**  Stacey Sherretta?

12            **THE VENIRE:**  No.

13            **THE COURT:**  Rick Krum?

14            **THE VENIRE:**  No.

15            **THE COURT:**  Sharon Joseph?

16            **THE VENIRE:**  No.

17            **THE COURT:**  Tabari Francis?

18            **THE VENIRE:**  No.

19            **THE COURT:**  Antonio Cento?

20            **THE COURTROOM DEPUTY:**  No.

21            **THE COURT:**  Pedro Maldonado.

22            **THE VENIRE:**  No.

23            **THE COURT:**  Rachelle McCoy?

24            **THE VENIRE:**  No.

25            **THE COURT:**  Mario Lopez?

| | |
|---|---|
| 1 | THE VENIRE:  No. |
| 2 | THE COURT:  Wilfredo Sanchez, Jr.? |
| 3 | THE VENIRE:  No. |
| 4 | THE COURT:  Officer Brian Piña of the Orlando Police |
| 5 | Department? |
| 6 | THE VENIRE:  No. |
| 7 | THE COURT:  Federal Air Marshal Nason Miner? |
| 8 | THE VENIRE:  No. |
| 9 | THE COURT:  Deputy U.S. Marshal Anthony Helicio? |
| 10 | THE VENIRE:  No. |
| 11 | THE COURT:  Task Force Officer D'Arcangelis of the |
| 12 | FBI? |
| 13 | THE VENIRE:  No. |
| 14 | THE COURT:  Mary Tramontin? |
| 15 | THE VENIRE:  No. |
| 16 | THE COURT:  Officer Juan Pomales? |
| 17 | THE VENIRE:  No. |
| 18 | THE COURT:  Chris Luscher? |
| 19 | THE VENIRE:  No. |
| 20 | THE COURT:  David Hammett? |
| 21 | THE VENIRE:  No. |
| 22 | THE COURT:  Marian Fernandes? |
| 23 | THE VENIRE:  No. |
| 24 | THE COURT:  Okay.  Now, the defendant in this case is |
| 25 | charged with three criminal counts by superseding indictment. |

1    The United States alleges in Count 1 that on or about

2 June 24th of 2022, the defendant, Brian Patrick Durning, while

3 on an aircraft in flight in the special aircraft jurisdiction

4 of the United States, specifically, Delta Flight 2954 from

5 Los Angeles International Airport to Orlando International

6 Airport, did knowingly and willfully commit the act of abusive

7 sexual contact with a child.

8    In Count 2 the Government alleges that on or about

9 June 24th of 2022, the defendant, while on an aircraft in

10 flight in the special aircraft jurisdiction of the

11 United States, specifically, Delta Flight 2954 from Los Angeles

12 International Airport to the Orlando International Airport, did

13 knowingly and willfully commit the act of assault resulting in

14 serious bodily injury to an individual who has not attained the

15 age of 16 years.

16    And in Count 3 -- alleges that on or about June 24th

17 of 2022, the defendant, while on an aircraft in flight in the

18 special aircraft jurisdiction of the United States,

19 specifically, Delta Flight 2954 from Los Angeles International

20 Airport to Orlando International Airport, did knowingly and

21 willfully commit the act of assault resulting in serious bodily

22 injury.

23    Counts 1, 2, and 3 are alleged to be violations of

24 federal law.

25    Have any of you read any newspaper accounts of this

1  case?  Heard about it on television or radio at all?

2       THE VENIRE:  No.

3       PROSPECTIVE JUROR 27:  I have.

4       THE COURT:  One second.  We need a microphone for you

5  real quick.

6       Ms. -- is it Beitia?

7       PROSPECTIVE JUROR 27:  Beitia.

8       THE COURT:  Beitia.  Okay.  Do not go into any detail

9  about what you've heard at all.

10      PROSPECTIVE JUROR 27:  Well, I didn't read the whole

11 thing.  I don't read all the articles.  I am a flight attendant

12 for 15 1/2 years, and we do get a lot of information regarding

13 what happens and occurs in the airline industry.

14      THE COURT:  Okay.  Based on what you have heard or

15 what you have read, have you formed any opinion as you sit here

16 today as to the guilt or innocence of Mr. Durning?

17      PROSPECTIVE JUROR 27:  Not at all.  Not at all.

18      THE COURT:  All right.  Do you believe that you could

19 sit -- having not heard anything right now about the case --

20 sit, listen to the evidence, and fairly render a verdict if you

21 were called to do so?

22      PROSPECTIVE JUROR 27:  Can you repeat the question?

23 Are you saying if I can sit here --

24      THE COURT:  Do you believe, you know, based on the

25 fact that you've read something about this case, although

1    you've indicated you've not formed an opinion -- do you believe

2    that you could sit, listen to the evidence in this case, and

3    render a fair and impartial verdict if you were called upon to

4    do so?

5         PROSPECTIVE JUROR 27:  I'm not sure.

6         THE COURT:  Okay.  That's fine.  Thank you.

7         Let me go over -- anybody else?  I don't see any

8    hands.  Okay.

9         Let me go over with you the burden of proof.

10        First, the defendant is presumed innocent until

11   proven guilty.  The superseding indictment against the

12   defendant brought by the Government is only an accusation and

13   nothing more.  It's not proof of guilt or anything else.

14        And the burden of proof is on the Government.  The

15   defendant has no burden to prove his innocence or to present

16   any evidence at all or to testify, and since the defendant has

17   the right to remain silent and choose whether or not to

18   testify, you cannot legally put any weight on a defendant's

19   decision not to testify because it is not evidence.

20        Do you all understand?

21        THE VENIRE:  Yes.

22        THE COURT:  Anybody have any problem with that?

23        THE VENIRE:  No.

24        THE COURT:  Okay.  What I'm going to do now is I'm

25   going to start with Ms. Vincent.

1    **PROSPECTIVE JUROR 1:**  Yes.

2    **THE COURT:**  And I'm just going to go through and ask

3    each of you some individual questions so we can get to know you

4    a little bit more.  And I'll go through a series of questions.

5    And, Mr. Costello, by the time we get to you, you're

6    going to be able to rattle these off just like this

7    (indicating).

8    First, can you tell us your full name, please.

9    **PROSPECTIVE JUROR 1:**  Laura Lynn Vincent.

10   **THE COURT:**  And what's your date of birth?

11   **PROSPECTIVE JUROR 1:**  ███████, 1970.

12   **THE COURT:**  And which part of the -- you don't need

13   to give us an address, but what part of the Middle District do

14   you reside in?

15   **PROSPECTIVE JUROR 1:**  Orlando.

16   **THE COURT:**  Orlando.

17   And what do you do for a living?

18   **PROSPECTIVE JUROR 1:**  I'm a real estate appraiser.

19   **THE COURT:**  Are you married?

20   **PROSPECTIVE JUROR 1:**  No.

21   **THE COURT:**  Any children?

22   **PROSPECTIVE JUROR 1:**  No.

23   **THE COURT:**  Do you have any friends or relatives in

24   law enforcement?

25   **PROSPECTIVE JUROR 1:**  Exes maybe.  Not anymore.

1    **THE COURT:**  Not anymore.  Okay.  So exes in law

2    enforcement?

3    **PROSPECTIVE JUROR 1:**  Yes.

4    **THE COURT:**  Anything about the fact that you have

5    some, you know, people that you had relationships with in law

6    enforcement affect your ability to be a fair and impartial

7    juror in this case?

8    **PROSPECTIVE JUROR 1:**  No.

9    **THE COURT:**  Okay.  Now, the following questions are

10   just going to require a simple yes-or-no answer, and if you

11   answer yes to this question, then we will -- we'll call you

12   back later to talk outside the presence of the other jurors.

13   Have you or any of your close friends or relatives

14   ever been the victim of any form of sexual abuse?

15   **PROSPECTIVE JUROR 1:**  Yes.

16   **THE COURT:**  Okay.  Have you or any of your friends or

17   relatives ever been the victim of any other type of crime?

18   **PROSPECTIVE JUROR 1:**  Yes.

19   **THE COURT:**  Okay.  And if it's not -- doesn't involve

20   a sexual offense, can you tell us what that was?

21   **PROSPECTIVE JUROR 1:**  A burglary.

22   **THE COURT:**  A burglary.  Was that a friend?  A

23   relative?

24   **PROSPECTIVE JUROR 1:**  Me.

25   **THE COURT:**  Yourself.

1          Was the individual ever caught?

2          **PROSPECTIVE JUROR 1:**  No.

3          **THE COURT:**  Okay.  And so no one was ever prosecuted

4     for that offense?

5          **PROSPECTIVE JUROR 1:**  No.

6          **THE COURT:**  Did -- were the police called?

7          **PROSPECTIVE JUROR 1:**  Yes.

8          **THE COURT:**  Okay.  And were you satisfied with the

9     way that the officers helped you even though they couldn't find

10    who did it?

11         **PROSPECTIVE JUROR 1:**  As far as I know, it never went

12    other than me making a report.  I never heard anything else

13    about it.

14         **THE COURT:**  Okay.  All right.  Anything about that

15    experience that puts a bad taste in your mouth that would make

16    it difficult for you to sit and render a fair and impartial

17    verdict in this case?

18         **PROSPECTIVE JUROR 1:**  No.

19         **THE COURT:**  Okay.  All right.  Other than a traffic

20    offense, have you or a close personal friend or family member

21    ever been accused, arrested or charged, or convicted of any

22    crime?

23         **PROSPECTIVE JUROR 1:**  Yes.

24         **THE COURT:**  Okay.  And was that you or a friend or

25    family member?

1     PROSPECTIVE JUROR 1:  Family member.

2     THE COURT:  Okay.  And what was that?

3     PROSPECTIVE JUROR 1:  It was my brother, a drug

4 offense.

5     THE COURT:  Okay.  Was that in state court?  In

6 federal court?

7     PROSPECTIVE JUROR 1:  Military.

8     THE COURT:  In the military.  Okay.

9     Anything about that experience that your brother had

10 that would make it difficult for you to sit and listen to the

11 evidence in this case?

12     PROSPECTIVE JUROR 1:  I don't think so, no.

13     THE COURT:  Okay.  Have you ever served as a juror

14 before?

15     PROSPECTIVE JUROR 1:  Yes.

16     THE COURT:  And when and where was that?

17     PROSPECTIVE JUROR 1:  I was in county court in

18 November, but I didn't actually end up sitting on the jury.

19 And then years ago, in county court again, I did serve as a

20 juror for a civil trial.

21     THE COURT:  Okay.  And were -- did that trial go to

22 verdict?

23     PROSPECTIVE JUROR 1:  Yes.

24     THE COURT:  And were you able to reach a verdict in

25 that case?

1      **PROSPECTIVE JUROR 1:**  Yes.

2      **THE COURT:**  Were you the foreperson?

3      **PROSPECTIVE JUROR 1:**  No.

4      **THE COURT:**  Okay.  Anything about that experience as

5  a juror which could in any way affect your ability to sit,

6  listen to the evidence in this case, and render a fair and

7  impartial verdict if you're called to do so?

8      **PROSPECTIVE JUROR 1:**  No.

9      **THE COURT:**  Okay.  Now, the law which you may have

10  been told in that case is going to be different than the law

11  that relates to this case.  Can you listen -- if you're

12  selected as a juror in this case, can you listen -- you put

13  that law aside and listen to the law as I instruct you and

14  follow the law in this case?

15      **PROSPECTIVE JUROR 1:**  Yes.

16      **THE COURT:**  Okay.  All right.  Thank you.

17      Pass the microphone down.

18      Can you tell us your full name, sir.

19      **PROSPECTIVE JUROR 2:**  Blake Glaze.

20      **THE COURT:**  And what's your date of birth?

21      **PROSPECTIVE JUROR 2:**  ███████, '89.

22      **THE COURT:**  And what do you do for a living?

23      **PROSPECTIVE JUROR 2:**  I'm in IT.  I do tech support

24  for fiber Internet.

25      **THE COURT:**  I'm sorry.  Tech support for?

1        PROSPECTIVE JUROR 2:  Fiber Internet service.

2        THE COURT:  Okay.  Are you married?

3        PROSPECTIVE JUROR 2:  Yes.

4        THE COURT:  And what's your spouse do?

5        PROSPECTIVE JUROR 2:  She's a full-time caretaker.

6    We take care of our elderly mother-in-law.  Her mom lives with

7    us there.

8        THE COURT:  Okay.  Do you have any children?

9        PROSPECTIVE JUROR 2:  No.

10        THE COURT:  Do you have any friends or family members

11    in law enforcement?

12        PROSPECTIVE JUROR 2:  My brother-in-law is in law

13    enforcement in Louisiana.

14        THE COURT:  Do you ever discuss his cases at all with

15    him?

16        PROSPECTIVE JUROR 2:  No.

17        THE COURT:  Anything about the fact that your

18    brother's in -- brother-in-law's in law enforcement affect your

19    ability to sit and listen to the evidence in this case?

20        PROSPECTIVE JUROR 2:  No.

21        THE COURT:  All right.  Again, yes-or-no answer.

22    Have you or any of your close friends or relatives ever been

23    the victim of any form of sexual abuse?

24        PROSPECTIVE JUROR 2:  No.

25        THE COURT:  Okay.  Have you or your friends, family,

1    relatives ever been the victim of any other type of crime?

2         PROSPECTIVE JUROR 2:  Victim, no.

3         THE COURT:  Okay.  Ever been accused of any crime?

4         PROSPECTIVE JUROR 2:  No.

5         THE COURT:  Have you ever served on a jury before?

6         PROSPECTIVE JUROR 2:  I have, yes.

7         THE COURT:  And when was that?

8         PROSPECTIVE JUROR 2:  Six or seven years ago maybe.

9         THE COURT:  Was that here?

10        PROSPECTIVE JUROR 2:  No.  It was in Lake County.

11        THE COURT:  In Lake County?

12        PROSPECTIVE JUROR 2:  Uh-huh.

13        THE COURT:  And was that a civil or criminal?

14        PROSPECTIVE JUROR 2:  I believe it was civil.  It

15   was, like, a domestic abuse case, but it was --

16        THE COURT:  Okay.  Were you finding someone guilty or

17   not guilty, or was it money?

18        PROSPECTIVE JUROR 2:  Guilty or not guilty.

19        THE COURT:  Okay.  So a criminal case.

20        Were you the foreperson of that jury?

21        PROSPECTIVE JUROR 2:  No, I wasn't.

22        THE COURT:  And were you able to reach a verdict,

23   without telling us the verdict?

24        PROSPECTIVE JUROR 2:  Yes.

25        THE COURT:  Okay.  Anything about that experience

| | |
|---|---|
| 1 | that would make it difficult for you to sit, listen to the |
| 2 | evidence in this case, and render a fair and impartial verdict |
| 3 | if you were called to do so? |
| 4 | **PROSPECTIVE JUROR 2:**  No. |
| 5 | **THE COURT:**  And you understand that the law is |
| 6 | different than -- in that case than it would be in this case, |
| 7 | and do you agree that if you are called to serve as a juror |
| 8 | that you would follow the law as I instruct you? |
| 9 | **PROSPECTIVE JUROR 2:**  Yes. |
| 10 | **THE COURT:**  Okay.  Thank you. |
| 11 | Tell us your name, sir. |
| 12 | **PROSPECTIVE JUROR 3:**  Christopher Normann. |
| 13 | **THE COURT:**  And what's your date of birth? |
| 14 | **PROSPECTIVE JUROR 3:**  ██/██/1989. |
| 15 | **THE COURT:**  And what do you do for a living, sir? |
| 16 | **PROSPECTIVE JUROR 3:**  I'm a travel respiratory |
| 17 | therapist. |
| 18 | **THE COURT:**  And are you married? |
| 19 | **PROSPECTIVE JUROR 3:**  Yes. |
| 20 | **THE COURT:**  And what's your spouse do? |
| 21 | **PROSPECTIVE JUROR 3:**  She works in UnitedHealth |
| 22 | insurance. |
| 23 | **THE COURT:**  Okay.  Any children? |
| 24 | **PROSPECTIVE JUROR 3:**  Not yet. |
| 25 | **THE COURT:**  Again, a yes-or-no answer.  Have you or |

1    any of your close family members or friends ever been the

2    victim of sexual -- any form of sexual abuse?

3              PROSPECTIVE JUROR 3:  Yes.

4              THE COURT:  Have you or a close friend or family

5    member ever been the victim of any other type of crime?

6              PROSPECTIVE JUROR 3:  No.

7              THE COURT:  Okay.  Ever been accused -- other than a

8    traffic offense, you, a friend, or family member ever been

9    accused or prosecuted for any offense --

10             PROSPECTIVE JUROR 3:  Yes.

11             THE COURT:  -- or convicted?

12             PROSPECTIVE JUROR 3:  A family member.

13             THE COURT:  A family member.  And what was that for?

14             PROSPECTIVE JUROR 3:  I don't know if it ended up

15   going to court, but my cousin had a mental health crisis that

16   he ended up being Baker Acted for.

17             THE COURT:  Okay.  But other than that, that was it.

18             Anything about that experience that would make it

19   difficult for you, if you were called as a juror in this case,

20   to render a fair and impartial verdict?

21             PROSPECTIVE JUROR 3:  No.

22             THE COURT:  Have you ever served as a juror before?

23             PROSPECTIVE JUROR 3:  No.

24             THE COURT:  Thank you.

25             Tell us your name, sir.

1          **PROSPECTIVE JUROR 4:**  Noel Figueroa.

2          **THE COURT:**  And when's your date of birth?

3          **PROSPECTIVE JUROR 4:**  ███████, 1966.

4          **THE COURT:**  Did you say December?

5          **PROSPECTIVE JUROR 4:**  December.

6          **THE COURT:**  Same birthdays.  Right next to each

7     other.

8          And what do you do for a living, sir?

9          **PROSPECTIVE JUROR 4:**  Truck driver.

10         **THE COURT:**  Are you married?

11         **PROSPECTIVE JUROR 4:**  Yes.

12         **THE COURT:**  And what's your spouse do?

13         **PROSPECTIVE JUROR 4:**  She's disabled.

14         **THE COURT:**  Has she ever been employed?

15         **PROSPECTIVE JUROR 4:**  Yes.  She was a travel agent.

16         **THE COURT:**  Okay.  Any children?

17         **PROSPECTIVE JUROR 4:**  Yes.

18         **THE COURT:**  How many?

19         **PROSPECTIVE JUROR 4:**  Just one.

20         **THE COURT:**  One child.  How old?

21         **PROSPECTIVE JUROR 4:**  Twenty-five.

22         **THE COURT:**  And what does that child do for a living?

23         **PROSPECTIVE JUROR 4:**  He's a 911 operator.

24         **THE COURT:**  Any -- so your son is in law enforcement,

25     but any other friends or relatives in law enforcement?

1          **PROSPECTIVE JUROR 4**:  I have a nephew in New York.

2          **THE COURT**:  Do you ever discuss with them at all any

3     of their cases?

4          **PROSPECTIVE JUROR 4**:  Not really.  I mean, my son's

5     the only one that tells me.  So "I got a call from here,

6     there."

7          **THE COURT**:  Right.

8          **PROSPECTIVE JUROR 4**:  But not really sat down.

9          **THE COURT**:  Okay.  Anything about the fact that you

10    have family members in law enforcement that would make it

11    difficult for you to sit, listen to the evidence in this case,

12    and render a fair and impartial if you were called to do so?

13         **PROSPECTIVE JUROR 4**:  No.

14         **THE COURT**:  Again, yes-or-no answer.  Anybody in --

15    you, friend, or family member ever been the victim of any form

16    of sexual abuse?

17         **PROSPECTIVE JUROR 4**:  No.

18         **THE COURT**:  Any -- you, friend, family member ever

19    been the victim of any other type of crime?

20         **PROSPECTIVE JUROR 4**:  No.

21         **THE COURT**:  Ever been accused or convicted of -- or

22    prosecuted for a crime?

23         **PROSPECTIVE JUROR 4**:  No.

24         **THE COURT**:  Have you ever served as a juror?

25         **PROSPECTIVE JUROR 4**:  No.

| | |
|---|---|
| 1 | **THE COURT:**  Okay.  Thank you. |
| 2 | Tell us your name. |
| 3 | **PROSPECTIVE JUROR 5:**  Hello.  My name is |
| 4 | Joseph Paoli. |
| 5 | **THE COURT:**  And what's your date of birth? |
| 6 | **PROSPECTIVE JUROR 5:**  ████████, 2000. |
| 7 | **THE COURT:**  And what do you do for a living? |
| 8 | **PROSPECTIVE JUROR 5:**  I just recently graduated from |
| 9 | the University of Florida, and then in August I'll be starting |
| 10 | my master's. |
| 11 | **THE COURT:**  Master's in what? |
| 12 | **PROSPECTIVE JUROR 5:**  Horticulture. |
| 13 | **THE COURT:**  Horticulture? |
| 14 | **PROSPECTIVE JUROR 5:**  Uh-huh.  Yes. |
| 15 | **THE COURT:**  Are you married? |
| 16 | **PROSPECTIVE JUROR 5:**  No. |
| 17 | **THE COURT:**  Any children? |
| 18 | **PROSPECTIVE JUROR 5:**  No. |
| 19 | **THE COURT:**  Have you or any close friend or family |
| 20 | member ever been the victim of any form of sexual abuse? |
| 21 | **PROSPECTIVE JUROR 5:**  No. |
| 22 | **THE COURT:**  Ever been the victim of any other type of |
| 23 | crime? |
| 24 | **PROSPECTIVE JUROR 5:**  My father was pickpocketed |
| 25 | overseas, and my sister was robbed at gunpoint overseas, but on |

1    two separate trips.

2            THE COURT:  Two different trips?

3            PROSPECTIVE JUROR 5:  Yes.  My father was in Paris,

4    and my sister was in South Africa.

5            THE COURT:  Did they ever find the people that did

6    this?

7            PROSPECTIVE JUROR 5:  With my father, the pickpocket

8    got away; but I believe my sister said that because she and a

9    group of her friends -- one of them had "find their phone" on,

10   they eventually found the guys, but by that point they had

11   already sold all the stuff that they had taken.

12           THE COURT:  Were they prosecuted?  Do you know?

13           PROSPECTIVE JUROR 5:  I believe so, but I'm not

14   certain.

15           THE COURT:  Okay.  Anything about that experience

16   that would make it difficult for you to listen to the evidence

17   in this case and render a fair and impartial verdict if you

18   were called to do so?

19           PROSPECTIVE JUROR 5:  Well, hearing that this is

20   about an assault of a minor, my sister is also -- she was,

21   you know, young when this happened.  I kind of want to say I'd

22   advocate more on the side of the minor but --

23           THE COURT:  Okay.  I appreciate your honesty.

24           Have you ever served as a juror before?

25           PROSPECTIVE JUROR 5:  No.

1          THE COURT:  Thank you.

2          PROSPECTIVE JUROR 5:  Okay.

3          THE COURT:  Yes, sir.  Tell us your name, please.

4          PROSPECTIVE JUROR 6:  My name is Herdy de la Rosa.

5          THE COURT:  And what's your date of birth?

6          PROSPECTIVE JUROR 6:  ██████████, 1983.

7          THE COURT:  And what do you do for a living, sir?

8          PROSPECTIVE JUROR 6:  I'm an airline worker.

9          THE COURT:  I'm sorry?

10         PROSPECTIVE JUROR 6:  I'm an airline worker.

11         THE COURT:  Airline worker.

12         What do you do for the airline?

13         PROSPECTIVE JUROR 6:  I do ground house and

14    operations.

15         THE COURT:  What airline?

16         PROSPECTIVE JUROR 6:  JetBlue.

17         THE COURT:  JetBlue.

18         Are you married?

19         PROSPECTIVE JUROR 6:  Yes.

20         THE COURT:  And what's your spouse do for a living?

21         PROSPECTIVE JUROR 6:  He do sales.

22         THE COURT:  Sales.

23         Any children?

24         PROSPECTIVE JUROR 6:  No.

25         THE COURT:  Do you have any friends or family members

1     or yourself in law enforcement?

2              PROSPECTIVE JUROR 6:  No.

3              THE COURT:  Have you or any friend or family member

4     ever been the victim of any form of sexual abuse?

5              PROSPECTIVE JUROR 6:  No.

6              THE COURT:  Ever been the victim of any other type of

7     crime?

8              PROSPECTIVE JUROR 6:  No.

9              THE COURT:  Ever been accused or prosecuted or

10    convicted of any type of crime other than a traffic violation?

11             PROSPECTIVE JUROR 6:  No.

12             THE COURT:  Have you ever served as a juror before?

13             PROSPECTIVE JUROR 6:  No.

14             THE COURT:  Okay.  Thank you, sir.

15             PROSPECTIVE JUROR 6:  You're welcome.

16             THE COURT:  Yes, ma'am.  Can you tell us your name,

17    please.

18             PROSPECTIVE JUROR 7:  Donna White.

19             THE COURT:  And what's your date of birth?

20             PROSPECTIVE JUROR 7:  ▮/▮/59.

21             THE COURT:  And what do you do for a living?

22             PROSPECTIVE JUROR 7:  Customer service and an

23    insurance agent.

24             THE COURT:  Are you married?

25             PROSPECTIVE JUROR 7:  No.

1          THE COURT:  Any children?

2          PROSPECTIVE JUROR 7:  No.

3          THE COURT:  Have you or any friend or family member

4     ever been the victim of any form of sexual abuse?

5          PROSPECTIVE JUROR 7:  No.

6          THE COURT:  Ever been the victim of any other type of

7     crime?

8          PROSPECTIVE JUROR 7:  No.

9          THE COURT:  Have you or a close friend or family

10     member ever been accused, prosecuted, or convicted of any

11     crime?

12          PROSPECTIVE JUROR 7:  No.

13          THE COURT:  Have you ever served as a juror?

14          PROSPECTIVE JUROR 7:  Yes.  Twice.

15          THE COURT:  Twice.

16          And when was that?

17          PROSPECTIVE JUROR 7:  Years ago.  One was civil, and

18     one was criminal.

19          THE COURT:  Okay.  Were you the foreperson of either

20     of those juries?

21          PROSPECTIVE JUROR 7:  No.

22          THE COURT:  And were you -- without telling us the

23     verdict, were you able to reach verdicts on both those cases?

24          PROSPECTIVE JUROR 7:  Yes.

25          THE COURT:  And, again, I'd ask you the same

1    question.  The law is obviously going to be different in those

2    cases than it is here.  Will you agree, if you're selected as a

3    juror, to listen to the law as I instruct it and apply it?

4         **PROSPECTIVE JUROR 7:**  Yes.

5         **THE COURT:**  Okay.  Thank you.

6         Yes, sir.  Can you tell us your name, please.

7         **PROSPECTIVE JUROR 8:**  Hi.  My name is

8    Mitchell Susana.

9         **THE COURT:**  And what's your date of birth?

10        **PROSPECTIVE JUROR 8:**  ████████, 1991.

11        **THE COURT:**  A lot of December and Septembers.

12        **PROSPECTIVE JUROR 8:**  I was thinking the same thing.

13        **THE COURT:**  And what do you do for a living, sir?

14        **PROSPECTIVE JUROR 8:**  I'm a real estate sales

15   associate.

16        **THE COURT:**  Are you married?

17        **PROSPECTIVE JUROR 8:**  Yes, ma'am.

18        **THE COURT:**  And what's your spouse do?

19        **PROSPECTIVE JUROR 8:**  She works in hospice.

20        **THE COURT:**  God bless her.

21        **PROSPECTIVE JUROR 8:**  Right.  We don't have many

22   conversations about her work.

23        **THE COURT:**  No.

24        Do you have any children?

25        **PROSPECTIVE JUROR 8:**  I do.  I have two, a

1    two-year-old and a seven-year-old.

2            THE COURT:  Have you or any of your close friends or

3    family members ever been the victim of any form of sexual

4    abuse?

5            PROSPECTIVE JUROR 8:  Not that I'm aware of.

6            THE COURT:  Ever been the victim of any other type of

7    crime?

8            PROSPECTIVE JUROR 8:  Not that I'm aware of.

9            THE COURT:  Have you or any friend or family member

10   ever been accused or prosecuted or convicted of any crime other

11   than a traffic violation?

12           PROSPECTIVE JUROR 8:  Not that I'm aware of.

13           THE COURT:  Okay.  Have you ever served as a juror?

14           PROSPECTIVE JUROR 8:  I have not.

15           THE COURT:  Do you have any friends or family in law

16   enforcement?

17           PROSPECTIVE JUROR 8:  My best friend in New York.

18           THE COURT:  Do you ever discuss cases with your

19   friend?

20           PROSPECTIVE JUROR 8:  No.

21           THE COURT:  Anything about the fact that you have a

22   friend in law enforcement affect your ability to sit and listen

23   to the evidence in this case and render a fair and impartial

24   verdict if you're called upon to do so?

25           PROSPECTIVE JUROR 8:  No.

1              **THE COURT:**  Okay.  Thank you.

2              Ms. White, did I ask you the question about law

3       enforcement?

4              **PROSPECTIVE JUROR 7:**  (Indicating.)

5              **THE COURT:**  Ms. White, do you have any friends or

6       family in law enforcement?

7              **PROSPECTIVE JUROR 7:**  No.

8              **THE COURT:**  Okay.  All right.  Thank you.

9              Tell us your name, sir.

10             **PROSPECTIVE JUROR 9:**  My name is Eric Mundy.

11             **THE COURT:**  And what's your date of birth?

12             **PROSPECTIVE JUROR 9:**  ██/██/1980.

13             **THE COURT:**  And what do you do for a living, sir?

14             **PROSPECTIVE JUROR 9:**  I'm the water quality

15       coordinator for the City of Titusville.

16             **THE COURT:**  Are you married?

17             **PROSPECTIVE JUROR 9:**  Yes.

18             **THE COURT:**  What's your spouse do?

19             **PROSPECTIVE JUROR 9:**  She's a legal document

20       receptionist for a legal company.

21             **THE COURT:**  Is she -- is it a law firm?

22             **PROSPECTIVE JUROR 9:**  No, ma'am.  It's -- they handle

23       all the documents for lawyers and doctors.

24             **THE COURT:**  Okay.  All right.  Do you have any

25       children?

1          PROSPECTIVE JUROR 9:  Yes.

2          THE COURT:  How many?

3          PROSPECTIVE JUROR 9:  Just one.

4          THE COURT:  How old?

5          PROSPECTIVE JUROR 9:  Sixteen.

6          THE COURT:  Have you or any friends or family members

7     ever been a victim of any form of sexual abuse?

8          PROSPECTIVE JUROR 9:  Yes.

9          THE COURT:  Any friend, family member, or yourself

10    ever been the victim of any other type of crime?

11         PROSPECTIVE JUROR 9:  No.

12         THE COURT:  Ever -- any -- you, friend, family member

13    ever been accused of a crime or prosecuted or convicted of a

14    crime?

15         PROSPECTIVE JUROR 9:  No.

16         THE COURT:  Any friends or family in law enforcement?

17         PROSPECTIVE JUROR 9:  No.

18         THE COURT:  Have you ever served as a juror before?

19         PROSPECTIVE JUROR 9:  No.

20         THE COURT:  Thank you.

21         Tell us your name, sir.

22         PROSPECTIVE JUROR 10:  Michael Fisher.

23         THE WITNESS:  And what's your date of birth?

24         PROSPECTIVE JUROR 10:  ████████, 1976.

25         THE COURT:  What do you for a living?

1          PROSPECTIVE JUROR 10:  I work corrections.

2          THE COURT:  Where?

3          PROSPECTIVE JUROR 10:  Osceola County.

4          THE COURT:  Are you married?

5          PROSPECTIVE JUROR 10:  I am.

6          THE COURT:  What's your spouse do?

7          PROSPECTIVE JUROR 10:  She's a nurse.

8          THE COURT:  Any children?

9          PROSPECTIVE JUROR 10:  Four.

10          THE COURT:  What are their ages?

11          PROSPECTIVE JUROR 10:  25, 21, 19, and 14.

12          THE COURT:  Any of them work outside?

13          PROSPECTIVE JUROR 10:  They're all finishing up

14     school.  They're all in school.

15          THE COURT:  Okay.  The 25-year-old too?

16          PROSPECTIVE JUROR 10:  She's graduating pharmacy

17     school this year.  So --

18          THE COURT:  Okay.  So you are in law enforcement.  Do

19     you have any other friends or family in law enforcement?

20          PROSPECTIVE JUROR 10:  Everybody.

21          THE COURT:  Everybody.

22          Anything about the fact that you're a member of law

23     enforcement affect your ability to sit, listen to the evidence

24     in this case, and render a fair and impartial verdict if you're

25     called to do so?

1    **PROSPECTIVE JUROR 10**:  I'll try, but I've been doing

2    this 26 years between the prisons and jails, and it's kind of

3    hard.

4    **THE COURT**:  Have you or any -- did I ask you whether

5    you or any member of your family or friends were ever the

6    victim of any form of sexual abuse?

7    **PROSPECTIVE JUROR 10**:  No.

8    **THE COURT**:  And what's the answer?

9    **PROSPECTIVE JUROR 10**:  No.

10   **THE COURT**:  Ever been the victim of any other type of

11   crime?

12   **PROSPECTIVE JUROR 10**:  No.

13   **THE COURT**:  Ever been accused of any type of crime or

14   prosecuted or convicted?

15   **PROSPECTIVE JUROR 10**:  Just traffic.

16   **THE COURT**:  Traffic?  That's it?  Okay.

17   Ever served as a juror?

18   **PROSPECTIVE JUROR 10**:  No, ma'am.

19   **THE COURT**:  Okay.  Thank you.

20   Can you tell us your name, please.

21   **PROSPECTIVE JUROR 11**:  Haley Gauvreau.

22   **THE COURT**:  And what's your date of birth?

23   **PROSPECTIVE JUROR 11**:  ██/██/1996.

24   **THE COURT**:  And what do you do for a living?

25   **PROSPECTIVE JUROR 11**:  I'm a data entry coordinator.

1          THE COURT:  For?

2          PROSPECTIVE JUROR 11:  A pest control company.

3          THE COURT:  Are you married?

4          PROSPECTIVE JUROR 11:  No.

5          THE COURT:  Any children?

6          PROSPECTIVE JUROR 11:  No.

7          THE COURT:  Any friends or family in law enforcement?

8          PROSPECTIVE JUROR 11:  Not that I'm aware of, no.

9          THE COURT:  Okay.  Have you or any friend or family

10     member ever been the victim of any form of sexual abuse?

11         PROSPECTIVE JUROR 11:  No.

12         THE COURT:  Ever been the victim of any other type of

13     crime?

14         PROSPECTIVE JUROR 11:  No.

15         THE COURT:  Ever been accused or prosecuted or

16     convicted of any crime other than a traffic case?

17         PROSPECTIVE JUROR 11:  No.

18         THE COURT:  Have you ever served as a juror?

19         PROSPECTIVE JUROR 11:  I have not.

20         THE COURT:  Okay.  Thank you.

21         Tell us your name, please.

22         PROSPECTIVE JUROR 12:  I'm Madeline O'Brien.

23         THE COURT:  And what's your date of birth?

24         PROSPECTIVE JUROR 12:  ███████, 2001.

25         THE COURT:  And what do you for a living?

1    PROSPECTIVE JUROR 12:  I'm a student.

2    THE COURT:  Where are you a student?

3    PROSPECTIVE JUROR 12:  At Baldwin Wallace University.

4  I study musical theater with a minor in psychology.

5    THE COURT:  Okay.  Are you married?

6    PROSPECTIVE JUROR 12:  No.

7    THE COURT:  Any children?

8    PROSPECTIVE JUROR 12:  Nope.

9    THE COURT:  Any friends or family in law enforcement?

10    PROSPECTIVE JUROR 12:  No.  But both my parents are

11  attorneys.  Not sure if that's relevant.

12    THE COURT:  That's all right.  Here in Orlando?

13    PROSPECTIVE JUROR 12:  My dad works in Boca Raton

14  now.  My mom doesn't really do it anymore, but they met in the

15  public defender's office in Sanford.

16    THE COURT:  Okay.  And what -- so do they both --

17  they met at the PD's office.  So are they criminal defense

18  lawyers, or did they branch off into something else?

19    PROSPECTIVE JUROR 12:  They used to be criminal

20  defense lawyers.  Now my dad works in real estate law.

21    THE COURT:  And your mom is?

22    PROSPECTIVE JUROR 12:  My mom is just a stay-at-home

23  mom.

24    THE COURT:  Okay.  All right.  Did she ever discuss

25  any of their cases with them?

1      PROSPECTIVE JUROR 12:  Really old ones but only

2    anecdotally.

3      THE COURT:  Anything about the fact that your mom and

4    dad are both lawyers that would affect your ability to sit,

5    listen to the evidence in this case, and render a fair and

6    impartial verdict if you were called to do so?

7      PROSPECTIVE JUROR 12:  No.

8      THE COURT:  Has anybody -- you or a close friend or

9    family member -- ever been the victim of any form of sexual

10   abuse?

11     PROSPECTIVE JUROR 12:  Yes.

12     THE COURT:  Ever been the victim of any form of --

13   any other type of crime?

14     PROSPECTIVE JUROR 12:  No.

15     THE COURT:  Ever been accused -- you, a close friend,

16   or family member ever been accused of a crime or prosecuted or

17   convicted of a crime?

18     PROSPECTIVE JUROR 12:  No.

19     THE COURT:  Have you ever served on a jury before?

20     PROSPECTIVE JUROR 12:  No, I haven't.

21     THE COURT:  Okay.  Thank you.

22     We'll go all the way down.

23     Can you tell us your name, sir.

24     PROSPECTIVE JUROR 13:  Good morning.  Michael Damaso.

25     THE COURT:  And, Mr. Damaso, what is your date of

1    birth?

2                    **PROSPECTIVE JUROR 13:** ███████, 1979.

3            **THE COURT:** And what do you do for a living, sir?

4            **PROSPECTIVE JUROR 13:** I'm a lawyer.

5            **THE COURT:** What type of law?

6            **PROSPECTIVE JUROR 13:** We do all, like, personal

7    injury, wrongful death trial work.

8            **THE COURT:** Are you married?

9            **PROSPECTIVE JUROR 13:** Yes.

10           **THE COURT:** And what's your spouse do?

11           **PROSPECTIVE JUROR 13:** She's a Realtor.

12           **THE COURT:** Any children?

13           **PROSPECTIVE JUROR 13:** No children.

14           **THE COURT:** Have you or a close friend or family

15   member ever been the victim of any form of sexual abuse?

16           **PROSPECTIVE JUROR 13:** No.

17           **THE COURT:** The victim of any other type of crime?

18           **PROSPECTIVE JUROR 13:** No.

19           **THE COURT:** Have you or any close friend or family

20   member ever been accused of a crime or prosecuted, convicted?

21           **PROSPECTIVE JUROR 13:** No.

22           **THE COURT:** Do you have any friends or family in law

23   enforcement?

24           **PROSPECTIVE JUROR 13:** No.

25           **THE COURT:** Have you ever served as a juror before?

1          **PROSPECTIVE JUROR 13:** I've never served as a juror.

2     I've been called a couple times, but one time I didn't make it

3     up to the courtroom. They didn't call us up. And then the

4     second time, I got called up for jury selection, but I knew the

5     prosecutor; so they excused me.

6          **THE COURT:** Okay. All right. Thank you, sir.

7          Tell us your name.

8          **PROSPECTIVE JUROR 14:** Michelle Santos.

9          **THE COURT:** And what's your date of birth?

10         **PROSPECTIVE JUROR 14:** █/█/69.

11         **THE COURT:** What do you for a living?

12         **PROSPECTIVE JUROR 14:** Women's ministry leader, and

13    I'm a graduate social work student.

14         **THE COURT:** I heard you say you're a ministry leader,

15    but what --

16         **PROSPECTIVE JUROR 14:** I'm a graduate social worker

17    student.

18         **THE COURT:** Are you married?

19         **PROSPECTIVE JUROR 14:** Yes.

20         **THE COURT:** What's he do?

21         **PROSPECTIVE JUROR 14:** He's a minister.

22         **THE COURT:** Any children?

23         **PROSPECTIVE JUROR 14:** Yes.

24         **THE COURT:** How many?

25         **PROSPECTIVE JUROR 14:** Two.

1          **THE COURT:** What are their ages?

2          **PROSPECTIVE JUROR 14:** 28 and 24.

3          **THE COURT:** What do they do for a living?

4          **PROSPECTIVE JUROR 14:** My son, 28, is an actor; and

5    my daughter is a speech-language pathologist.

6          **THE COURT:** Have you or any of your close friends or

7    relatives ever been the victim of any form of sexual abuse?

8          **PROSPECTIVE JUROR 14:** Yes.

9          **THE COURT:** Ever been the victim of any other type of

10   crime?

11         **PROSPECTIVE JUROR 14:** Yes. I've been the victim of

12   burglary. My mom, several years ago in Jamaica, was the victim

13   of being shot.

14         **THE COURT:** A victim of --

15         **PROSPECTIVE JUROR 14:** She was shot.

16         **THE COURT:** She was shot?

17         **PROSPECTIVE JUROR 14:** Yes.

18         **THE COURT:** Were they able to find who committed

19   these crimes?

20         **PROSPECTIVE JUROR 14:** Yes.

21         **THE COURT:** Were the individuals prosecuted?

22         **PROSPECTIVE JUROR 14:** I don't know.

23         **THE COURT:** So you know that in both cases they found

24   who did the crime, but you don't know whether they were ever

25   prosecuted for the offense?

1    **PROSPECTIVE JUROR 14:**  Correct.

2        **THE COURT:**  Anything about those experiences --

3    obviously, they're not comfortable experiences to undergo --

4    but that put a bad taste in your mouth with regard to the

5    judicial system or in any way?

6        **PROSPECTIVE JUROR 14:**  No.

7        **THE COURT:**  Anything about those experiences that

8    would make it difficult for you to sit, listen to the evidence

9    in this case, and render a fair and impartial verdict if you

10   were called to do so?

11       **PROSPECTIVE JUROR 14:**  No.

12       **THE COURT:**  Have you ever served as a juror before?

13       **PROSPECTIVE JUROR 14:**  No.

14       **THE COURT:**  All right.  Thank you.

15       Tell us your name, please.

16       **PROSPECTIVE JUROR 15:**  Kathryn Parham.

17       **THE COURT:**  And what's your date of birth?

18       **PROSPECTIVE JUROR 15:**  ██/██/56.

19       **THE COURT:**  And what do you do for a living?

20       **PROSPECTIVE JUROR 15:**  I'm retired.

21       **THE COURT:**  From?

22       **PROSPECTIVE JUROR 15:**  I worked for Entergy.  It was

23   a Fortune 500 company headquartered in New Orleans.

24       **THE COURT:**  Okay.  And are you married?

25       **PROSPECTIVE JUROR 15:**  Yes.

1          **THE COURT:**  And what's your spouse do?

2          **PROSPECTIVE JUROR 15:**  He's a tax consultant.

3          **THE COURT:**  Any children?

4          **PROSPECTIVE JUROR 15:**  Two children.

5          **THE COURT:**  And what are their ages?

6          **PROSPECTIVE JUROR 15:**  31 and 26.

7          **THE COURT:**  And what do they do for a living?

8          **PROSPECTIVE JUROR 15:**  The 31-year-old, my son, is a

9    PhD student; and my daughter, age 26, works in data analytics

10   for AdventHealth.

11         **THE COURT:**  Do you have any friends or family in law

12   enforcement?

13         **PROSPECTIVE JUROR 15:**  No.

14         **THE COURT:**  Have you or any friend or family member

15   ever been the victim of any form of sexual abuse?

16         **PROSPECTIVE JUROR 15:**  No.

17         **THE COURT:**  Ever been the victim of any other type of

18   crime?

19         **PROSPECTIVE JUROR 15:**  Yes.  We've had a car stolen,

20   and our house has been broken into.

21         **THE COURT:**  Anything -- was anybody ever caught?

22         **PROSPECTIVE JUROR 15:**  No.

23         **THE COURT:**  Anything about those experiences, other

24   than the experience themselves, that just left a bad taste in

25   your mouth for the justice system?

1    **PROSPECTIVE JUROR 15:**  No.

2    **THE COURT:**  Anything that would affect your ability

3    to sit, listen to the evidence, and render a fair and impartial

4    verdict if you were called to do so?

5    **PROSPECTIVE JUROR 15:**  No.

6    **THE COURT:**  Have you ever served as a juror before?

7    **PROSPECTIVE JUROR 15:**  I was an alternate --

8    **THE COURT:**  Okay.

9    **PROSPECTIVE JUROR 15:**  -- when I lived in Louisiana.

10    **THE COURT:**  Well, the alternate doesn't go back,

11    typically, to -- at least in a criminal trial doesn't go back

12    to deliberate.  How did that feel -- did you know you were the

13    alternate?

14    **PROSPECTIVE JUROR 15:**  Yes.

15    **THE COURT:**  Did anything about being an alternate and

16    not going -- going back to the jury room to deliberate --

17    anything about that that left a bad taste in your mouth about

18    the system?

19    **PROSPECTIVE JUROR 15:**  No.

20    **THE COURT:**  Was it a civil or a criminal?

21    **PROSPECTIVE JUROR 15:**  Civil.

22    **THE COURT:**  Civil.  And was it in federal court, or

23    was it in --

24    **PROSPECTIVE JUROR 15:**  I can't remember.  It was 35,

25    40 years ago, and I just -- I really don't remember.

1          THE COURT:  Well, it was probably in state court

2    because in federal court the alternates actually do go back and

3    deliberate.

4          Okay.  Did you stick around to see what the verdict

5    was?

6          PROSPECTIVE JUROR 15:  I don't remember that either.

7          THE COURT:  You don't remember.  It was a long time

8    ago.  Okay.  All right.  Thank you.

9          Tell us your name.

10         PROSPECTIVE JUROR 16:  Hi.  I'm Corey Johns.

11         THE COURT:  And what's your date of birth?

12         PROSPECTIVE JUROR 16:  ███████, 1984.

13         THE COURT:  And what do you for a living?

14         PROSPECTIVE JUROR 16:  I'm a high school assistant

15    principal.

16         THE COURT:  Are you married?

17         PROSPECTIVE JUROR 16:  Yes.

18         THE COURT:  And what's your spouse do?

19         PROSPECTIVE JUROR 16:  He's in sales.

20         THE COURT:  Any children?

21         PROSPECTIVE JUROR 16:  Yes.

22         THE COURT:  How many?

23         PROSPECTIVE JUROR 16:  Two.  A 6- and an 11-year-old.

24         THE COURT:  Have you or any friend or family member

25    ever been the victim of any form of sexual abuse?

1          **PROSPECTIVE JUROR 16:**  Yes.

2          **THE COURT:**  Ever been the victim of any other type of

3     crime?

4          **PROSPECTIVE JUROR 16:**  No.

5          **THE COURT:**  Ever been accused of a crime or

6     prosecuted?

7          **PROSPECTIVE JUROR 16:**  No.

8          **THE COURT:**  Do you have any friends or family members

9     in law enforcement?

10         **PROSPECTIVE JUROR 16:**  No.

11         **THE COURT:**  Have you ever served as a juror?

12         **PROSPECTIVE JUROR 16:**  No.

13         **THE COURT:**  Okay.  Thank you.

14         Can you tell us your name, please.

15         **PROSPECTIVE JUROR 17:**  Sabrina Heroff.

16         **THE COURT:**  And what's your date of birth?

17         **PROSPECTIVE JUROR 17:**  ███████, 1997.

18         **THE COURT:**  And what do you do for a living?

19         **PROSPECTIVE JUROR 17:**  I work in subrogation in

20     insurance.

21         **THE COURT:**  Are you married?

22         **PROSPECTIVE JUROR 17:**  Yes, ma'am.

23         **THE COURT:**  And what's your spouse do?

24         **PROSPECTIVE JUROR 17:**  He cleans pools.

25         **THE COURT:**  Any children?

1    **PROSPECTIVE JUROR 17:**  No, ma'am.

2    **THE COURT:**  Any friends or family in law enforcement?

3    **PROSPECTIVE JUROR 17:**  No, ma'am.

4    **THE COURT:**  Have you or a close friend or family

5    member ever been the victim of any form of sexual abuse?

6    **PROSPECTIVE JUROR 17:**  No, ma'am.

7    **THE COURT:**  Ever been the victim of any other type of

8    crime?

9    **PROSPECTIVE JUROR 17:**  No, ma'am.

10   **THE COURT:**  Ever been accused or prosecuted or

11   convicted of a crime?

12   **PROSPECTIVE JUROR 17:**  My biological mother was

13   accused -- I don't know whatever came of it -- but firing a

14   weapon at a VFW.

15   **THE COURT:**  Firing a weapon at --

16   **PROSPECTIVE JUROR 17:**  The VFW.  It's like a veterans

17   bar.

18   **THE COURT:**  Okay.  Was she prosecuted?  Do you know?

19   **PROSPECTIVE JUROR 17:**  I think so, but I don't really

20   have a relationship with her to know where it went.

21   **THE COURT:**  Okay.  Anything about that that would

22   make it difficult for you to sit, listen to the evidence in

23   this case, and render a fair and impartial verdict if you were

24   called to do so?

25   **PROSPECTIVE JUROR 17:**  No, ma'am.

1     THE COURT:  Have you ever served as a juror?

2     PROSPECTIVE JUROR 17:  No, ma'am.

3     THE COURT:  All right.  Thank you.

4     Can you tell us your name, please.

5     PROSPECTIVE JUROR 18:  Daniela Piamba.

6     THE COURT:  And what's your date of birth?

7     PROSPECTIVE JUROR 18:  ███████, 2001.

8     THE COURT:  And what do you do for a living?

9     PROSPECTIVE JUROR 18:  I'm a food server.

10    THE COURT:  And are you married?

11    PROSPECTIVE JUROR 18:  No.

12    THE COURT:  Any children?

13    PROSPECTIVE JUROR 18:  No.

14    THE COURT:  Any friends or family in law enforcement?

15    PROSPECTIVE JUROR 18:  No.

16    THE COURT:  Have you or a close friend or family

17    member ever been the victim of any form of sexual abuse?

18    PROSPECTIVE JUROR 18:  No.

19    THE COURT:  Ever been the victim of any other type of

20    crime?

21    PROSPECTIVE JUROR 18:  No.

22    THE COURT:  Have you or a close friend or family

23    member ever been accused or prosecuted or convicted of any type

24    of crime other than a traffic violation?

25    PROSPECTIVE JUROR 18:  No.

1          THE COURT:  Have you ever served as a juror before?

2          PROSPECTIVE JUROR 18:  No.

3          THE COURT:  Okay.  Thank you.

4          Yes, sir.  Tell us your name, please.

5          PROSPECTIVE JUROR 19:  My name is Matt Lloyd.

6          THE COURT:  And what's your date of birth?

7          PROSPECTIVE JUROR 19:  ███████, 1973.

8          THE COURT:  And what do you do for a living?

9          PROSPECTIVE JUROR 19:  Construction project manager.

10         THE COURT:  Are you married?

11         PROSPECTIVE JUROR 19:  Separated.

12         THE COURT:  Any children?

13         PROSPECTIVE JUROR 19:  Two.

14         THE COURT:  And what are their ages?

15         PROSPECTIVE JUROR 19:  26 and 25.

16         THE COURT:  And what do they do for a living?

17         PROSPECTIVE JUROR 19:  My 25-year-old works at

18    Home Depot as a puller.  My oldest works as a receptionist for

19    a hospital in Oklahoma.

20         THE COURT:  And I know you're separated, but what's

21    your spouse do?

22         PROSPECTIVE JUROR 19:  I have no idea.

23         THE COURT:  Okay.  Do you have any friends or family

24    in law enforcement?

25         PROSPECTIVE JUROR 19:  No.

1         THE COURT:  Have you or any close friend or family

2    member ever been the victim of any form of sexual abuse?

3         PROSPECTIVE JUROR 19:  Yes.

4         THE COURT:  Ever been the victim of any other type of

5    crime?

6         PROSPECTIVE JUROR 19:  A couple of burglaries and a

7    car theft years ago.

8         THE COURT:  Were they able to find who did that?

9         PROSPECTIVE JUROR 19:  Yes.

10        THE COURT:  Were they prosecuted?

11        PROSPECTIVE JUROR 19:  No.

12        THE COURT:  Anything about that situation that left a

13   bad taste in your mouth about the justice system?

14        PROSPECTIVE JUROR 19:  No.

15        THE COURT:  Anything about that that would make it

16   difficult for you to sit, listen to the evidence in this case,

17   and render a fair and impartial verdict if you were called to

18   do so?

19        PROSPECTIVE JUROR 19:  No.

20        THE COURT:  Okay.  Have you ever served as a juror?

21        PROSPECTIVE JUROR 19:  No.

22        THE COURT:  All right.  Thank you, sir.

23        Tell us your name, sir.

24        PROSPECTIVE JUROR 20:  Wyatt Winter.

25        THE COURT:  And what's your date of birth?

1          PROSPECTIVE JUROR 20:  ████████, 1982.

2          THE COURT:  What do you do for a living?

3          PROSPECTIVE JUROR 20:  I am an executive producer at

4     Disney for construction and theme park projects.

5          THE COURT:  Are you married?

6          PROSPECTIVE JUROR 20:  No.

7          THE COURT:  Any children?

8          PROSPECTIVE JUROR 20:  No.

9          THE COURT:  Any friends or family in law enforcement?

10         PROSPECTIVE JUROR 20:  No.

11         THE COURT:  Have you or a close friend or family

12    member ever been the victim of any form of sexual abuse?

13         PROSPECTIVE JUROR 20:  No.

14         THE COURT:  Ever been the victim of any type of

15    crime?

16         PROSPECTIVE JUROR 20:  Burglary.

17         THE COURT:  Were they able to catch the person who

18    did it?

19         PROSPECTIVE JUROR 20:  No.

20         THE COURT:  Anything about that experience that left

21    a bad taste in your mouth for the justice system in general or

22    law enforcement or anything?

23         PROSPECTIVE JUROR 20:  No.

24         THE COURT:  Do you feel like anything about that

25    experience that would make it difficult for you to sit, listen

1    to the evidence in this case, and render a fair and impartial

2    verdict if you were called to do so?

3            **PROSPECTIVE JUROR 20**:  No.

4            **THE COURT**:  Have you or any friend or family member

5    ever been accused of a crime or prosecuted or convicted?

6            **PROSPECTIVE JUROR 20**:  No.

7            **THE COURT**:  Have you ever served as a juror?

8            **PROSPECTIVE JUROR 20**:  I've just been called but

9    never served.

10           **THE COURT**:  Okay.  Thank you.

11           Can you tell us your name.

12           **PROSPECTIVE JUROR 21**:  Janel Lee.

13           **THE COURT**:  What's your date of birth?

14           **PROSPECTIVE JUROR 21**:  ██████, 1988.

15           **THE COURT**:  What do you do for a living?

16           **PROSPECTIVE JUROR 21**:  I'm a nurse.

17           **THE COURT**:  Are you married?

18           **PROSPECTIVE JUROR 21**:  Yes.

19           **THE COURT**:  And what's your spouse do?

20           **PROSPECTIVE JUROR 21**:  He works in an aerospace

21    company in Melbourne.

22           **THE COURT**:  Do you have any children?

23           **PROSPECTIVE JUROR 21**:  No.

24           **THE COURT**:  Do you have any friends or family in law

25    enforcement?

1          PROSPECTIVE JUROR 21:  No.

2          THE COURT:  Have you or a close friend or family

3    member ever been the victim of any form of sexual abuse?

4          PROSPECTIVE JUROR 21:  Yes.

5          THE COURT:  Ever been the victim of any other type of

6    crime?

7          PROSPECTIVE JUROR 21:  Burglaries.

8          THE COURT:  Were they able to catch the person?

9          PROSPECTIVE JUROR 21:  No.

10          THE COURT:  Anything about that experience that left

11   a bad taste in your mouth for law enforcement or the justice

12   system at all?

13          PROSPECTIVE JUROR 21:  No.

14          THE COURT:  Anything about that experience that would

15   make it difficult for you to sit, listen to the evidence in

16   this case, and render a fair and impartial verdict?

17          PROSPECTIVE JUROR 21:  No.

18          THE COURT:  Have you or any close friend or family

19   member ever been accused of a crime?

20          PROSPECTIVE JUROR 21:  Yes.

21          THE COURT:  And what was that?

22          PROSPECTIVE JUROR 21:  My brother-in-law.  He's been

23   to federal prison before.

24          THE COURT:  What for?

25          PROSPECTIVE JUROR 21:  He was getting, like, illegal

1    passports to people in China.

2            THE COURT:  Anything about that experience with your

3    brother-in-law that left a bad taste in your mouth at all for

4    the justice system?

5            PROSPECTIVE JUROR 21:  No.

6            THE COURT:  Okay.  Do you feel like even though he

7    went to prison, he was treated fairly?

8            PROSPECTIVE JUROR 21:  Yes.

9            THE COURT:  Okay.  Anything about that experience

10    that would make it difficult for you to sit, listen to the

11    evidence in this case, and render a fair and impartial verdict

12    if you were called to do so?

13            PROSPECTIVE JUROR 21:  No.

14            THE COURT:  Have you ever served as a juror?

15            PROSPECTIVE JUROR 21:  No.

16            THE COURT:  Okay.  Thank you.

17            PROSPECTIVE JUROR 21:  Thanks.

18            THE COURT:  Can you tell us your name, sir.

19            PROSPECTIVE JUROR 22:  Good morning.  My name is

20    Richard Lalonde, Jr.

21            THE COURT:  And what's your date of birth?

22            PROSPECTIVE JUROR 22:  ████████, 1978.

23            THE COURT:  What do you do for a living?

24            PROSPECTIVE JUROR 22:  I'm a fiber optic construction

25    coordinator.

1      THE COURT:  Are you married?

2      PROSPECTIVE JUROR 22:  Yes.

3      THE COURT:  And what's your spouse do?

4      PROSPECTIVE JUROR 22:  She's a nurse.

5      THE COURT:  Any children?

6      PROSPECTIVE JUROR 22:  No.

7      THE COURT:  Do you have any friends or family in law

8  enforcement?

9      PROSPECTIVE JUROR 22:  Retired, but yeah.

10      THE COURT:  Who is that?

11      PROSPECTIVE JUROR 22:  He's my uncle.

12      THE COURT:  Did you ever talk to him about his cases?

13      PROSPECTIVE JUROR 22:  Not really.

14      THE COURT:  Anything about the fact that you have an

15  uncle in law enforcement make it difficult for you to sit,

16  listen to the evidence in this case, and render a fair and

17  impartial verdict if you were called to do so?

18      PROSPECTIVE JUROR 22:  No.

19      THE COURT:  Have you or a close friend or family

20  member ever been the victim of any form of sexual abuse?

21      PROSPECTIVE JUROR 22:  Yes.

22      THE COURT:  Ever been the victim of any other type of

23  crime?

24      PROSPECTIVE JUROR 22:  No.

25      THE COURT:  Have you or any close friend or family

1    member ever been accused of a crime or prosecuted or convicted

2    of a crime?

3              **PROSPECTIVE JUROR 22:**  No.

4              **THE COURT:**  Have you ever served on a jury before?

5              **PROSPECTIVE JUROR 22:**  No.

6              **THE COURT:**  All right.  Thank you.

7              Can you tell us your name, please.

8              **PROSPECTIVE JUROR 23:**  Madalyn Alvarez.

9              **THE COURT:**  And what's your date of birth?

10             **PROSPECTIVE JUROR 23:**  ████, 1970.

11             **THE COURT:**  What do you do for a living?

12             **PROSPECTIVE JUROR 23:**  I have a nonprofit for

13   transition age youth and human trafficking awareness.

14             **THE COURT:**  Are you married?

15             **PROSPECTIVE JUROR 23:**  Yes.

16             **THE COURT:**  And what's your spouse do?

17             **PROSPECTIVE JUROR 23:**  He's in IT.

18             **THE COURT:**  Any children?

19             **PROSPECTIVE JUROR 23:**  Yes.

20             **THE COURT:**  How many?

21             **PROSPECTIVE JUROR 23:**  Four.

22             **THE COURT:**  What are their ages?

23             **PROSPECTIVE JUROR 23:**  23, 20, 13, and 12.

24             **THE COURT:**  And do any of them have jobs outside of

25   school?

1      **PROSPECTIVE JUROR 23**:  Yes.  One is a college

2  student.  The 23-year-old is a college student and an

3  esthetician; so she works as an esthetician while in school.

4  And the other one is also a college student and works at a

5  restaurant.

6      **THE COURT**:  Okay.  Do you have any friends or family

7  in law enforcement?

8      **PROSPECTIVE JUROR 23**:  Yes.

9      **THE COURT**:  And who are those?

10     **PROSPECTIVE JUROR 23**:  Just a lot of friends.  I'm

11  from up north.  So --

12     **THE COURT**:  And do you ever talk to them about their

13  cases?

14     **PROSPECTIVE JUROR 23**:  No.

15     **THE COURT**:  Anything about the fact that you have

16  friends in law enforcement that would make it difficult for you

17  to listen to the evidence in this case --

18     **PROSPECTIVE JUROR 23**:  No.

19     **THE COURT**:  -- and render a fair verdict?

20     **PROSPECTIVE JUROR 23**:  No.

21     **THE COURT**:  Okay.  Have you or any close friend or

22  family member ever been the victim of any form of sexual abuse?

23     **PROSPECTIVE JUROR 23**:  Yes.

24     **THE COURT**:  How about the victim of any other type of

25  crime?

1          PROSPECTIVE JUROR 23:  No.

2          THE COURT:  Ever -- any friend or family member or

3     yourself ever been accused of a crime or prosecuted or

4     convicted?

5          PROSPECTIVE JUROR 23:  No.

6          THE COURT:  Have you ever served as a juror before?

7          PROSPECTIVE JUROR 23:  Yes.

8          THE COURT:  And where was that?

9          PROSPECTIVE JUROR 23:  Actually, here in Orlando.

10         THE COURT:  Okay.  In state court or federal court?

11         PROSPECTIVE JUROR 23:  I believe it was federal.

12         THE COURT:  Okay.  Were you here in this courthouse?

13         PROSPECTIVE JUROR 23:  Yes.  Many years ago.

14         THE COURT:  How many?

15         PROSPECTIVE JUROR 23:  Many years ago.  I don't

16    remember.

17         THE COURT:  Do you remember if it was a civil or

18    criminal case?

19         PROSPECTIVE JUROR 23:  I think it was criminal.

20         THE COURT:  Were you the foreperson?

21         PROSPECTIVE JUROR 23:  No.

22         THE COURT:  And without telling us a verdict, were

23    you able to pick a verdict?

24         PROSPECTIVE JUROR 23:  Yes.

25         THE COURT:  Or make one.

1          Okay.  Do you recall what the crime was?

2          **PROSPECTIVE JUROR 23:**  It was drug related.

3          **THE COURT:**  Drug related.  Okay.

4          Well, the instructions you were given in that case

5     are going to be different than you're going to be given in this

6     case.  So do you agree to put whatever you recall from those

7     instructions aside and, if you're selected as a juror, to just

8     listen to the instructions I give you in this case and follow

9     those?

10         **PROSPECTIVE JUROR 23:**  Yes.

11         **THE COURT:**  Okay.  Thank you.

12         Can you tell us your name, please.

13         **PROSPECTIVE JUROR 24:**  Jeff Dabney.

14         **THE COURT:**  And what's your date of birth?

15         **PROSPECTIVE JUROR 24:**  ██/██/73.

16         **THE COURT:**  And what do you do for a living, sir?

17         **PROSPECTIVE JUROR 24:**  Real estate appraiser.

18         **THE COURT:**  Are you married?

19         **PROSPECTIVE JUROR 24:**  No.

20         **THE COURT:**  Any children?

21         **PROSPECTIVE JUROR 24:**  Yes.

22         **THE COURT:**  How many?

23         **PROSPECTIVE JUROR 24:**  One.  Seventeen.

24         **THE COURT:**  Is he -- male?  Female?

25         **PROSPECTIVE JUROR 24:**  Male.

1        THE COURT:  Is he in school?

2        PROSPECTIVE JUROR 24:  He's homeschooled, and he

3    works at Office Depot.

4        THE COURT:  Any friends or family in law enforcement?

5        PROSPECTIVE JUROR 24:  Yes.

6        THE COURT:  Who do you have?

7        PROSPECTIVE JUROR 24:  I know several.  County,

8    state.

9        THE COURT:  Do you ever talk about their cases with

10   them?

11       PROSPECTIVE JUROR 24:  One of them, I did a few.

12       THE COURT:  Okay.  Anything about the fact that you

13   have several friends --

14       I'm assuming friends.

15       PROSPECTIVE JUROR 24:  Yes, friends.

16       THE COURT:  -- in law enforcement affect your ability

17   to sit, listen to the evidence in this case, and render a fair

18   and impartial verdict if you were called to do so?

19       PROSPECTIVE JUROR 24:  I don't think so.

20       THE COURT:  Well, I have to know whether you can.

21       PROSPECTIVE JUROR 24:  Okay.  I'll say no.

22       THE COURT:  No.  Okay.

23       Have you or any close friend or family member ever

24   been the victim of any form of sexual abuse?

25       PROSPECTIVE JUROR 24:  Several.

1      THE COURT:  Ever been the victim of any other type of

2  crime?

3      PROSPECTIVE JUROR 24:  No.

4      THE COURT:  Ever been accused of any crime or

5  convicted or prosecuted other than traffic offenses?

6      PROSPECTIVE JUROR 24:  My brother.

7      THE COURT:  Okay.  And what was that for?

8      PROSPECTIVE JUROR 24:  Drugs.

9      THE COURT:  And do you have any opinion as to whether

10  he was treated fairly by the system?

11      PROSPECTIVE JUROR 24:  I don't.  I don't have any

12  details of it.  I wasn't in the state at the time.

13      THE COURT:  So anything about the fact that your

14  brother was prosecuted for -- for a drug have any -- affect

15  your ability to sit --

16      PROSPECTIVE JUROR 24:  No.

17      THE COURT:  -- and render a fair and impartial

18  verdict?

19      PROSPECTIVE JUROR 24:  No.

20      THE COURT:  Have you ever served as a juror before?

21      PROSPECTIVE JUROR 24:  No.

22      THE COURT:  Okay.  Thank you.

23      Can you tell us your name, please.

24      PROSPECTIVE JUROR 25:  Shimika Haggins.

25      THE COURT:  What's your date of birth?

1    **PROSPECTIVE JUROR 25:**  ████████, 1978.

2    **THE COURT:**  September birthdays coming around again.

3    What do you do for a living?

4    **PROSPECTIVE JUROR 25:**  I'm the center manager at an

5    urgent care.

6    **THE COURT:**  Are you married?

7    **PROSPECTIVE JUROR 25:**  No, I'm not.

8    **THE COURT:**  Any children?

9    **PROSPECTIVE JUROR 25:**  Yes.

10    **THE COURT:**  How many?

11    **PROSPECTIVE JUROR 25:**  One.

12    **THE COURT:**  What's the age?

13    **PROSPECTIVE JUROR 25:**  Twenty-three.

14    **THE COURT:**  Are they working?

15    **PROSPECTIVE JUROR 25:**  Yes.

16    **THE COURT:**  Doing what?

17    **PROSPECTIVE JUROR 25:**  She works as a referral

18    coordinator for a doctor's office.

19    **THE COURT:**  Do you have any friends or family members

20    in law enforcement?

21    **PROSPECTIVE JUROR 25:**  No.

22    **THE COURT:**  Have you or any close friend or family

23    member ever been the victim of any form of sexual abuse?

24    **PROSPECTIVE JUROR 25:**  Yes.

25    **THE COURT:**  How about any other type of crime?

1          PROSPECTIVE JUROR 25:  Yes.

2          THE COURT:  What?

3          PROSPECTIVE JUROR 25:  Murder.

4          THE COURT:  Was that a friend or a family member?

5          PROSPECTIVE JUROR 25:  My family.

6          THE COURT:  Your family.

7          Was the individual caught and prosecuted?

8          PROSPECTIVE JUROR 25:  No.

9          THE COURT:  So not caught?

10         PROSPECTIVE JUROR 25:  Not caught.

11         THE COURT:  Not prosecuted?

12         PROSPECTIVE JUROR 25:  Not prosecuted.

13         THE COURT:  They never found who did it?

14         PROSPECTIVE JUROR 25:  No.

15         THE COURT:  How long ago was that?

16         PROSPECTIVE JUROR 25:  I think about seven years ago.

17         THE COURT:  Sorry to hear that.

18         And was it here in Orlando or somewhere else?

19         PROSPECTIVE JUROR 25:  In Sanford.

20         THE COURT:  Sanford.

21         So is it considered a cold case?  Are they still

22    trying to --

23         PROSPECTIVE JUROR 25:  They say they're still trying,

24    yes.

25         THE COURT:  Okay.  Sometimes they can find out years

1    later.  It does happen.

2           PROSPECTIVE JUROR 25:  It does happen.

3           THE COURT:  Anything about that experience, other

4    than the trauma of it, about the way it's been handled

5    throughout the justice system -- anything about that that

6    leaves a bad taste in your mouth that would make it difficult

7    for you to sit and listen to the evidence in this case?

8           PROSPECTIVE JUROR 25:  No.

9           THE COURT:  Okay.  Have you had any close friends or

10   family members that were ever accused -- or you -- that were

11   ever accused of a crime or prosecuted or convicted of a crime

12   other than traffic?

13          PROSPECTIVE JUROR 25:  Yes.

14          THE COURT:  And who is that?

15          PROSPECTIVE JUROR 25:  My cousins have been convicted

16   of drugs, and my daughter's father actually was convicted of a

17   sexual misconduct.

18          THE COURT:  Okay.  Anything about those two cases

19   with your cousin and your daughter's father make it difficult

20   for you to sit, listen to the evidence in this case, and render

21   a fair and impartial verdict?

22          PROSPECTIVE JUROR 25:  I mean, I don't agree with how

23   my daughter's father was, I guess, convicted.  They were under

24   the age when they were dating, and as soon as he turned 18,

25   they pressed charges and found him, you know, guilty.

1          **THE COURT:**  Okay.

2          **PROSPECTIVE JUROR 25:**  So now he's labeled for the

3     rest of his life.

4          **THE COURT:**  So anything about that, though, that

5     would make it difficult for you to sit and listen to the

6     evidence in this case and render a fair and impartial verdict

7     if you were called to do so?

8          **PROSPECTIVE JUROR 25:**  No.

9          **THE COURT:**  Okay.  Have you ever served as a juror?

10         **PROSPECTIVE JUROR 25:**  No.

11         **THE COURT:**  Okay.  Thank you.

12         Tell us your name, sir.

13         **PROSPECTIVE JUROR 26:**  Hello.  My name is

14    Tyler Fernandez.

15         **THE COURT:**  And what's your date of birth?

16         **PROSPECTIVE JUROR 26:**  ████████, 1999.

17         **THE COURT:**  What do you do for a living?

18         **PROSPECTIVE JUROR 26:**  I'm an HVAC technician.

19         **THE COURT:**  Are you married?

20         **PROSPECTIVE JUROR 26:**  No.

21         **THE COURT:**  Any children?

22         **PROSPECTIVE JUROR 26:**  No.

23         **THE COURT:**  Do you have any friends or family in law

24    enforcement?

25         **PROSPECTIVE JUROR 26:**  Just one friend and maybe a

1  few customers, but that's it.

2           **THE COURT:**  Anything about the fact that you have a

3  friend and some customers in law enforcement that would make it

4  difficult for you to sit, listen to the evidence in this case,

5  and render a fair and impartial verdict?

6           **PROSPECTIVE JUROR 26:**  No.

7           **THE COURT:**  Have you or any close friend or family

8  member ever been the victim of any form of sexual abuse?

9           **PROSPECTIVE JUROR 26:**  No.

10           **THE COURT:**  Ever been the victim of any other type of

11  crime?

12           **PROSPECTIVE JUROR 26:**  No.

13           **THE COURT:**  Have you or any close friend or family

14  member ever been accused or convicted or prosecuted of any

15  crime?

16           **PROSPECTIVE JUROR 26:**  My uncle was convicted for

17  fraud, I think.

18           **THE COURT:**  Okay.  Anything about the fact that your

19  uncle was convicted that left a bad taste in your mouth for the

20  justice system that would affect your ability to sit, listen to

21  the evidence, and render a fair and impartial verdict here?

22           **PROSPECTIVE JUROR 26:**  No.

23           **THE COURT:**  Have you ever served as a juror before?

24           **PROSPECTIVE JUROR 26:**  No.

25           **THE COURT:**  Thank you.

1        Can you tell us your name.

2        **PROSPECTIVE JUROR 27:**  Angela Beitia.

3        **THE COURT:**  And what's your date of birth?

4        **PROSPECTIVE JUROR 27:**  ███████, 1954.

5        **THE COURT:**  And you told us earlier that you've been

6    a flight attendant for years.

7        **PROSPECTIVE JUROR 27:**  Yes.

8        **THE COURT:**  And which airline?

9        **PROSPECTIVE JUROR 27:**  Allegiant.

10        **THE COURT:**  Are you married?

11        **PROSPECTIVE JUROR 27:**  No.

12        **THE COURT:**  Any children?

13        **PROSPECTIVE JUROR 27:**  A 43-year-old daughter.

14        **THE COURT:**  And what's she do?

15        **PROSPECTIVE JUROR 27:**  Flight attendant.

16        **THE COURT:**  Same company?

17        **PROSPECTIVE JUROR 27:**  Yes.

18        **THE COURT:**  Do you have any friends or family in law

19    enforcement?

20        **PROSPECTIVE JUROR 27:**  Yes.  I have a nephew,

21    Daytona Beach, and former coworkers for the Port Orange Police

22    Department.

23        **THE COURT:**  Anything about the fact that you have

24    friends and family in law enforcement that would affect your

25    ability to sit and listen to the evidence and render a fair

1    verdict?

2            PROSPECTIVE JUROR 27:  No.

3            THE COURT:  Have you or any close friend or family

4    member ever been the victim of any form of sexual abuse?

5            PROSPECTIVE JUROR 27:  No.

6            THE COURT:  Ever been the victim of any other type of

7    crime?

8            PROSPECTIVE JUROR 27:  No.

9            THE COURT:  Ever been accused of any crime?

10           PROSPECTIVE JUROR 27:  No.

11           THE COURT:  Okay.  Have you ever served as a juror

12   before?

13           PROSPECTIVE JUROR 27:  No.

14           THE COURT:  Okay.  Thank you.

15           Yes, ma'am.  Can you tell us your name, please.

16           PROSPECTIVE JUROR 28:  I'm Mbombo Anita Privott.

17           THE COURT:  And what's your date of birth?

18           PROSPECTIVE JUROR 28:  I'm sorry.  Jarrells.

19           █/█/76.

20           THE COURT:  What do you do for a living?

21           PROSPECTIVE JUROR 28:  I am a nurse.

22           THE COURT:  Are you married?

23           PROSPECTIVE JUROR 28:  Yes.

24           THE COURT:  And what's your spouse do?

25           PROSPECTIVE JUROR 28:  He's a nurse.

1      **THE COURT**:  Any children?

2      **PROSPECTIVE JUROR 28**:  Yes.  Three.  30 years old,

3  20, and 15.

4      **THE COURT**:  And what do they -- the 30- and

5  20-year-old -- do they work outside the home?

6      **PROSPECTIVE JUROR 28**:  My 30 years old is a mechanic

7  in Connecticut; and my daughter is 20, goes to UCF.

8      **THE COURT**:  Okay.  And your 15-year-old is in high

9  school?

10     **PROSPECTIVE JUROR 28**:  Yes.

11     **THE COURT**:  Do you have any friends or family members

12  in law enforcement?

13     **PROSPECTIVE JUROR 28**:  Yes.  My husband's niece is a

14  sheriff in Sanford.

15     **THE COURT**:  Do you ever talk to her about any of her

16  cases?

17     **PROSPECTIVE JUROR 28**:  No.

18     **THE COURT**:  Anything about the fact that your niece

19  is a sheriff's officer affect your ability to sit and listen to

20  the evidence in this case and render a fair and impartial

21  verdict if you were called to do so?

22     **PROSPECTIVE JUROR 28**:  No.

23     **THE COURT**:  Have you or any close friend or family

24  member ever been the victim of any form of sexual abuse?

25     **PROSPECTIVE JUROR 28**:  No.

1    **THE COURT:**  How about any other type of crime?

2    **PROSPECTIVE JUROR 28:**  I've been the victim, yes.

3    I've been burglarized a couple times -- home and car.

4    **THE COURT:**  Were they ever able to catch the person

5    who did it?

6    **PROSPECTIVE JUROR 28:**  No.

7    **THE COURT:**  Anything about the fact that you were a

8    victim of a burglary and the fact they weren't able to catch

9    anybody leave a bad taste in your mouth for law enforcement or

10    the criminal justice system that would make it difficult for

11    you to sit, listen to the evidence, and render a fair and

12    impartial verdict?

13    **PROSPECTIVE JUROR 28:**  No.

14    **THE COURT:**  Have you or any friend or close family

15    member ever been accused of a crime or convicted or prosecuted

16    in any way for anything?

17    **PROSPECTIVE JUROR 28:**  Yes.

18    **THE COURT:**  And who is that?

19    **PROSPECTIVE JUROR 28:**  I had a boyfriend accuse me of

20    stealing his credit card.  I did a pretrial intervention for

21    that.

22    My estranged father was murdered by my brother in

23    Las Vegas, and I have a brother-in-law that's in prison for

24    sexual assault.

25    **THE COURT:**  Anything about any of those

1    relationships, including the case that your boyfriend filed

2    against you, that would make it difficult for you to sit,

3    listen to the evidence in this case, and render a fair and

4    impartial verdict if you were called to do so?

5            **PROSPECTIVE JUROR 28:**  No.

6            **THE COURT:**  Have you ever served as a juror?

7            **PROSPECTIVE JUROR 28:**  No.

8            **THE COURT:**  Thank you.

9            Can you tell us your name, please.

10           **PROSPECTIVE JUROR 29:**  Karen Mitchell.

11           **THE COURT:**  And what's your date of birth?

12           **PROSPECTIVE JUROR 29:**  ██/██/62.

13           **THE COURT:**  And what do you do for a living?

14           **PROSPECTIVE JUROR 29:**  Tactical communications.

15           **THE COURT:**  I'm sorry?

16           **PROSPECTIVE JUROR 29:**  Tactical communications for a

17   national law enforcement center.

18           **THE COURT:**  What is -- what do you do in tactical

19   communications?

20           **PROSPECTIVE JUROR 29:**  After the officers or agents

21   enter a residence or -- then they call me to find out more

22   information either about the other people in the room or about

23   the individual themselves.

24           **THE COURT:**  Okay.  Interesting.

25           And which law enforcement agency is that with?

1          **PROSPECTIVE JUROR 29:**  Department of Homeland

2     Security.

3          **THE COURT:**  Are you married?

4          **PROSPECTIVE JUROR 29:**  No.

5          **THE COURT:**  Any children?

6          **PROSPECTIVE JUROR 29:**  One.

7          **THE COURT:**  How old?

8          **PROSPECTIVE JUROR 29:**  Thirty-nine.

9          **THE COURT:**  And what's your 39-year-old do for a

10    living?

11         **PROSPECTIVE JUROR 29:**  She works at a factory in

12    Missouri.

13         **THE COURT:**  So you yourself were in law enforcement.

14    Do you have any other friends or family in law enforcement?

15         **PROSPECTIVE JUROR 29:**  Almost everybody.

16         **THE COURT:**  And anything about the fact that you,

17    yourself, and most of your friends and family are in law

18    enforcement affect your ability to sit, listen to the evidence

19    in this case, and render a fair and impartial verdict if you

20    were called to do so?

21         **PROSPECTIVE JUROR 29:**  No.

22         **THE COURT:**  Have you or any close friend or family

23    member ever been the victim of any form of sexual abuse?

24         **PROSPECTIVE JUROR 29:**  Yes.

25         **THE COURT:**  Ever been the victim of any other type of

1    crime?

2                    PROSPECTIVE JUROR 29:  Yes.  Burglary.

3             THE COURT:  Burglary.  They catch the person?

4                    PROSPECTIVE JUROR 29:  Not for sure.  The report was

5    filed.

6             THE COURT:  Anything about that experience that would

7    affect your ability to sit as a juror?

8                    PROSPECTIVE JUROR 29:  No.

9             THE COURT:  Have you or a close friend or family

10   member ever been accused of, convicted of, prosecuted for any

11   type of crime other than a traffic offense?

12                   PROSPECTIVE JUROR 29:  Yes.

13            THE COURT:  And who is that?

14                   PROSPECTIVE JUROR 29:  My daughter.  Drugs.

15            THE COURT:  And how was that resolved?

16                   PROSPECTIVE JUROR 29:  She went to prison.

17            THE COURT:  Do you think she was treated fairly?

18                   PROSPECTIVE JUROR 29:  Yes.

19            THE COURT:  Anything about that experience that would

20   make it difficult for you to sit as a juror in this case?

21                   PROSPECTIVE JUROR 29:  No, ma'am.

22            THE COURT:  Have you ever served as a juror?

23                   PROSPECTIVE JUROR 29:  No, ma'am.

24            THE COURT:  Thank you.

25                    All right.  Tell me your name, sir.

1              PROSPECTIVE JUROR 30:  I'm Justin Costello.

2              THE COURT:  What's your date of birth?

3              PROSPECTIVE JUROR 30:  ███████, 1992.

4              THE COURT:  What do you do for a living?

5              PROSPECTIVE JUROR 30:  I'm a transaction coordinator

6    for a real estate company.

7              THE COURT:  Are you married?

8              PROSPECTIVE JUROR 30:  No.

9              THE COURT:  Any children?

10              PROSPECTIVE JUROR 30:  No.

11              THE COURT:  Any friends or family in law enforcement?

12              PROSPECTIVE JUROR 30:  No.

13              THE COURT:  Have you or any close friend or family

14    member ever been the victim of any form of sexual abuse?

15              PROSPECTIVE JUROR 30:  No.

16              THE COURT:  Ever been the victim of any other type of

17    crime?

18              PROSPECTIVE JUROR 30:  No.

19              THE COURT:  Have you or any close friend or family

20    member ever been accused, convicted, prosecuted of any type of

21    crime?

22              PROSPECTIVE JUROR 30:  Yes.  My cousin.

23              THE COURT:  And what was that for?

24              PROSPECTIVE JUROR 30:  Some kind of fraud, like a

25    financial scam.

1    **THE COURT:** And were they convicted of that offense?

2    **PROSPECTIVE JUROR 30:** Yes, they were.

3    **THE COURT:** And anything -- do you think they were

4    treated fairly?

5    **PROSPECTIVE JUROR 30:** Yeah. Definitely came out a

6    better person, I think.

7    **THE COURT:** Anything about that experience that would

8    make it -- or the fact that your cousin was convicted affect

9    your ability to sit, listen to the evidence in this case, and

10   render a fair and impartial verdict if you were called to do

11   so?

12   **PROSPECTIVE JUROR 30:** No.

13   **THE COURT:** Have you ever served as a juror?

14   **PROSPECTIVE JUROR 30:** No.

15   **THE COURT:** Thank you.

16   **PROSPECTIVE JUROR 30:** Thank you.

17   **THE COURT:** I'm going to go through some group

18   questions now, and so if you'd just answer, you know, "yes" or

19   "no"; and if there's -- anybody's answer differs from any other

20   answer of the group, then I'll ask you individually.

21   Does any member of the jury panel have any matter

22   pending before the United States Attorney's Office, in this

23   district or any other district, in which you're involved as a

24   party, a witness, or the subject of some legal action?

25   **THE VENIRE:** No.

1          THE COURT:  Has anyone ever been called to testify as

2     a witness in any court?

3          THE VENIRE:  No.

4          THE COURT:  Do any of you know anyone else sitting on

5     the panel?

6          THE VENIRE:  No.

7          THE COURT:  Has anybody ever served in the military?

8          THE VENIRE:  Yes.

9          THE COURT:  So we have a couple in the military.

10          Mr. Lloyd, you served in the military.  What branch?

11          PROSPECTIVE JUROR 19:  U.S. Army.

12          THE COURT:  And what rank?

13          PROSPECTIVE JUROR 19:  E-4 promotable.

14          THE COURT:  Thank you for your service.

15          And who else?

16          Yes, ma'am.  Ms. Mitchell, in what arm of the armed

17     forces?

18          PROSPECTIVE JUROR 29:  Navy.  United States Navy.

19          THE COURT:  What was your rank?

20          PROSPECTIVE JUROR 29:  E-6.

21          THE COURT:  Thank you for your service.

22          Anyone else?

23          Does any member of the jury panel have any strong

24     feelings about the United States government or, more

25     specifically, the U.S. Federal Bureau of Investigation, or FBI;

1    the federal marshals; the Orlando Police Department that might

2    interfere with your ability to remain fair and impartial?

3            **THE VENIRE:**  No.

4            **PROSPECTIVE JUROR 29:**  Yes.  Maybe.  I worked at OPD.

5    I work federal now.

6            **THE COURT:**  And so you worked at the OPD?

7            **PROSPECTIVE JUROR 29:**  Yes.  In the dispatch.

8            **THE COURT:**  In dispatch.  So you believe that that

9    would affect your ability to remain fair and impartial in this

10   case?

11           **PROSPECTIVE JUROR 29:**  I knew a lot of the officers.

12   So I'm not for sure, but I would say no, I should be able to.

13           **THE COURT:**  Okay.  All right.  Anyone else?

14           Yes, sir?

15           **PROSPECTIVE JUROR 8:**  I did get called to be a

16   witness.  Sorry.  I just remembered.  I did get called to be a

17   witness once, but I didn't have to, like -- I don't know.  We

18   just sat outside, and they didn't need me.

19           **THE COURT:**  Okay.  So you weren't actually called?

20   You were called, but you didn't testify?

21           **PROSPECTIVE JUROR 8:**  Correct.  We just sat outside,

22   and they ended up resolving it without needing the witnesses.

23           **THE COURT:**  What kind of case was it?

24           **PROSPECTIVE JUROR 8:**  I worked at a pawnshop, and

25   there was a theft in the pawnshop.

1    **THE COURT:**  Okay.  All right.  Thank you.

2    Do any one of you have any particular strong view pro

3    or against law enforcement in general that may interfere with

4    your ability to remain fair and impartial?

5    **THE VENIRE:**  No.

6    **PROSPECTIVE JUROR 29:**  That one's yes.  Yes, I do.

7    **THE COURT:**  Okay.  Okay.  And what is that?

8    **PROSPECTIVE JUROR 29:**  I work a lot of the cases with

9    the agents and the officers when they do their -- once they go

10   inside the residences.  So I make a lot of the decisions as far

11   as who might be someone they might need to look at or there's

12   something questionable in somebody's background.  I do a lot of

13   the tactical when it comes to the --

14   **THE COURT:**  Okay.  So do you have a view -- so your

15   view would be more pro law enforcement?

16   **PROSPECTIVE JUROR 29:**  Yes.

17   **THE COURT:**  Okay.  All right.  Thank you.

18   Is there anyone here on the panel who believes they

19   would be unable to evaluate the credibility of a law

20   enforcement officer the same way as they would evaluate the

21   credibility of any other witness, or would you be more or less

22   likely to believe a law enforcement officer simply because he

23   or she is a law enforcement officer?

24   **THE VENIRE:**  No.

25   **THE COURT:**  Okay.  All right.

1          Now, a witness who is under the age of 18 is to be

2     treated the same as any witness in this case.  Is there anyone

3     here who cannot believe a witness simply because they are under

4     the age of 18?

5          THE VENIRE:  No.

6          THE COURT:  All right.  And if you are called to

7     serve as a juror in this case, I will give you -- instruct you

8     on how to evaluate the testimony of witnesses and credibility

9     of witnesses, and you're to evaluate each witness as you would

10    evaluate any other.

11         Do you-all understand?

12         THE VENIRE:  Yes.

13         THE COURT:  And it's up to you to determine the

14    credibility of any witness that testifies in this case.

15         Is there anyone here who believes an adult is a more

16    credible witness than a child simply because they're an adult?

17         THE VENIRE:  No.

18         THE COURT:  Is there anyone here who believes that a

19    child is automatically more credible than an adult just because

20    they're a child?

21         THE VENIRE:  No.

22         THE COURT:  Have any of you, a close friend, or

23    relative ever taken a medication to treat insomnia at all?

24         THE VENIRE:  No.

25         THE COURT:  Mr. Glaze.

1          **PROSPECTIVE JUROR 2:**  My mom, yeah.  My mom takes

2     just, like, sleeping medicine.

3          **THE COURT:**  Okay.  What does she take?  Do you know?

4          **PROSPECTIVE JUROR 2:**  I don't -- I don't remember the

5     name of the medication.  I'm sorry.

6          **THE COURT:**  Okay.  Anybody else?

7          Has anyone here ever been diagnosed with any type of

8     anxiety disorder, or do you have a close friend or family

9     member diagnosed with any type of anxiety disorder?

10         **THE VENIRE:**  Yes.

11         **THE COURT:**  A few of them.  Okay.

12         **PROSPECTIVE JUROR 2:**  So, yeah.  My mom is bipolar,

13    manic depressant, anxiety, that kind of stuff, yeah.

14         **PROSPECTIVE JUROR 8:**  Yeah.  I was actually diagnosed

15    with anxiety.

16         **THE COURT:**  Okay.  And do you take medication for it?

17         **PROSPECTIVE JUROR 8:**  Not anymore.

18         **THE COURT:**  Okay.

19         **PROSPECTIVE JUROR 8:**  I mean, I -- like, it's

20    prescribed, but it's, like -- I don't know how to say it.  I

21    take it if I need it.  It's not something that --

22         **THE COURT:**  It's just as needed?

23         **PROSPECTIVE JUROR 8:**  Yeah.

24         **THE COURT:**  What is it they prescribed you?

25         **PROSPECTIVE JUROR 8:**  It starts with a C.  I don't

1  remember the full name of it.

2          **THE COURT:**  Okay.  All right.  But you're not

3  currently taking it?

4          **PROSPECTIVE JUROR 8:**  No.

5          **THE COURT:**  Okay.  Thank you.

6          Anyone -- I think, Carlos, we have one down here

7  first, Ms. O'Brien.

8          **PROSPECTIVE JUROR 12:**  I was diagnosed with anxiety.

9  I take BuSpar as needed.

10         **THE COURT:**  Okay.  All right.  Thank you.

11         **PROSPECTIVE JUROR 14:**  I was diagnosed with anxiety

12  several years ago and not currently taking medication.

13         **THE COURT:**  Not taking anything.  Okay.

14         **PROSPECTIVE JUROR 15:**  Was the question you or any

15  family member or friends?

16         **THE COURT:**  Yes.

17         **PROSPECTIVE JUROR 15:**  My brother has bipolar.

18         **THE COURT:**  Okay.  All right.  Anyone else in the

19  second row?

20         **PROSPECTIVE JUROR 17:**  I was diagnosed with anxiety,

21  and I take Celexa every day.

22         **THE COURT:**  Okay.  Thank you.

23         **PROSPECTIVE JUROR 19:**  I've been diagnosed with

24  anxiety and depression.  No medication for either one.

25         **THE COURT:**  Okay.

1          **PROSPECTIVE JUROR 19:** And my entire family has,

2   basically, neurological issues, OCD. My mom's a little bit

3   crazy. She's under medication. I don't know the name of it.

4          **THE COURT:** Okay. Thank you.

5          **PROSPECTIVE JUROR 23:** Two of my girls. One of them

6   is given hydroxyzine, I believe. I don't know the name of it.

7   The other one, separation anxiety and doesn't have any

8   medication right now.

9          **THE COURT:** And the first child you were talking

10  about -- what is she diagnosed with?

11         **PROSPECTIVE JUROR 23:** Anxiety and depression.

12         **THE COURT:** Okay. Anyone else?

13         Yes, sir.

14         **PROSPECTIVE JUROR 24:** My brother had something. I

15  don't know what it was. But he took Zoloft for it.

16         **THE COURT:** Okay. Thank you.

17         And Ms. Mitchell.

18         **PROSPECTIVE JUROR 29:** And it's my daughter, bipolar,

19  and she's currently medicated. So --

20         **THE COURT:** For those of you who answered yes to this

21  question, would the fact either you or a close family member

22  have been -- suffered with some form of anxiety disorder affect

23  your ability to be fair and impartial towards a witness if you

24  learned that that witness had an anxiety disorder?

25         **THE VENIRE:** No.

1          **THE COURT:**  Okay.  Have any of you been negatively

2     affected at all by your or someone else's alcohol or drug use?

3          **THE VENIRE:**  Yes.

4          **THE COURT:**  Okay.  We'll start with Ms. Vincent.

5          Can you explain, please.

6          **PROSPECTIVE JUROR 1:**  That would be -- the law

7     enforcement ex had an alcohol issue that very negatively

8     affected our relationship.

9          **THE COURT:**  All right.  Thank you.

10          Mr. Glaze.

11          **PROSPECTIVE JUROR 2:**  Excuse me.  So my dad was never

12     in the picture.  He left when I was small, like a baby, because

13     of alcohol.  And then I myself drank heavily for, like,

14     ten years.  I just made three years sober.  So --

15          **THE COURT:**  Wonderful.

16          **PROSPECTIVE JUROR 2:**  Thank you.

17          **PROSPECTIVE JUROR 3:**  Both of my parents are

18     alcoholics, and my father actually died because of it.

19          **THE COURT:**  Okay.  All right.  Thank you.

20          Mr. Mundy.

21          Oh, Mr. Susana.

22          **PROSPECTIVE JUROR 8:**  Yeah.  My father has drug abuse

23     issues, and we don't have a relationship because of it.

24          **THE COURT:**  Okay.  Thank you.

25          Yes, Mr. Mundy.

1    PROSPECTIVE JUROR 9:  My father as well was an
2    alcoholic and drug addict.
3    THE COURT:  Anyone else on the first row?
4    Second row?
5    PROSPECTIVE JUROR 17:  Both my parents in my
6    childhood were -- had problems with opioids.
7    THE COURT:  Were they able to beat it?
8    PROSPECTIVE JUROR 17:  My dad, yes.  My mom -- I
9    don't have a relationship with her; so I don't know.
10    THE COURT:  All right.  Thank you.
11    Anyone else?
12    Mr. Lloyd.
13    PROSPECTIVE JUROR 19:  Many years ago, I was -- I'm a
14    recovering alcoholic.  I was a functional alcoholic in the
15    military, addicted to painkillers, got off both of those years
16    ago.  My cousin by marriage has an ongoing war he's losing with
17    alcohol and drugs in multiple states.
18    THE COURT:  Okay.  Thank you.
19    PROSPECTIVE JUROR 24:  My father had alcohol-induced
20    Alzheimer's, and my brother was a heavy drug user and is now
21    dead because of them.
22    THE COURT:  Anyone else?
23    PROSPECTIVE JUROR 28:  My ex-husband, the father of
24    my children, passed away from liver cirrhosis for alcohol
25    abuse.

1      **THE COURT**:  For those of you who answered yes to that

2      question, would any of you believe that either the experience

3      that you had personally or any experience that you underwent

4      with a family member affect your ability to be fair and

5      impartial if there was evidence at all that the defendant was

6      intoxicated in this case?

7      **THE VENIRE**:  No.

8      **THE COURT**:  Mr. Normann.

9      **PROSPECTIVE JUROR 3**:  My father abused me as a child

10     while he was drinking.  So --

11     **THE COURT**:  Okay.  All right.  Thank you, sir.

12     Anyone else?  No?

13     Okay.  Now, I anticipate that there will be testimony

14     and evidence in this case that will concern frank and graphic

15     discussion about sexual activity with a minor.  You might find

16     some or all of it offensive, but there are many situations in

17     which a person serving as a juror must see or hear about things

18     they find offensive.  Some people, however, might have personal

19     experiences that might make the hearing of the alleged sexual

20     activity more than offensive.

21     Would being exposed to such material make you too

22     uncomfortable to allow you to sit as a juror in this case?

23     **THE VENIRE**:  No.

24     **THE COURT**:  Okay.  There are a show of hands for

25     yeses.  We can just have a show of hands for yeses.  We don't

1    need to -- keep your hands up so I can --

2        (Pause in proceedings.)

3        **THE COURT:**  Okay.  All right.  In the same vein, this

4    case is not about whether the charges or any of the evidence

5    presented will be ugly or will be troubling.  The case is about

6    requiring the United States to prove its allegation beyond a

7    reasonable doubt.  So if the United States fails to meet their

8    burden of proof, you must find the defendant not guilty

9    regardless of how ugly or troubling these allegations are.

10       Do you understand?

11       **THE VENIRE:**  Yes.

12       **THE COURT:**  And, conversely, if you find that the

13   Government has met its burden of proof, then you should find

14   the defendant guilty.  Do you understand?

15       **THE VENIRE:**  Yes.

16       **THE COURT:**  Does anybody have any problem with these

17   responsibilities?

18       **THE VENIRE:**  No.

19       **THE COURT:**  Now, this case is scheduled to be tried

20   this week.  We're going to try to pick the jury today.  As soon

21   as we get a jury selected, then we'll go into opening

22   statements and begin this trial, which should end by Friday.

23       Correct?

24       **MR. FELICETTA:**  Yes, Your Honor.

25       **MR. LASNETSKI:**  Yes, Your Honor.

1          **THE COURT:**  All right.  Does anybody have a conflict

2     with this week?  Today through Friday?

3          **THE VENIRE:**  No.

4          **THE COURT:**  Okay.  So if you have a conflict, tell

5     me -- let me know what that conflict is.

6          **PROSPECTIVE JUROR 1:**  A doctor's appointment on

7     Thursday, I believe.

8          **THE COURT:**  Is that something that can be

9     rescheduled?

10         **PROSPECTIVE JUROR 1:**  It's a cancer screening.  I

11    don't know how serious it is.  I can try to reschedule it.

12         **THE COURT:**  What time's your appointment?

13         **PROSPECTIVE JUROR 1:**  9:30.

14         **THE COURT:**  Do you know how long it's going to last?

15         **PROSPECTIVE JUROR 1:**  I'm not sure.  I don't know

16    what all they want to do at this point.

17         **THE COURT:**  Okay.  All right.  Thank you.

18         Anybody else?

19         **PROSPECTIVE JUROR 2:**  Yes.  So tomorrow I need to

20    bring my mother-in-law to a doctor's appointment.  Tomorrow

21    afternoon.  It's either 2:00 or 3:00.

22         **THE COURT:**  Is that something somebody else could do

23    for your mother-in-law?  Is your wife available?

24         **PROSPECTIVE JUROR 2:**  I do the lifting and

25    everything.  She's really disabled.  She can't really walk on

1  her own or anything.  So I do, like, the heavy lifting; so I

2  need to be able to get her around and, you know, in and out the

3  car and everything.

4       THE COURT:  Okay.  Okay.  Thank you.

5       PROSPECTIVE JUROR 3:  My wife and I are flying out of

6  the country on Thursday.

7       THE COURT:  Okay.  Thank you.

8       Anyone else on the front row?

9       All right.  Second row?

10       Mr. Winter.

11       PROSPECTIVE JUROR 20:  I have family flying in from

12  out of country today that I just have to figure out what to do

13  with them as they stay with me through Saturday.

14       THE COURT:  Okay.  Okay.

15       PROSPECTIVE JUROR 27:  I take care of my grandson

16  two days a week starting Thursday evening through the rest of

17  the week, and he's autistic, six years old.

18       THE COURT:  Okay.  All right.  Anyone else in the

19  back row?

20       Okay.  Is there any other reason at all that you feel

21  you could not sit as a juror in this case, that being whether

22  it's religious, mental or physical limitations, language

23  limitations, strong feelings about the subject matter, which

24  some of you have already indicated to me about, that would

25  prevent you from concentrating on the evidence presented during

1    this trial?

2                 THE VENIRE:  No.

3                 THE COURT:  Okay.  Okay.  So at this time there are a

4    number of you who answered yes to that question, and we're

5    going to talk to you individually, but everyone -- why don't

6    you just let everybody go downstairs, and then we can bring

7    people back as we need to at this time.

8                 THE COURT SECURITY OFFICER:  We can leave them here

9    on the third floor so it's easier to bring them back and forth.

10               THE COURT:  Sure.  So let's see.  Take everybody

11   downstairs first because I want to discuss something with

12   counsel first, and then we'll bring -- we'll bring everybody

13   that needs to come back up, up.  Okay.

14         (Venire Panel 1 out at 11:04 AM.)

15               THE COURT:  Okay.  So there are a number of

16   prospective jurors that answered "yes" to the sexual abuse

17   question.  Some of them have already, in my view, answered

18   questions that would have them removed for cause; so there's

19   really no reason to bring them back up to question them about

20   something that might be painful when they've already answered a

21   question, to me, in my view, that would have them removed.

22               And that is Juror Number 3, Mr. Normann.  We had

23   Juror Number -- Juror Numbers 16, 22, 23, 24, and 25.  And

24   28 -- although 28 didn't indicate -- answer "yes" to the

25   question.  But 22, 23, 24, and 25 and 16 all indicated that

1    they could not listen to the evidence in this case, and so I

2    don't see any reason to bring them -- to bring them up unless

3    either side believes that they need to bring them back up.  But

4    they said that being exposed to material would make them too

5    uncomfortable to allow them to sit as a juror in this case.

6              MR. FELICETTA:  No objection, Your Honor.

7              THE COURT:  Okay.

8              MR. LASNETSKI:  No objection, Your Honor.

9              THE COURT:  Okay.  So -- and then Mr. Normann

10   indicated -- with regard to the alcohol abuse, I believe he

11   indicated that his father abused him while he was drinking and

12   that that would affect his ability; so I don't think there's a

13   reason for us to bring him back up either.  And that's

14   Number 3.

15             MR. FELICETTA:  I agree, Judge.

16             MR. LASNETSKI:  No objection, Your Honor.

17             THE COURT:  Okay.  All right.  So that brings --

18   we'll bring in Ms. Vincent, Number 1; Mr. Glaze, Number 2 --

19   no.  Actually, no.  He didn't answer yes.  Vincent, Number 1,

20   answered yes.  O'Brien answered yes, Number 12.  Number 14,

21   Santos; Number 16 -- no.  16, no.  So 14, then 19 --

22             MR. FELICETTA:  Number 9 as well, Your Honor.

23             MR. LASNETSKI:  Your Honor, I have 9 and 16.

24             THE COURT:  9 did?

25             MS. RICARDSON-JONES:  Yes, ma'am.

1    THE COURT:  You're right.  I just didn't mark it on

2    here.

3          So 1, 9, 12, 14, 19, 21, and the other one was

4    Number 29.  But she's already, I think, indicated that --

5          MR. FELICETTA:  Agreed.

6          THE COURT:  Okay.  So do you agree as well with 29,

7    that she's indicated that she's too pro law enforcement, I

8    think, to sit and be fair?

9          MR. LASNETSKI:  Yes, Your Honor.  So we agree to her

10   being struck.

11         THE COURT:  Yes.  So we're not going to call her

12   back.

13         MR. LASNETSKI:  Your Honor, I do have Number 16

14   included as well as being --

15         THE COURT:  16 was one that indicated they could not

16   listen to the evidence.

17         MR. LASNETSKI:  Oh, okay.  Okay, then.

18         THE COURT:  So 16, 22, 23, and 24, and 25 -- we

19   decided we weren't going to call them back.

20         MR. FELICETTA:  Your Honor, do you have any others

21   for cause that you've identified?

22         THE COURT:  I -- in my view, I thought that Number 27

23   indicated that she could not be fair.  She was not sure she

24   could be fair.  She's a flight attendant.  She's heard about

25   the case and was not sure she could be fair.  She said that.

1    **MR. FELICETTA:** I had -- Number 5 gave a similar

2    answer.

3    **THE COURT:** 5, I have the same, as well as Number 10.

4    Number 5 -- let's see. Number 10, Mr. Fisher, said

5    with regard to law enforcement "would try to be fair, but it

6    would be hard."

7    **MR. LASNETSKI:** Those are the three additional ones I

8    had as well. Number 5 and Number 10 and 27.

9    **THE COURT:** 5, 10, and 27. Okay.

10    **MR. FELICETTA:** Your Honor, no objection.

11    **THE COURT:** And then 28 indicated -- although they

12    did not indicate they were a victim of sexual abuse, they did

13    answer "yes" to the question I gave them whether being exposed

14    to the material would make it too uncomfortable to sit as a

15    juror, and Number 28 raised their hand.

16    **MR. FELICETTA:** Yes, Judge. I think you already

17    struck that juror.

18    **THE COURT:** Okay. All right. So then let's bring

19    back up Juror Number 1, Juror Number 9, Juror Number 12, Juror

20    Number 14, 19, 21. And then we can start with Juror Number 1.

21    (Recess at 11:12 AM until 11:15 AM.)

22    **THE COURT:** Let's bring in Ms. Vincent.

23    (Prospective Juror 1 in at 11:20 AM.)

24    **THE COURT:** All right. Ms. Vincent, just sit

25    anywhere you feel comfortable in the front row.

1        Ms. Vincent, you had indicated that you had either

2    yourself or close friend or family member that had been the

3    victim of sexual abuse, and I was just wondering if you could

4    tell us about that.

5        **PROSPECTIVE JUROR 1:** Well, for myself that was a

6    workplace event.

7        **THE COURT:** Okay.

8        **PROSPECTIVE JUROR 1:** A coworker cornered me in an

9    office and pushed me against the wall and grabbed my breasts

10   and crotch and was telling me that he could tell that I wanted

11   it because of the way I had been looking at him.  So --

12       My sister was inappropriately touched by a neighbor

13   as a child, and my niece was assaulted at a theme park when she

14   was 12 years old.

15       **THE COURT:** Were any -- did you press charges against

16   the coworker?

17       **PROSPECTIVE JUROR 1:** No.  I went to HR, and at that

18   time, because I was young and I didn't know I could -- I should

19   go to the police, they told me that they would mediate.  And

20   so, essentially, I was told make sure I just wasn't in the same

21   room alone with him.

22       **THE COURT:** Okay.  And then with regard to your

23   sister and your niece, were the individuals that committed

24   these offenses ever prosecuted?

25       **PROSPECTIVE JUROR 1:** For my sister -- she didn't

1    tell us until a few years ago when someone noticed that, oh,

2    Mr. So-and-So that lived on our street is registered as a sex

3    offender for something he did to, I guess, a child, and then

4    she told us.  So she never -- nothing ever happened with that.

5           With my niece, I mean, the guy was prosecuted, yes.

6           THE COURT:  Okay.  And was he convicted?

7           PROSPECTIVE JUROR 1:  Yes, he was.

8           THE COURT:  Okay.  And is there anything about the

9    experiences that happened with you and your family members --

10   anything about those experiences that would make it difficult

11   for you to sit, listen to the evidence in this case, and render

12   a fair and impartial verdict based on the evidence that you

13   hear?

14          PROSPECTIVE JUROR 1:  When I think about my niece,

15   that does make me want to kind of jump to conclusions because

16   it kind of sounds similar from just what I've heard so far.

17          THE COURT:  So you think it would be difficult for

18   you to put that aside?

19          PROSPECTIVE JUROR 1:  It probably would.

20          THE COURT:  Okay.  All right.  Any counsel have any

21   questions?

22          MR. FELICETTA:  No.  Thank you.  Thank you.

23          MR. LASNETSKI:  No questions, Your Honor.

24          THE COURT:  Okay.  Thank you very much.  You can go

25   back downstairs.

1    (Prospective Juror 1 out at 11:23 AM.)

2    **THE COURT:**  Mr. Mundy, Number 9.

3    (Prospective Juror 9 in at 11:23 AM.)

4    **THE COURT:**  Mr. Mundy, if you can just have a seat

5    anywhere.  The microphone's right there.

6    Mr. Mundy, you had answered "yes" to the question

7    about whether yourself or any friend or family member had been

8    the victim of any form of sexual abuse, and I just wondered if

9    you could take a moment to let us know about that.

10    **PROSPECTIVE JUROR 9:**  It was myself.  I was helping a

11    gentleman move from Florida to Tennessee.  He decided to get a

12    hotel room, and at that point he decided to assault me.

13    **THE COURT:**  How old were you?

14    **PROSPECTIVE JUROR 9:**  Twenty-one.

15    **THE COURT:**  Did you report it to the police?

16    **PROSPECTIVE JUROR 9:**  I was too ashamed.

17    **THE COURT:**  Anything about -- and I'm sorry that

18    happened to you.

19    Anything about that experience that would make it

20    difficult for you to sit and listen to the evidence in this

21    case and render a fair and impartial verdict in this case if

22    you were called upon to do so?

23    **PROSPECTIVE JUROR 9:**  No, Your Honor.  It happened so

24    long ago.  I'm over it now.  So my answer is no.

25    **THE COURT:**  All right.  Thank you.

1          Do counsel have any questions?

2              MR. FELICETTA:  No, Judge.  Thank you.

3              MR. LASNETSKI:  No, Your Honor.

4              THE COURT:  All right.  Thank you, sir.  You can go

5     back downstairs.

6          (Prospective Juror 9 out at 11:25 AM.)

7          (Prospective Juror 12 in at 11:25 AM.)

8              THE COURT:  Ms. O'Brien, just have a seat anywhere,

9     and the microphone, I think, is in the third chair right now.

10             You indicated when we were talking earlier that --

11    you answered "yes" to the question about whether you or any

12    friend or family member had been the victim of any form of

13    sexual abuse.

14             Can you please explain to us now what that is about.

15             PROSPECTIVE JUROR 12:  Yes.  One of my friends from

16    school was raped this past year, and there was an ongoing

17    investigation.  And I'm not sure how that turned out.  She

18    ended up leaving school because of it.

19             THE COURT:  Okay.  So you don't know whether they

20    caught the person?

21             PROSPECTIVE JUROR 12:  They did, but I don't think

22    there was enough evidence to -- and then another friend of mine

23    at the same school was raped at a fraternity party.

24             THE COURT:  Was that -- was anybody caught in that

25    case?

1    **PROSPECTIVE JUROR 12**:  No.  She doesn't know who did

2    it.

3        **THE COURT**:  Do they know their perpetrators?

4        **PROSPECTIVE JUROR 12**:  The first one, yes.  The

5    second one, no.

6        **THE COURT**:  Anything about the fact that you had two

7    friends that were the victims of sexual assaults affect your

8    ability to sit, listen to the evidence in this case, and render

9    a fair and impartial verdict if you were called to do so?

10       **PROSPECTIVE JUROR 12**:  No.

11       **THE COURT**:  Counsel have any questions?

12       **MR. FELICETTA**:  No, Judge.

13       **MR. LASNETSKI**:  No, Your Honor.

14       **THE COURT**:  All right.  Thank you very much.

15       **PROSPECTIVE JUROR 12**:  Thank you.

16    (Prospective Juror 12 out at 11:27 AM.)

17    (Prospective Juror 14 in at 11:27 AM.)

18       **THE COURT**:  Ms. Santos, come on up.  The microphone

19    is right there in the second chair.  Just have a seat.

20       You indicated when we were talking earlier that

21    either -- you answered "yes" to the question about whether you

22    or any friend or family member had ever been the victim of any

23    form of sexual abuse.  And, if you would, I'd ask if you could

24    just tell us a little bit about that now.

25       **PROSPECTIVE JUROR 14**:  Friends.

1      **THE COURT:** A friend?

2      **PROSPECTIVE JUROR 14:** Yeah.

3      **THE COURT:** And can you -- what were the

4  circumstances?  Do you know?

5      **PROSPECTIVE JUROR 14:** I don't remember specifics.

6  No, I don't.

7      **THE COURT:** How old?  Adult or child?

8      **PROSPECTIVE JUROR 14:** Children.

9      **THE COURT:** Children.  Okay.

10  Do you know whether anyone was prosecuted?

11      **PROSPECTIVE JUROR 14:** No.  In my work as a women's

12  ministry leader, I talk with people who have been through lots

13  of life stuff, and so I've heard lots of stories along the way.

14      **THE COURT:** All right.  So these are just people who

15  have come to you in confidence for ministerial purposes?

16      **PROSPECTIVE JUROR 14:** Yes.

17      **THE COURT:** Okay.  Anything about what you've heard

18  and about what happened to your friend or your friend's

19  children, would that affect your ability to sit and listen to

20  the evidence in this case and render a verdict based solely on

21  the evidence in this case -- render a fair and impartial

22  verdict?

23      **PROSPECTIVE JUROR 14:** Nothing would affect that, no.

24      **THE COURT:** All right.  Any questions?

25      **MR. FELICETTA:** No, Judge.

1          MR. LASNETSKI:  No, Your Honor.

2          THE COURT:  All right.  Thank you very much.

3     (Prospective Juror 14 out at 11:29 AM.)

4     (Prospective Juror 19 in at 11:29 AM.)

5          THE COURT:  Mr. Lloyd, I think the microphone is

6     right there in the second seat.  Grab it and sit wherever you

7     feel comfortable.

8          PROSPECTIVE JUROR 19:  Sit here?

9          THE COURT:  You can sit there.  Just grab the

10    microphone and have a seat.

11         We brought you back in because you indicated -- you

12    answered "yes" to the question about whether you or any friend

13    or family member had ever been the victim of any form of sexual

14    abuse.

15         PROSPECTIVE JUROR 19:  Yes.

16         THE COURT:  And I was wondering if you could share

17    that with us now.

18         PROSPECTIVE JUROR 19:  Yeah.  My older sister from

19    the time -- she's two years older than me.  So from the time I

20    was five until just before she graduated high school, there was

21    an ongoing pattern of abuse with a family member.

22         THE COURT:  Okay.  Did -- was that person ever

23    prosecuted?

24         PROSPECTIVE JUROR 19:  No.

25         THE COURT:  Were the police ever called?

1    **PROSPECTIVE JUROR 19**: Yes.

2    **THE COURT**: Okay. Anything about that experience

3    that your sister had that would make it difficult for you to

4    sit, listen to the evidence in this case, and render a fair and

5    impartial verdict if you were called to do so?

6    **PROSPECTIVE JUROR 19**: No. It's a different

7    situation.

8    **THE COURT**: Okay. All right. Any questions?

9    **MR. FELICETTA**: No, Your Honor.

10    **MR. LASNETSKI**: No, Your Honor.

11    **THE COURT**: Okay. Thank you, sir.

12    (Prospective Juror 19 out at 11:31 AM.)

13    (Prospective Juror 21 in at 11:31 AM.)

14    **THE COURT**: Ms. Lee, come on down to the front row

15    and have a seat. There's a microphone. Right there. Just

16    have a seat right there.

17    We brought you in separately because you had

18    indicated when I was asking questions earlier that either you

19    or a friend or family member had been the victim of some form

20    of sexual abuse, and so I wondered if you would feel

21    comfortable sharing that with us.

22    **PROSPECTIVE JUROR 21**: My sister was raped a couple

23    times.

24    **THE COURT**: Was it by the same perpetrator?

25    **PROSPECTIVE JUROR 21**: No. Separate occasions.

1                    THE COURT:  I'm sorry?

2                    PROSPECTIVE JUROR 21:  Separate occasions.

3                    THE COURT:  Was anyone ever prosecuted?

4                    PROSPECTIVE JUROR 21:  No.

5                    THE COURT:  Did she know her -- the perpetrator?

6                    PROSPECTIVE JUROR 21:  Yes.

7                    THE COURT:  Was it reported to the police?  Do you

8       know?

9                    PROSPECTIVE JUROR 21:  No.

10                   THE COURT:  All right.  She shared this with you?

11                   PROSPECTIVE JUROR 21:  Yes.

12                   THE COURT:  Anything about what happened to your

13      sister affect your ability to sit in this case, listen to the

14      evidence in this case, and render a fair and impartial verdict

15      based solely on that evidence if you were called to do so?

16                   PROSPECTIVE JUROR 21:  No.

17                   THE COURT:  You can be fair?

18                   PROSPECTIVE JUROR 21:  Yes.

19                   THE COURT:  Any questions?

20                   MR. FELICETTA:  No, Your Honor.  Thank you.

21                   MR. LASNETSKI:  No, Your Honor.

22                   THE COURT:  All right.  Thank you very much.

23          (Prospective Juror 21 out at 11:33 AM.)

24                   THE COURT:  All right.  I think that was everybody.

25      Do you want to take some time out of those individuals that

| | |
|---|---|
| 1 | came forward -- any strikes for cause? |
| 2 | **MR. FELICETTA:**  Number 1, Your Honor. |
| 3 | **MR. LASNETSKI:**  We would agree, Your Honor. |
| 4 | **THE COURT:**  Okay.  All right.  Are there any others |
| 5 | before I -- you-all start talking about peremptories, are there |
| 6 | any others for cause? |
| 7 | **MR. FELICETTA:**  Not from the Government, Judge. |
| 8 | **MR. LASNETSKI:**  None from the defense. |
| 9 | **THE COURT:**  All right.  So take some time, and then |
| 10 | we'll start and see what we have left, if we can't get a jury |
| 11 | out of this group. |
| 12 | (Recess at 11:34 AM until 11:42 AM.) |
| 13 | **THE COURT:**  Is everybody ready? |
| 14 | **MR. FELICETTA:**  Yes, Judge. |
| 15 | **THE COURT:**  Or need more time? |
| 16 | **MR. LASNETSKI:**  Yes, Your Honor. |
| 17 | **THE COURT:**  All right.  So on the first -- so we've |
| 18 | got -- so right now on the table, we have Juror Number 2, 4, 6, |
| 19 | 7, 8, 9, 11, 12, 13, 14, 15, 17.  I believe that's 12. |
| 20 | From the Government, are there any challenges? |
| 21 | **MR. FELICETTA:**  Yes, Your Honor.  I have two |
| 22 | questions, if I could. |
| 23 | **THE COURT:**  Okay. |
| 24 | **MR. FELICETTA:**  How many do you want me to select at |
| 25 | this time, and do you allow back strikes? |

| | |
|---|---|
| 1 | **THE COURT:** I do allow back strikes. And the way I |
| 2 | do it is you'll go first and then defense; and then defense, |
| 3 | and then you; and then you -- that's how we do it. And you can |
| 4 | tell me if there's -- the ones you want to strike. |
| 5 | **MR. FELICETTA:** Okay. |
| 6 | **THE COURT:** I don't require any amount of number, but |
| 7 | I do allow back strikes. |
| 8 | **MR. FELICETTA:** We'll strike Juror Number 2. |
| 9 | **THE COURT:** Number 2. Okay. |
| 10 | **MR. LASNETSKI:** Your Honor, we'll strike Juror |
| 11 | Number 9. |
| 12 | And then back to us? |
| 13 | **THE COURT:** Yep. |
| 14 | **MR. LASNETSKI:** Juror Number 14. |
| 15 | **THE COURT:** And that brings up -- so now we bring up |
| 16 | 18 and 19 -- are in the mix. |
| 17 | So do you have any besides Number 9? |
| 18 | You go first this time. |
| 19 | **MR. LASNETSKI:** Okay. Sorry about that. |
| 20 | We will strike Number 16. |
| 21 | **THE COURT:** 16 was stricken for cause already. |
| 22 | **MR. LASNETSKI:** Then we're up through 19? |
| 23 | **THE COURT:** Through 19 now. |
| 24 | **MR. LASNETSKI:** Juror 19. |
| 25 | **THE COURT:** Okay. |

1          MR. FELICETTA:  Juror Number 12, Your Honor.

2          THE COURT:  So we're up to 21.

3          MR. FELICETTA:  Back to me?

4          THE COURT:  Yes.

5          MR. FELICETTA:  Juror Number 13, Your Honor.

6          THE COURT:  13?

7          MR. FELICETTA:  Yes, Judge.

8          THE COURT:  All right.

9          MR. LASNETSKI:  Juror Number 21.

10         THE COURT:  Okay.  And so now we're up to 26 and 30.

11         MR. LASNETSKI:  Juror Number 8.

12         THE COURT:  Okay.

13         MR. LASNETSKI:  And Juror 17.

14         THE COURT:  Okay.  So right now I've got remaining 4,

15    6, 7, 11, 14, 15, 18, 20, 26, 30.

16         MR. LASNETSKI:  Your Honor, I believe I struck

17    Number 14.

18         THE COURT:  Oh, you did strike Number 14?

19         MR. LASNETSKI:  Yes.  As the second.

20         THE COURT:  All right.  14.  Sorry.

21         So 4, 6, 7, 11, 15, 18, 20, 26, and 30 remain.  And

22    then I think we have 12 more downstairs.  We have 12 more

23    jurors downstairs to bring up.

24         MR. FELICETTA:  We have no further strikes of this

25    panel.

1      MR. LASNETSKI:  We have no further strikes of this

2   panel, Judge.

3      THE COURT:  So let's bring the 12 -- I realize we're

4   getting close to lunch, but I'd rather plug through and then

5   see if we can get the jury and then start.

6      MR. FELICETTA:  That's fine with us, Judge.  Can I

7   just use the restroom?

8      THE COURT:  You may.  If anybody needs a break and

9   want to take five munites, you can take like five minutes.

10      MR. LASNETSKI:  I was hoping he'd ask.

11      THE COURT:  If anybody -- I tend to sort of plug

12   along, and so sometimes people need to say, "Hey, I need a

13   bathroom break."  So please feel free to do that.

14      (Recess at 11:49 AM until 11:55 AM.)

15      THE COURT:  I'm going to have them let the first

16   group go to lunch, and that way they can come back -- so

17   they're not sitting down there while we're questioning this

18   panel.  Anybody have a problem with me releasing the ones that

19   we've stricken for cause and the ones that you-all have

20   peremptorily challenged?

21      MR. LASNETSKI:  No, Your Honor.

22      MR. FELICETTA:  I don't have a problem with it,

23   Judge.  I just wonder, then, if we were to go to the next

24   panel, they'll need a lunchroom break, and then we're kind of

25   stalled out waiting to start opening statements.  And so I

1  wonder if it makes more sense to send them all to lunch.  I'm

2  not sure if it makes any difference in terms of timing but --

3  **THE COURT:**  That might actually be better.  What do

4  you-all think?  Because they're going to have to -- or we could

5  just do it and send them to lunch and make the other ones wait.

6  Can I release the ones that you-all have stricken and

7  stricken for cause and let them go home so they're not sitting

8  here waiting?

9  **MR. FELICETTA:**  Yes.  That makes sense, Judge.

10  **THE COURT:**  So we'll have the others wait, and then

11  we'll take a break after that and then start.

12  **MR. FELICETTA:**  Okay.

13  **THE COURT:**  So instead of having them go to lunch now

14  and then coming back in an hour, I'd rather get this jury

15  picked and then take the break for lunch and then -- even if

16  we're another hour.  We've only got 12 left; so it shouldn't

17  take -- you know, we can send them away and, then even if we're

18  here, we can send them to lunch.

19  So the ones remaining will be 4, 6, 7, 11, 15, 18,

20  20, 26, and 30.  They need to stay.  The rest can -- are

21  excused.

22  Did you get that, Regina?

23  **THE COURTROOM DEPUTY:**  Yeah.  I just want to make

24  sure.

25  **THE COURT:**  Ready?

1                **THE COURT SECURITY OFFICER**:  Yes, ma'am.

2                **THE COURT**:  Okay.  Let's bring them in.

3        (Venire Panel 2 in at 11:59 AM.)

4                **THE COURT**:  Good morning for one more minute.

5  Welcome to the United States District Court for the Middle

6  District of Florida.  My name is Judge Berger, and I'm the

7  judge assigned to try the case that we have scheduled for this

8  week.  It is a criminal case.  It is the United States of

9  America v. Brian Patrick Durning, and I'll explain a little bit

10  to you about that case in a moment.

11        But before we begin I would like to introduce you to

12  our courtroom personnel as well as the attorneys in this case

13  and the defendant.

14        Regina Fermer, sitting right here behind the computer

15  screen, is my courtroom deputy.  She is the clerk.  She takes

16  down -- keeps a record of everything that's going on in the

17  courtroom.  She maintains the evidence.  She really just keeps

18  me in line and so that everything runs smoothly.

19        Our court reporter is Heather Suarez, and Heather is

20  seated over here, and she's taking down everything that we say.

21        And when she types, generally -- not right now, but

22  in real time all the transcript of the testimony -- the

23  testimony of the transcript and the evidence of the answers to

24  the questions that we give you shows up on my screen here in

25  real time.  It used to be you had this little scroll, and they

1    read this language that nobody could read but the court

2    reporters, but nowadays we have a real-time transcript of

3    everything that's going on.

4            So she's taking down everything that we say.  So all

5    I will ask you to do is we'll pass a microphone around when I'm

6    asking you questions, but if you'll just answer clearly and

7    loudly and keep that mic up so that everybody can hear you,

8    specifically, so that Heather can hear you because she's taking

9    down everything that we say here today as well as throughout

10   the course of the trial.

11           We sometimes nod our heads when we answer questions

12   or say "uh-huh" or "uh-uh."  I know what you mean, but I may

13   say, "Is that a yes?" or "Is that a no?" because, although all

14   of us in the courtroom know what you're saying and know what

15   you mean with an "uh-huh" or "uh-uh," it's difficult -- it

16   doesn't translate so well in a transcript.  So if -- it happens

17   with witnesses on the stand as well.  We all sort of do it.  I

18   try to listen for it, and so don't be offended if I say, "Is

19   that a yes?" or "Is that a no?"  It's just to make sure that

20   the record is absolutely clear.

21           Sitting over here is Kassandra Reardon.  Kassie is my

22   clerk, and she'll be in here today and throughout the rest of

23   the trial this week helping me research any legal issues that

24   may come up throughout the course of the trial.

25           Carlos Noriega, you've already met.  Carlos is my

| | |
|---|---|
| 1 | court security officer, and he helps with the jurors through |
| 2 | the course of the trial and with our prospective jurors on the |
| 3 | mornings that we select a jury.  If you're selected as a juror |
| 4 | for this case, you'll get to know Carlos quite well. |
| 5 | If anything -- you should have any concerns at all, |
| 6 | whether it be today or if you're selected as a juror in this |
| 7 | case through the course of this week, if you will please let |
| 8 | him know, and then he will let me know. |
| 9 | Now, I can introduce the assistant United States |
| 10 | attorneys for you.  There's Courtney Richardson-Jones and |
| 11 | Michael Felicetta. |
| 12 | Do any of you know either of the attorneys? |
| 13 | THE VENIRE:  (Shakes heads.) |
| 14 | THE COURT:  And counsel for the defense is |
| 15 | Jeremy Lasnetski, and seated next to him is the defendant in |
| 16 | this case, Brian Patrick Durning. |
| 17 | Do either of you know counsel or the defendant in |
| 18 | this case?  And if you-all could answer out loud. |
| 19 | THE VENIRE:  No. |
| 20 | THE COURT:  Okay.  I'm going to read off the names of |
| 21 | some potential witnesses, and if you'll just let me know if you |
| 22 | know any of these witnesses. |
| 23 | Z█ B██.  Do any of you know Miss B█? |
| 24 | THE VENIRE:  No. |
| 25 | THE COURT:  Stacey Sherretta? |

1              THE VENIRE:  No.

2              THE COURT:  Rick Krum?

3              THE VENIRE:  No.

4              THE COURT:  Sharon Joseph?

5              THE VENIRE:  No.

6              THE COURT:  Tabari Francis?

7              THE VENIRE:  No.

8              THE COURT:  Antonio Cento?

9              THE VENIRE:  No.

10             THE COURT:  Pedro Maldonado?

11             THE VENIRE:  No.

12             THE COURT:  Rachelle McCoy?

13             THE VENIRE:  No.

14             THE COURT:  Mario Lopez?

15             THE VENIRE:  No.

16             THE COURT:  Wilfredo Sanchez, Jr.?

17             THE VENIRE:  No.

18             THE COURT:  Officer Brian Piña?

19             THE VENIRE:  No.

20             THE COURT:  Federal Air Marshal Nason Miner?

21             THE VENIRE:  No.

22             THE COURT:  Deputy U.S. Marshal Anthony Helicio?

23             THE VENIRE:  No.

24             THE COURT:  Task Force Officer David D'Arcangelis?

25             THE VENIRE:  No.

1      THE COURT:  Mary Tramontin?

2      THE VENIRE:  No.

3      THE COURT:  Officer Juan Pomales?

4      THE VENIRE:  No.

5      THE COURT:  Chris Luscher?

6      THE VENIRE:  No.

7      THE COURT:  David Hammett?

8      THE VENIRE:  No.

9      THE COURT:  Marian Fernandes?

10      THE VENIRE:  No.

11      THE COURT:  Okay.  Now, the defendant in this case is

12  charged with three criminal counts by superseding indictment.

13      The United States alleges in Count 1 that on or about

14  June 24th of 2022, the defendant, Brian Patrick Durning, while

15  on an aircraft in flight in the special aircraft jurisdiction

16  of the United States, specifically, Delta Flight 2954 from

17  Los Angeles International Airport to the Orlando International

18  Airport, did knowingly and willfully commit the act of abusive

19  sexual contact with a child.

20      Count 2 alleges that on or about June 24th of 2022,

21  the defendant, while on an aircraft in flight in the special

22  aircraft jurisdiction of the United States, specifically, Delta

23  Flight 2954 from Los Angeles International Airport to the

24  Orlando International Airport, did knowingly and willfully

25  commit the act of assault resulting in serious bodily injury to

1    an individual who has not attained the age of 16 years.

2    Count 3 alleges that on or about June 24th of 2022,

3    the defendant, while on an aircraft in flight in the special

4    aircraft jurisdiction of the United States, specifically, Delta

5    Flight 2954 from Los Angeles International Airport to Orlando

6    International Airport, did knowingly and willfully commit the

7    act of assault resulting in serious bodily injury.

8    And Counts 1, 2, and 3 are alleged to be violations

9    of federal law.

10   Have any of you read any newspaper accounts of this

11   case or heard about it on television or radio?

12   **THE VENIRE:**  No.

13   **THE COURT:**  Now, the defendant is presumed innocent

14   until proven guilty.  The superseding indictment against the

15   defendant brought by the Government is only an accusation and

16   nothing more.  It's not proof of guilt or anything else, and

17   the burden of proof is on the Government.  The defendant has no

18   burden to prove his innocence or to present any evidence or to

19   testify.  And since the defendant has a right to remain silent

20   and may choose whether to testify, you cannot put -- legally

21   put any weight on a defendant's decision not to testify because

22   it is not evidence.

23   Do you-all understand?

24   **THE VENIRE:**  Yes.

25   **THE COURT:**  What I'm going to do now is I'm going to

1    start with Juror Number 31, Ms. Haney --

2            PROSPECTIVE JUROR 31:  Yes.

3            THE COURT:  -- and ask you each some individual

4    questions, and then after that I'll ask you some questions as a

5    group.

6            And there will be one question that I'll ask, and I'm

7    just going to ask for a yes-or-no answer to that question, and

8    if anybody answers "yes" to that question, then we'll bring you

9    back individually to answer.

10           Can you tell us your full name and your date of

11   birth.

12           PROSPECTIVE JUROR 31:  My name is Ilene Haney.

13   ███████, 1955.

14           THE COURT:  And what do you do for a living?

15           PROSPECTIVE JUROR 31:  I'm retired.

16           THE COURT:  And what are you retired from?

17           PROSPECTIVE JUROR 31:  I was an educator.

18           THE COURT:  And what grade did you teach?

19           PROSPECTIVE JUROR 31:  I taught all middle grades

20   social studies.

21           THE COURT:  Okay.  Are you married?

22           PROSPECTIVE JUROR 31:  Yes.

23           THE JURY:  And what does your spouse do for a living?

24           PROSPECTIVE JUROR 31:  He's also retired from the

25   events industry.

1        **THE COURT:**  Okay.  Do you have any children?

2        **PROSPECTIVE JUROR 31:**  Two.

3        **THE COURT:**  Are they outside the home?

4        **PROSPECTIVE JUROR 31:**  Yes.

5        **THE COURT:**  And what do they do for a living?

6        **PROSPECTIVE JUROR 31:**  My daughter works in

7   advertising, and my son is an attorney.

8        **THE COURT:**  Is your son an attorney here in Orlando?

9        **PROSPECTIVE JUROR 31:**  No.  In Tampa.

10       **THE COURT:**  In Tampa.

11       And what kind of law does he practice?

12       **PROSPECTIVE JUROR 31:**  It's a small firm, and they do

13  appellate and some criminal and civil cases.

14       **THE COURT:**  Okay.

15       **PROSPECTIVE JUROR 31:**  I really can't tell you more

16  than that.  I don't know.

17       **THE COURT:**  Do you ever discuss his cases with him?

18       **PROSPECTIVE JUROR 31:**  Yes, we do.

19       **THE COURT:**  Anything about the fact that your son is

20  an attorney that would make it difficult for you if you were

21  called to serve as a juror in this case to sit and render a

22  fair and impartial verdict?

23       **PROSPECTIVE JUROR 31:**  No.

24       **THE COURT:**  Okay.  Do you have any friends or family

25  members in law enforcement?

1    **PROSPECTIVE JUROR 31:** No.

2    **THE COURT:** Okay. And this is a question I want you

3    to answer yes or no to: Have you, any friend, or family member

4    ever been the victim of any form of sexual abuse?

5    **PROSPECTIVE JUROR 31:** Yes.

6    **THE COURT:** Okay. And have you or any friend or

7    family member ever been the victim of any other type of crime?

8    **PROSPECTIVE JUROR 31:** No.

9    **THE COURT:** Okay. Have you or any friend or family

10   member ever been accused of a crime, whether it be -- you know,

11   anything other than a traffic offense, accused or convicted or

12   prosecuted?

13   **PROSPECTIVE JUROR 31:** No.

14   **THE COURT:** Have you ever served as a juror before?

15   **PROSPECTIVE JUROR 31:** Yes.

16   **THE COURT:** And when was that?

17   **PROSPECTIVE JUROR 31:** I want to say 2018.

18   **THE COURT:** Okay. Was that here in federal court, or

19   was it in state court?

20   **PROSPECTIVE JUROR 31:** State court.

21   **THE COURT:** And was it a criminal case or a civil

22   case?

23   **PROSPECTIVE JUROR 31:** Criminal.

24   **THE COURT:** Were you the foreperson?

25   **PROSPECTIVE JUROR 31:** No.

1      THE COURT:  And without telling us the verdict, were

2   you able to reach a verdict?

3      PROSPECTIVE JUROR 31:  Yes.

4      THE COURT:  And you understand that the laws in

5   that -- what was the crime?  Do you remember?

6      PROSPECTIVE JUROR 31:  It was a murder crime.

7      THE COURT:  A murder.

8      PROSPECTIVE JUROR 31:  Uh-huh.

9      THE COURT:  And the laws that pertain to a murder

10  case are going to be different than what pertains in this

11  particular case.

12      Do you agree, if you're called to serve as a juror,

13  to put all that aside and just listen to the law as I instruct

14  you and apply the law to the facts of the case --

15      PROSPECTIVE JUROR 31:  Yes.

16      THE COURT:  -- as I instruct you?

17      Okay.  Thank you.

18      Is it Ms. Zorzy?  Tell us your full name, please.

19      PROSPECTIVE JUROR 32:  Kathryn Zorzy.

20      THE COURT:  And what's your date of birth?

21      PROSPECTIVE JUROR 32:  ████████, 1976.

22      THE COURT:  And I think that when they picked this

23  jury panel, they raided the month of September because we've

24  had a lot of people with September birthdays today.

25      What do you do for a living?

1          PROSPECTIVE JUROR 32:  I'm a waitress.

2          THE COURT:  Are you married?

3          PROSPECTIVE JUROR 32:  No.  No, ma'am.

4          THE COURT:  Do you have any children?

5          PROSPECTIVE JUROR 32:  Yes, ma'am.

6          THE COURT:  And how many?

7          PROSPECTIVE JUROR 32:  Three.

8          THE COURT:  And what are their ages?

9          PROSPECTIVE JUROR 32:  I have a 20-year-old, an

10    18-year-old, and a 12-year-old.

11          THE COURT:  Any of them -- is your 20-year-old

12    working?

13          PROSPECTIVE JUROR 32:  She is.  She's a waitress.

14          THE COURT:  Okay.  And your others -- are your others

15    in school?

16          PROSPECTIVE JUROR 32:  My son just graduated, but

17    he's special needs.

18          THE COURT:  Okay.  Do you have any friends or family

19    members in law enforcement?

20          PROSPECTIVE JUROR 32:  No, ma'am.

21          THE COURT:  And, again, this is a yes-or-no question.

22    Have you or any close friends or members ever been the victim

23    of any form of sexual abuse?

24          PROSPECTIVE JUROR 32:  Yes, ma'am.

25          THE COURT:  Have you or any friend or family member

1    ever been the victim of any other type of crime?

2          PROSPECTIVE JUROR 32:  Yes, ma'am.

3          THE COURT:  And what was that?

4          PROSPECTIVE JUROR 32:  It was a -- someone beat my

5    son up.

6          THE COURT:  Okay.  Did they -- was the person

7    prosecuted?

8          PROSPECTIVE JUROR 32:  Not really.  It was kind of

9    just stood outside of court kind of thing.

10         THE COURT:  Okay.  Were you satisfied with the way

11   that was resolved?

12         PROSPECTIVE JUROR 32:  No.

13         THE COURT:  Okay.  Anything about that that sort of

14   left a bad taste in your mouth for either law enforcement or

15   the justice system at all that would affect your ability to sit

16   and listen to the evidence in this case and render a fair and

17   impartial verdict?

18         PROSPECTIVE JUROR 32:  I can't honestly answer that.

19         THE COURT:  Okay.  Has anybody -- you or a friend or

20   family member -- ever been accused of a crime or prosecuted or

21   convicted of an offense?

22         PROSPECTIVE JUROR 32:  No, ma'am.

23         THE COURT:  Have you ever served as a juror?

24         PROSPECTIVE JUROR 32:  No, ma'am.

25         THE COURT:  All right.  Thank you.

1        Can you tell us your name and date of birth.

2        **PROSPECTIVE JUROR 33:** Christine Hammond.

3   ██████████, 1993.

4        **THE COURT:** And what do you do for a living?

5        **PROSPECTIVE JUROR 33:** I'm an engineer.

6        **THE COURT:** Are you married?

7        **PROSPECTIVE JUROR 33:** Yes.

8        **THE COURT:** And what's your spouse do?

9        **PROSPECTIVE JUROR 33:** He's a resource planner.

10       **THE COURT:** Do you have any children?

11       **PROSPECTIVE JUROR 33:** No.

12       **THE COURT:** Do you have any friends or family in law

13  enforcement?

14       **PROSPECTIVE JUROR 33:** No.

15       **THE COURT:** Have you or any close friend or family

16  member ever been the victim of any form of sexual abuse?

17       **PROSPECTIVE JUROR 33:** No.

18       **THE COURT:** Any other crime?

19       **PROSPECTIVE JUROR 33:** No.

20       **THE COURT:** Have you or any close friend or family

21  member ever been, other than a traffic offense, accused of a

22  crime, convicted, prosecuted at all?

23       **PROSPECTIVE JUROR 33:** No.

24       **THE COURT:** Okay. Have you ever served as a juror?

25       **PROSPECTIVE JUROR 33:** No.

1          **THE COURT:**  Okay.  Thank you.

2          Mr. Evans.

3          **PROSPECTIVE JUROR 34:**  Cedric Evans.  ████████, 1983.

4          **THE COURT:**  What do you do for a living, sir?

5          **PROSPECTIVE JUROR 34:**  General manager for a

6   furniture company.

7          **THE COURT:**  Furniture company?

8          **PROSPECTIVE JUROR 34:**  Yeah.  Ashley Furniture.

9          **THE COURT:**  Are you married?

10          **PROSPECTIVE JUROR 34:**  Yes, ma'am.

11          **THE COURT:**  What's your spouse do?

12          **PROSPECTIVE JUROR 34:**  She's a nurse.

13          **THE COURT:**  Do you have any children?

14          **PROSPECTIVE JUROR 34:**  Three.

15          **THE COURT:**  What are their ages?

16          **PROSPECTIVE JUROR 34:**  Fourteen, seven, and one.

17          **THE COURT:**  Do you have any friends or family in law

18   enforcement?

19          **PROSPECTIVE JUROR 34:**  Yes, ma'am.

20          **THE COURT:**  And who would that be?  Is it friends or

21   family?

22          **PROSPECTIVE JUROR 34:**  Well, they're friends.

23          **THE COURT:**  Okay.  Do you ever discuss their cases

24   with them?

25          **PROSPECTIVE JUROR 34:**  In the past.

1      **THE COURT:** Anything about the fact that you have

2  friends in law enforcement that would affect your ability to

3  sit and listen to the evidence in this case and render a fair

4  and impartial verdict?

5      **PROSPECTIVE JUROR 34:** There's a possibility.

6      **THE COURT:** I'm sorry?

7      **PROSPECTIVE JUROR 34:** There's a possibility.

8      **THE COURT:** Okay. Have you or any close friend or

9  family member ever been the victim of any form of sexual abuse?

10     **PROSPECTIVE JUROR 34:** Family member.

11     **THE COURT:** Okay. How about any other type of crime?

12     **PROSPECTIVE JUROR 34:** Not family but close friend.

13     **THE COURT:** Okay. Anything about that that would

14  make it difficult for you to sit and listen to the evidence and

15  render a fair and impartial verdict?

16     **PROSPECTIVE JUROR 34:** Yes.

17     **THE COURT:** Have you ever served as a juror?

18     **PROSPECTIVE JUROR 34:** Yes, ma'am.

19     **THE COURT:** And about how long ago?

20     **PROSPECTIVE JUROR 34:** I feel like I get called

21  almost every year, but I'd say at least 2006 or '7.

22     **THE COURT:** And was that in federal court or state

23  court?

24     **PROSPECTIVE JUROR 34:** State.

25     **THE COURT:** Was it criminal or civil?

1          **PROSPECTIVE JUROR 34:**  It was criminal.

2          **THE COURT:**  And were you the foreperson?

3          **PROSPECTIVE JUROR 34:**  What does that mean?

4          **THE COURT:**  The foreperson sort of acts as the

5    chairperson of the jury.  They lead the discussion.

6          **PROSPECTIVE JUROR 34:**  No, ma'am.

7          **THE COURT:**  They sign the verdict form.

8          No?

9          **PROSPECTIVE JUROR 34:**  No, ma'am.

10         **THE COURT:**  Without telling us the verdict, were you

11   able to reach a verdict?

12         **PROSPECTIVE JUROR 34:**  Yes.

13         **THE COURT:**  Same question to you.  The law in the

14   case that you heard in state court is going to be different

15   than what the Court -- what I instruct you if you're selected

16   as a juror in this case.

17         Do you agree to follow the law as I instruct you in

18   this case?

19         **PROSPECTIVE JUROR 34:**  Yes.

20         **THE COURT:**  Okay.  Thank you.

21         All right.  Mr. Valencia.

22         **PROSPECTIVE JUROR 35:**  Oscar Luis Valencia.

23   ▮▮▮▮▮▮▮, 1996.

24         **THE COURT:**  And what do you do for a living, sir?

25         **PROSPECTIVE JUROR 35:**  I work for an event company.

1          THE COURT:  I'm sorry?

2          PROSPECTIVE JUROR 35:  I work for an event company.

3          THE COURT:  Are you married?

4          PROSPECTIVE JUROR 35:  Engaged.

5          THE COURT:  Congratulations.

6          PROSPECTIVE JUROR 35:  Thank you.

7          THE COURT:  And what does your fiancée do?

8          PROSPECTIVE JUROR 35:  She's a nurse.

9          THE COURT:  Do you have any children?

10         PROSPECTIVE JUROR 35:  I have one daughter.

11         THE COURT:  How old?

12         PROSPECTIVE JUROR 35:  She's one years old.

13         THE COURT:  Do you have any friends or family in law

14    enforcement?

15         PROSPECTIVE JUROR 35:  No, ma'am.

16         THE COURT:  Have you or any close friend or family

17    member ever been the victim of any form of sexual abuse?

18         PROSPECTIVE JUROR 35:  No, ma'am.

19         THE COURT:  Ever been the victim of any other type of

20    crime?

21         PROSPECTIVE JUROR 35:  My brother was assaulted by --

22    when he was a minor.

23         THE COURT:  Did they -- was the person who assaulted

24    him ever prosecuted?

25         PROSPECTIVE JUROR 35:  No, ma'am.

1        THE COURT:  Were they ever -- did he know who the

2    person was?

3        PROSPECTIVE JUROR 35:  Yes, ma'am.

4        THE COURT:  Anything about that experience that would

5    make it difficult for you to sit as a juror in this case and

6    render a fair and impartial verdict if you were called to do

7    so?

8        PROSPECTIVE JUROR 35:  No, ma'am.

9        THE COURT:  Okay.  Have you or any close friend or

10   family member ever been accused of a crime?

11       PROSPECTIVE JUROR 35:  No, ma'am.

12       THE COURT:  Have you ever served as a juror?

13       PROSPECTIVE JUROR 35:  No, ma'am.

14       THE COURT:  All right.  Thank you.

15       Can you tell us your full name and date of birth.

16       PROSPECTIVE JUROR 36:  I'm Joyce Leiker.  █/█/71.

17       THE COURT:  And what do you do for a living?

18       PROSPECTIVE JUROR 36:  Stay-at-home mom.

19       THE COURT:  Hardest job there is.

20       And are you married?

21       PROSPECTIVE JUROR 36:  Yes.

22       THE COURT:  And what's your spouse do?

23       PROSPECTIVE JUROR 36:  He's a transportation broker.

24       THE COURT:  Okay.  And how many children do you have?

25       PROSPECTIVE JUROR 36:  Two.

1          THE COURT:  And what are their ages?

2          PROSPECTIVE JUROR 36:  17 and 19.

3          THE COURT:  Okay.  That's all right.

4          Are they in school?

5          PROSPECTIVE JUROR 36:  Yes.

6          THE COURT:  Do you have any friends or family in law

7   enforcement?

8          PROSPECTIVE JUROR 36:  Yes.

9          THE COURT:  And who would that be?

10         PROSPECTIVE JUROR 36:  Friends.  Close friends.

11         THE COURT:  Friends.

12         PROSPECTIVE JUROR 36:  Uh-huh.

13         THE COURT:  Would the fact that you have friends in

14  law enforcement make it difficult for you to sit, listen to the

15  evidence in this case, and render a fair and impartial verdict

16  if you were called to do so?

17         PROSPECTIVE JUROR 36:  Yes.

18         THE COURT:  Okay.  Have you or any friend or family

19  member ever been the victim of any form of sexual abuse?

20         PROSPECTIVE JUROR 36:  No.

21         THE COURT:  Ever been the victim of any other type of

22  crime?

23         PROSPECTIVE JUROR 36:  No.

24         THE COURT:  Ever been accused of any type of crime?

25         PROSPECTIVE JUROR 36:  No.

```
1           THE COURT:  Ever served as a juror?

2           PROSPECTIVE JUROR 36:  No.

3           THE COURT:  Okay.  Thank you so much.

4      All right.  Mr. Knott.

5           PROSPECTIVE JUROR 37:  Yes.

6           THE COURT:  And what's your date of birth?

7           PROSPECTIVE JUROR 37:  So Daniel Knott, and it's

8      ████████, 1991.

9           THE COURT:  And what do you do for a living, sir?

10          PROSPECTIVE JUROR 37:  I do telesales.

11          THE COURT:  Are you married?

12          PROSPECTIVE JUROR 37:  Yes.

13          THE COURT:  And what's your spouse do?

14          PROSPECTIVE JUROR 37:  She does marketing.

15          THE COURT:  Any children?

16          PROSPECTIVE JUROR 37:  No.

17          THE COURT:  Any friends or family in law enforcement?

18          PROSPECTIVE JUROR 37:  No.

19          THE COURT:  Have you or any close friend or family

20     member ever been the victim of any form of sexual abuse?

21          PROSPECTIVE JUROR 37:  No.

22          THE COURT:  How about the victim of any other type of

23     crime?

24          PROSPECTIVE JUROR 37:  No.

25          THE COURT:  Ever been -- other than a traffic
```

1     offense, been accused of any type of crime?

2          PROSPECTIVE JUROR 37:  No.

3          THE COURT:  Have you ever served as a juror?

4          PROSPECTIVE JUROR 37:  No.

5          THE COURT:  Okay.  Thank you.

6          Mr. Futch.

7          PROSPECTIVE JUROR 38:  Yes, ma'am.  Matthew Futch.

8     ████████████, 1985.

9          THE COURT:  And what do you do for a living, sir?

10          PROSPECTIVE JUROR 38:  I am an assistant state

11    attorney in Seminole County.

12          THE COURT:  Are you married?

13          PROSPECTIVE JUROR 38:  I am.

14          THE COURT:  And what's your spouse do?

15          PROSPECTIVE JUROR 38:  She's a stay-at-home mom.

16          THE COURT:  Do you have any children?

17          PROSPECTIVE JUROR 38:  One son.  He's five.

18          THE COURT:  Do you have any friends or family in law

19    enforcement?

20          PROSPECTIVE JUROR 38:  I do.  Both.  Parents are

21    retired from Hollywood Police and then various friends in law

22    enforcement.

23          THE COURT:  Okay.  And you've been a prosecutor for

24    how long?

25          PROSPECTIVE JUROR 38:  Oh, coming on 12 years now.

1    **THE COURT:** Anything about the fact that you serve as

2    a prosecutor and you have friends and family in law enforcement

3    that would make it difficult for you to sit, listen to the

4    evidence in this case, and render a fair and impartial verdict

5    if you were called upon to do so?

6    **PROSPECTIVE JUROR 38:** Nope.

7    **THE COURT:** Have you or any close friends or family

8    members ever been the victim of any form of sexual abuse?

9    **PROSPECTIVE JUROR 38:** No.

10    **THE COURT:** Ever been the victim of any other type of

11    crime?

12    **PROSPECTIVE JUROR 38:** Yes, ma'am. My wife and I

13    were burglarized in Winter Park in probably 2013 or 2014.

14    **THE COURT:** Did they catch the person who did it?

15    **PROSPECTIVE JUROR 38:** I think they got one of them.

16    They found one of the stolen firearms, and he was prosecuted, I

17    believe, federally.

18    **THE COURT:** Anything about that experience that would

19    make it difficult for you to serve as a juror?

20    **PROSPECTIVE JUROR 38:** No, ma'am.

21    **THE COURT:** Ever been accused of any -- any offense

22    other than a traffic offense? You, family member, or friend.

23    **PROSPECTIVE JUROR 38:** No.

24    **THE COURT:** Have you ever served as a juror?

25    **PROSPECTIVE JUROR 38:** I have not.

1          THE COURT:  All right.  Thank you.

2          Yes, sir.

3          PROSPECTIVE JUROR 39:  Hi name is Joshua Proteau.

4  ████████████, 1992.

5          THE COURT:  And what do you do for a living, sir?

6          PROSPECTIVE JUROR 39:  I'm a ride technician at

7  SeaWorld.

8          THE COURT:  Are you married?

9          PROSPECTIVE JUROR 39:  Yes, ma'am.

10         THE COURT:  And what's your spouse do?

11         PROSPECTIVE JUROR 39:  She's a seater.

12         THE COURT:  I'm sorry?

13         PROSPECTIVE JUROR 39:  A seater at Disney World at a

14  restaurant.

15         THE COURT:  Any children.

16         PROSPECTIVE JUROR 39:  Two kids.

17         THE COURT:  How old?

18         PROSPECTIVE JUROR 39:  Five and two.

19         THE COURT:  Do you have any friends or family in law

20  enforcement?

21         PROSPECTIVE JUROR 39:  No, ma'am.

22         THE COURT:  Have you or any friends or close -- or

23  family members ever been the victim of any form of sexual

24  abuse?

25         PROSPECTIVE JUROR 39:  Yes, ma'am.

1          THE COURT:  How about any other type of crime?

2          PROSPECTIVE JUROR 39:  No.

3          THE COURT:  Have you or any close friend or family

4    member ever been accused, prosecuted, convicted of any type of

5    any criminal offense other than traffic?

6          PROSPECTIVE JUROR 39:  No, ma'am.

7          THE COURT:  Have you ever served as a juror?

8          PROSPECTIVE JUROR 39:  I have not.

9          THE COURT:  Thank you.

10         Mr. Kasper.

11         PROSPECTIVE JUROR 40:  Yes.  I'm Brian Kasper.

12   ███████, 1979.

13         THE COURT:  And what do you do for a living, sir?

14         PROSPECTIVE JUROR 40:  Currently, I'm an analyst for

15   Apple.

16         THE COURT:  Are you married?

17         PROSPECTIVE JUROR 40:  Yes.

18         THE COURT:  And what's your spouse do?

19         PROSPECTIVE JUROR 40:  She's a mom.

20         THE COURT:  How many children do you have?

21         PROSPECTIVE JUROR 40:  Three.

22         THE COURT:  And what are their ages?

23         PROSPECTIVE JUROR 40:  19, 11, and 6.

24         THE COURT:  Does your 19-year-old work?

25         PROSPECTIVE JUROR 40:  Yes.

1          **THE COURT:**  And what do they do?

2          **PROSPECTIVE JUROR 40:**  She's in school, and she works

3     at a frozen yogurt place.  So --

4          **THE COURT:**  I couldn't work there.  I'd eat it all.

5          Do you have any friends or family in law enforcement?

6          **PROSPECTIVE JUROR 40:**  No.

7          **THE COURT:**  Have you, any close friend, or family

8     member ever been the victim of any form of sexual abuse?

9          **PROSPECTIVE JUROR 40:**  Not to my knowledge, no.

10          **THE COURT:**  How about the victim of any other type of

11     crime?

12          **PROSPECTIVE JUROR 40:**  No.

13          **THE COURT:**  Have you or a close friend or family

14     member ever been accused or prosecuted or convicted of any type

15     of crime?

16          **PROSPECTIVE JUROR 40:**  No.

17          **THE COURT:**  Have you ever served as a juror?

18          **PROSPECTIVE JUROR 40:**  I have not.

19          **THE COURT:**  Okay.  Thank you.

20          Mr. -- is it Vermund?

21          **PROSPECTIVE JUROR 41:**  Yes.

22          **THE COURT:**  Tell us your date of birth.

23          **PROSPECTIVE JUROR 41:**  &#9608;&#9608;&#9608;&#9608;&#9608;, 1987.

24          **THE COURT:**  And what do you do for a living?

25          **PROSPECTIVE JUROR 41:**  I work for Disney as a

customer support agent.

THE COURT:  Are you married?

PROSPECTIVE JUROR 41:  No.

THE COURT:  Any children?

PROSPECTIVE JUROR 41:  No.

THE COURT:  Any friends or family in law enforcement?

PROSPECTIVE JUROR 41:  No.

THE COURT:  Have you or a close friend or family member ever been the victim of any form of sexual abuse?

PROSPECTIVE JUROR 41:  No.

THE COURT:  How about any other type of crime?

PROSPECTIVE JUROR 41:  My dad was pickpocketed in Spain a long time ago but nothing -- nothing more than that.

THE COURT:  Did they catch the person?

PROSPECTIVE JUROR 41:  Not to my knowledge.

THE COURT:  Okay.  Anything about that experience that would make it difficult for you to sit, listen to the evidence, and render a fair and impartial verdict if you were called to do so?

PROSPECTIVE JUROR 41:  No.

THE COURT:  Okay.  Have you or any close friend or family member ever been, other than traffic, accused of a crime or prosecuted in any way or convicted of any criminal offense?

PROSPECTIVE JUROR 41:  I had a friend who lived in Alabama for a while -- was recently accused and convicted of a

1    crime.  He was in the military.

2             THE COURT:  Okay.  What was he accused of?

3             PROSPECTIVE JUROR 41:  Murder.

4             THE COURT:  And convicted of it?

5             PROSPECTIVE JUROR 41:  Yeah.

6             THE COURT:  Do you know anything about how -- the

7    process or anything that went on with that?  Were you familiar

8    with it, or did you just sort of hear about it and learn about

9    it after the fact?

10            PROSPECTIVE JUROR 41:  His wife told me about it

11   after the fact.  But I had no inkling -- you know, I thought he

12   was my best friend, but turned out I was incorrect.

13            THE COURT:  Okay.  Anything about -- do you have any

14   opinion on whether he was treated fairly with the system?

15            PROSPECTIVE JUROR 41:  No, no.  I didn't see any --

16   all I saw was the police report and the final conviction.  I

17   didn't see anything else.

18            THE COURT:  So you have no opinion regarding that?

19            PROSPECTIVE JUROR 41:  No.

20            THE COURT:  Anything about the fact that your friend,

21   or someone who you thought was your friend, was convicted of a

22   homicide that would affect your ability to sit, listen to the

23   evidence in this case, and render a fair and impartial verdict

24   were you called upon to do so?

25            PROSPECTIVE JUROR 41:  I don't think so, no.

1   THE COURT:  Have you ever served as a juror before?

2   PROSPECTIVE JUROR 41:  Like on a jury for a case?

3   THE COURT:  Yeah.

4   PROSPECTIVE JUROR 41:  No, I have not.

5   THE COURT:  Were you called and didn't get picked

6   or --

7   PROSPECTIVE JUROR 41:  Yeah, I got called and didn't

8   get picked.

9   THE COURT:  Okay.  All right.  Thank you.

10  PROSPECTIVE JUROR 41:  Thanks.

11  THE COURT:  All right.  Can you tell us your full

12  name and date of birth, please.

13  PROSPECTIVE JUROR 42:  My name is Ruben Canals.  Date

14  of birth is ▮▮▮▮▮▮▮, 1965.

15  THE COURT:  And what do you do for a living, sir?

16  PROSPECTIVE JUROR 42:  I'm a commission sales tech

17  for a pest control company.

18  THE COURT:  Are you married?

19  PROSPECTIVE JUROR 42:  Yes.

20  THE COURT:  And what's your spouse do?

21  PROSPECTIVE JUROR 42:  Retired.

22  THE COURT:  Retired from what?

23  PROSPECTIVE JUROR 42:  Sales.

24  THE COURT:  Any children?

25  PROSPECTIVE JUROR 42:  Nope.

1    THE COURT:  Do you have any friends or family in law

2    enforcement?

3    PROSPECTIVE JUROR 42:  Yes.

4    THE COURT:  And friends or family?

5    PROSPECTIVE JUROR 42:  Both.

6    THE COURT:  Both.

7    Do you discuss with them their cases at all?

8    PROSPECTIVE JUROR 42:  No.

9    THE COURT:  Anything about the fact that you have

10    friends and family in law enforcement affect your ability to

11    sit in this case and serve as a juror and render a fair and

12    impartial verdict if you were called to do so?

13    PROSPECTIVE JUROR 42:  No.

14    THE COURT:  Have you or any close friend or family

15    member ever been the victim of any form of sexual abuse?

16    PROSPECTIVE JUROR 42:  Not that I know of.

17    THE COURT:  How about any other type of crime?

18    PROSPECTIVE JUROR 42:  Financial fraud.

19    THE COURT:  Okay.  Was that you -- that you were a

20    victim of?

21    PROSPECTIVE JUROR 42:  An uncle.

22    THE COURT:  Did they ever catch the person?

23    PROSPECTIVE JUROR 42:  That did the fraud?

24    THE COURT:  Yes.

25    PROSPECTIVE JUROR 42:  My uncle killed him.

1          THE COURT:  Your uncle killed him?

2          PROSPECTIVE JUROR 42:  Uh-huh.  It happened a long

3    time ago.

4          THE COURT:  Was your uncle prosecuted for that?

5          PROSPECTIVE JUROR 42:  He turned himself in.

6          THE COURT:  What happened with his case?  Did they

7    actually prosecute him and --

8          PROSPECTIVE JUROR 42:  He spent 15 years in jail.

9          THE COURT:  Okay.  So anything about that experience

10   with your uncle that would make it difficult for you to sit and

11   listen to the evidence in this case and render a fair and

12   impartial verdict if you were called upon to do so?

13         PROSPECTIVE JUROR 42:  I don't think so.

14         THE COURT:  Don't think so or don't know so?

15         PROSPECTIVE JUROR 42:  No.  It won't.

16         THE COURT:  Okay.  Have you ever served as a juror

17   before?

18         PROSPECTIVE JUROR 42:  No.

19         THE COURT:  Okay.  Thank you.

20         Now I have some questions I'm going to ask you all as

21   a group, and if your answers differ in any way from the others,

22   then I'll ask you individually.  But I'd just ask everybody to

23   say "yes" or "no" loud enough so that we can all hear you.

24         Does any member of the jury panel have any matter

25   pending before the United States Attorney's Office, in this

| | |
|---|---|
| 1 | district or any other district, in which you're involved as a |
| 2 | party, a witness, or the subject of some legal action? |
| 3 | THE VENIRE:  No. |
| 4 | THE COURT:  Has anyone ever been called to testify as |
| 5 | a witness in any court? |
| 6 | THE VENIRE:  No. |
| 7 | THE COURT:  Do any of you know -- oh, yes. |
| 8 | PROSPECTIVE JUROR 38:  I did have a post-conviction |
| 9 | motion or something.  I feel like I've testified in some small |
| 10 | capacity. |
| 11 | THE COURT:  Anything about that experience -- |
| 12 | PROSPECTIVE JUROR 38:  No. |
| 13 | THE COURT:  -- that would make it difficult for you |
| 14 | to sit? |
| 15 | Do any of you know one another? |
| 16 | THE VENIRE:  No. |
| 17 | THE COURT:  Has anyone ever served in the military? |
| 18 | THE VENIRE:  No. |
| 19 | THE COURT:  Do any of you have any strong feelings |
| 20 | about the United States government or, more specifically, the |
| 21 | United States Federal Bureau of Investigation, the federal |
| 22 | marshals, or the Orlando Police Department that might interfere |
| 23 | with your ability to remain fair and impartial? |
| 24 | THE VENIRE:  No. |
| 25 | THE COURT:  Does anyone have a particularly strong |

1    view whether it be pro or against law enforcement in general

2    that may interfere with your ability to remain fair and

3    impartial?

4                    THE VENIRE:  No.

5                    PROSPECTIVE JUROR 36:  Yes.

6                    THE COURT:  Okay.  Yes, ma'am.

7                    PROSPECTIVE JUROR 36:  Can you repeat the question.

8                    THE COURT:  Does anyone have a particularly strong

9    view either pro or against law enforcement in general that

10   would interfere with your ability to remain fair and impartial?

11                   PROSPECTIVE JUROR 36:  I do.  I'm very pro law

12   enforcement, and I don't know what that would make me.

13                   THE COURT:  Okay.  Well, would you tend to believe or

14   disbelieve -- I mean, a lot of people are pro law enforcement.

15   Right?

16                   PROSPECTIVE JUROR 36:  Right.

17                   THE COURT:  Would you tend to give more credibility

18   to the testimony of a law enforcement officer than you would

19   any other witness in the case simply because that person is

20   wearing a uniform?

21                   PROSPECTIVE JUROR 36:  I might.

22                   THE COURT:  Okay.  Okay.  Thank you.

23                   Yes, sir.  Mr. Kasper.

24                   PROSPECTIVE JUROR 40:  Yeah.  I would have to fight

25   my biases as much as possible to have the opposite kind of

1    point of view.  I -- I tend to think that law enforcement is

2    not the correct solution for a lot of situations.

3        THE COURT:  Okay.  Well, would you tend to, in the

4    converse, disbelieve the testimony of a law enforcement officer

5    simply because they're a law enforcement officer?

6        PROSPECTIVE JUROR 40:  I mean, I'm -- I can look at

7    things objectively, but I know in my heart the person I am.

8    So, you know -- but, yeah, I mean, I think I could.

9        THE COURT:  Okay.  Well, if you're selected as a

10   juror in this case, I will instruct everybody on, you know,

11   credibility of witnesses and things you should consider in

12   determining the credibility of a witness and judging their

13   testimony, and it's up to you each to judge the testimony of

14   each individual witness based on a whole host of factors

15   that -- some that I give you and others that you just feel

16   having watched their testimony and listened to their testimony.

17        What I need to know is whether or not a witness,

18   particularly whether it be law enforcement or -- I'll just

19   answer in general anybody -- if a witness comes in, and just

20   because they're law enforcement, you're going to judge their

21   testimony one way or another only because of that.  Like, do

22   they have any special powers because they put on a uniform that

23   they're unlike anybody else, you know, whether that is going to

24   make a difference or whether you're going to listen to the

25   testimony of every witness and judge them based on their

1    testimony and weigh the credibility of each person

2    individually?

3         PROSPECTIVE JUROR 40:  I will say the latter.  I

4    mean, I would listen to everyone and just make a fair

5    assessment, so yeah.

6         THE COURT:  All right.  There are lots of times when,

7    you know, we have testimony from law enforcement officers --

8    and I don't know in this particular case -- we have law

9    enforcement officers that actually witness and view things

10   themselves, and we have law enforcement officers that come in

11   and take a report, and that's really all they know is basically

12   the report they've taken.  And then they have law enforcement

13   officers that take statements from people.  And so they are --

14   you know, they do their job, and whatever that job is with

15   regard to the case at hand, their testimony will reflect that.

16        And so what I'd like for each person to be able to do

17   is listen to the testimony of every witness, including law

18   enforcement, and judge it based on what they -- what they did

19   and whether you believe or disbelieve them based on their

20   testimony.

21        PROSPECTIVE JUROR 40:  Okay.

22        THE COURT:  Can you do that?

23        PROSPECTIVE JUROR 40:  Yeah.

24        THE COURT:  Anybody who can't?  Anybody who's going

25   to come in here and say, "They're a law enforcement officer.

1    What they say is golden, and it doesn't -- it doesn't matter"?

2    They could tell you -- it's sunny outside.  They could tell you

3    it's raining, and you would say they're telling you it's

4    raining.

5              Okay.  All right.  If there is a witness -- I'll tell

6    you a witness who is under the age of 18 is to be treated the

7    same as any other witness in the case.  Is there anyone here

8    who cannot believe a witness simply because they are under the

9    age of 18?  Sort of similar to the law enforcement officer

10   question.  Anybody here?

11             THE VENIRE:  No.

12             THE COURT:  Okay.  Is there anyone here who believes

13   an adult is automatically more credible witness than a child?

14             THE VENIRE:  No.

15             THE COURT:  Anybody here who believes that a child is

16   automatically a more credible witness than an adult?

17             THE VENIRE:  No.

18             THE COURT:  Have any of you or a close friend or

19   relative ever taken a medication to treat insomnia?

20             THE VENIRE:  No.

21             THE COURT:  Has anyone ever been diagnosed with any

22   anxiety disorder or have a close friend or family member

23   diagnosed with any type of anxiety disorder?

24             PROSPECTIVE JUROR 41:  Yes.

25             THE COURT:  Mr. Vermund, you have.  Okay.  And what

1  was -- what was that?

2          **PROSPECTIVE JUROR 41:** I've been diagnosed with

3  depression and anxiety.

4          **THE COURT:** Okay. Are you on medication?

5          **PROSPECTIVE JUROR 41:** Yes.

6          **THE COURT:** Would the fact that you have been

7  diagnosed and are on medication -- would it affect your ability

8  to be fair and impartial towards any witness if you learned

9  that that witness had an anxiety disorder?

10          **PROSPECTIVE JUROR 41:** Fair and impartial, no, that

11  wouldn't.

12          **THE COURT:** Wouldn't affect?

13          **PROSPECTIVE JUROR 41:** No.

14          **THE COURT:** Okay. Anyone else?

15          Yes, sir. Mr. Futch.

16          **PROSPECTIVE JUROR 38:** My wife used to have panic

17  attacks. I don't know what medication she was on or is on, but

18  I can remain fair and impartial. It wouldn't affect that in

19  any way.

20          **THE COURT:** All right. Anyone else?

21          Ms. Hammond.

22          **PROSPECTIVE JUROR 33:** Yes. I have an anxiety

23  disorder.

24          **THE COURT:** Are you on medication?

25          **PROSPECTIVE JUROR 33:** Yes.

1    **THE COURT:** So would that affect your ability to be

2    fair and impartial towards a witness if you learned that that

3    witness had an anxiety disorder?

4    **PROSPECTIVE JUROR 33:** No.

5    **THE COURT:** Okay. Thank you.

6    Anyone else?

7    All right. Have any of your lives been negatively

8    affected by your or someone else's alcohol or drug abuse?

9    **THE VENIRE:** No.

10    **UNIDENTIFIED SPEAKER:** Yes.

11    **THE COURT:** I'm sorry. Did we have someone that

12    answered "yes"?

13    Okay. Yes, ma'am.

14    **PROSPECTIVE JUROR 32:** Can you restate the question

15    one more time.

16    **THE COURT:** Has your life ever been negatively

17    affected by someone else's alcohol or drug use?

18    **PROSPECTIVE JUROR 32:** Ex-husband.

19    **THE COURT:** Okay. And would that experience affect

20    your ability to sit and listen to the evidence and render a

21    fair and impartial verdict in this case if you heard evidence

22    that the defendant was intoxicated?

23    **PROSPECTIVE JUROR 32:** I can't honestly answer that

24    question.

25    **THE COURT:** Okay. All right. Anyone else?

1            Mr. Evans.

2            **PROSPECTIVE JUROR 34:**  I have a couple, but my best

3    friend --

4            THE COURT:  I'm sorry.  Can you put that mic up.

5            **PROSPECTIVE JUROR 34:**  My best friend.

6            THE COURT:  Okay.

7            **PROSPECTIVE JUROR 34:**  It resulted into suicide.

8            THE COURT:  All right.  And would that affect your

9    ability to sit and render a fair and impartial verdict if you

10   heard evidence that the defendant was intoxicated?

11           **PROSPECTIVE JUROR 34:**  It's hard to say.

12           THE COURT:  Okay.  All right.  Anyone else?

13           Now, I anticipate that the testimony and the evidence

14   in this case will concern frank and graphic discussion about

15   sexual activity with a minor.  You might find some or all of it

16   offensive, but there are many situations in which a person

17   serving as a juror must see or hear about things which they

18   find offensive.

19           Some people, however, might have personal experiences

20   that might make the hearing of the alleged sexual activity more

21   than just offensive.  Would being exposed to such material make

22   you too uncomfortable to allow you to sit as a juror in this

23   case?

24           THE VENIRE:  No.

25           THE COURT:  Mr. Evans.  Okay.  And Ms. Zorzy.  Okay.

1              **PROSPECTIVE JUROR 32:** It would make me

2  uncomfortable.

3              **THE COURT:** All right. Same for you, Mr. Evans?

4              **PROSPECTIVE JUROR 34:** Yes, ma'am.

5              **THE COURT:** Okay. Now, with this said, this case is

6  not whether these charges are -- any of the evidence presented

7  during this case is ugly or whether it's troubling to any of

8  you. It's about requiring the United States to prove the

9  allegation beyond a reasonable doubt. So if the United States

10  fails to meet its burden of proof, you must find the defendant

11  not guilty regardless of how ugly or how troubling these

12  allegations are.

13              Do you all understand?

14              **THE VENIRE:** Yes.

15              **THE COURT:** And, likewise or conversely, if you find

16  the Government has met its burden of proof, then you should

17  find the defendant guilty. Do you understand?

18              **THE VENIRE:** Yes.

19              **THE COURT:** Does anyone have a problem with these

20  responsibilities?

21              **THE VENIRE:** No.

22              **THE COURT:** And I'll explain the burden of proof to

23  you before you begin your deliberations.

24              Now, this case is set to begin when we finish

25  selecting the jury today and go through Friday. Does anybody

1    have any conflict with today through Friday?

2            **UNIDENTIFIED SPEAKER:**  Yes.

3            **PROSPECTIVE JUROR 32:**  I have to work, and I have

4    kids.  I'm a single parent; so there's no one to watch the

5    kiddos.

6            **THE COURT:**  Okay.  Who else on the --

7            **PROSPECTIVE JUROR 34:**  My wife and I alternate

8    schedules.  So when she's at work, I watch the kids and vice

9    versa.  So I wouldn't have anybody to watch the kids, and I

10    have a one-year-old.

11            **THE COURT:**  Okay.  All right.  Who else?

12            **PROSPECTIVE JUROR 39:**  Yeah.  I'm the same as

13    Mr. Evans.  My wife and I alternate schedules to be able to

14    watch the kids.

15            **PROSPECTIVE JUROR 41:**  Friday night, I have a concert

16    I'm going to -- I'd like to go to.

17            **THE COURT:**  What concert are you going to?

18            **PROSPECTIVE JUROR 41:**  Dream Theater.  So slightly

19    less serious but still.

20            **THE COURT:**  It's a little bit less serious.  Okay.

21    I'm hopeful that you would be able to make your concert.

22            All right.  Anyone else?

23            **PROSPECTIVE JUROR 42:**  I am the caregiver for my mom.

24    She goes to dialysis Wednesdays and Fridays like at 2:00 in the

25    afternoon.  I'm the one that takes care of that.

1      THE COURT:  And so what time does she go?

2      PROSPECTIVE JUROR 42:  2:00.  Sometimes earlier

3   because they're short-handed.

4      THE COURT:  Okay.

5      PROSPECTIVE JUROR 42:  Sometimes they call, and I

6   have to take her earlier, but usually 2:00.

7      THE COURT:  And do you stay with her or drop her off?

8      PROSPECTIVE JUROR 42:  Drop her off and pick her up

9   later.

10      THE COURT:  Okay.  What time does she --

11      PROSPECTIVE JUROR 42:  Three hours later.

12      THE COURT:  Three hours.  Okay.

13      And where is that?  Is that here in town?

14      PROSPECTIVE JUROR 42:  DaVita dialysis in St. Cloud.

15      THE COURT:  In St. Cloud.  Okay.

16      All right.  Thank you.

17      Now, I guess this is a "speak now or forever hold

18   your peace" question.  Do any of you have any reason at all

19   that we have not discussed where you feel you just cannot sit

20   as a juror in this case, whether it be religious, mental or

21   physical limitations, language limitations, strong feelings

22   about the subject matter, anything that would prevent you from

23   concentrating on the evidence as presented during the course of

24   this trial, something that you've not already expressed to us?

25      Yes, sir.

1    **PROSPECTIVE JUROR 41**:  I forgot to mention that I

2    did -- I do have some friends who have gone through sexual

3    assault and rape before.

4    **THE COURT**:  Okay.  All right.  Would anything about

5    the experiences that they went through that would make it

6    difficult for you to sit and listen to the evidence in this

7    case if you were called as a -- to serve as a juror and render

8    a fair and impartial verdict?

9    **PROSPECTIVE JUROR 41**:  I think I can be fair and

10   impartial; but, you know, knowing them, it's my instinct to be

11   on the side of the accuser in cases like this, but I do think I

12   can be fair and impartial.

13   **THE COURT**:  On the side of the accuser or on the side

14   of the accused?

15   **PROSPECTIVE JUROR 41**:  The accuser.

16   **THE COURT**:  Now, you indicated that those were

17   friends of yours.

18   **PROSPECTIVE JUROR 41**:  Yes.

19   **THE COURT**:  Adult victims or child victims?

20   **PROSPECTIVE JUROR 41**:  One of them was a young adult,

21   like around 19, and the other one was a child when it happened.

22   **THE COURT**:  Okay.  All right.  Thank you.

23   Anybody else -- that you have not already told to us?

24   Yes, sir.  Mr. Evans.

25   **PROSPECTIVE JUROR 34**:  Just two things.  One, the

1    purpose of the mask is I do have a cold.

2              THE COURT:  Okay.

3              PROSPECTIVE JUROR 34:  And I've been going through

4    all the motions.  I've gone through the chills today.  I think

5    I've had a fever today.  I don't have COVID from what I -- my

6    wife was diagnosed at least.  But, obviously, I don't want to

7    pass that around.

8              And then similar to the previous gentleman, my cousin

9    was wrongfully accused of rape and did 11 years.

10             THE COURT:  Okay.  Thank you, sir.

11             All right.  I'm going to let you-all go downstairs at

12   this time, and then we are -- if you could just have Ms. Haney

13   remain and Mr. -- is it Proteau?

14             PROSPECTIVE JUROR 39:  Proteau.

15             THE COURT:  Proteau.  That's how you pronounce your

16   name.

17             -- remain real quickly, and everybody else can go

18   downstairs.

19        (Venire Panel 2 out at 12:46 PM.)

20             THE COURT:  And, Mr. Proteau, if you could just step

21   outside with Carlos for one second.  Thank you.

22        (Prospective Juror 39 out at 12:47 PM.)

23             THE COURT:  Now, Ms. Haney, you had indicated early

24   on that either you or someone you know, a friend or family

25   member, had been the victim of a form of sexual abuse.  Could

1    you just share with us now what that was about?

2            PROSPECTIVE JUROR 31:  It was a good friend of mine,

3    adult, who was assaulted in her office at night.  It was -- I

4    wasn't real close to her at that time.

5            THE COURT:  Right.

6            PROSPECTIVE JUROR 31:  But I knew about it when it

7    happened, and over the years we've become closer.  But it was

8    quite a while ago.  It was like 20 years ago.

9            THE COURT:  Did they catch the person?

10           PROSPECTIVE JUROR 31:  Yes.

11           THE COURT:  Was that person prosecuted?  Do you know?

12           PROSPECTIVE JUROR 31:  Yes.

13           THE COURT:  Were they convicted?

14           PROSPECTIVE JUROR 31:  Yes.

15           THE COURT:  All right.  Anything about the fact that

16   a friend of yours was the victim of a sexual assault affect

17   your ability to sit and listen to the evidence in this case and

18   render a fair and impartial verdict if you were called upon to

19   do so?

20           PROSPECTIVE JUROR 31:  No.

21           THE COURT:  Any questions?

22           MR. FELICETTA:  No, Judge.  Thank you.

23           MR. LASNETSKI:  I'm sorry, Your Honor.  I missed the

24   answer.

25           THE COURT:  She said no.

| | |
|---|---|
| 1 | MR. LASNETSKI:  Okay.  No questions, Your Honor. |
| 2 | THE COURT:  Okay.  Thank you. |
| 3 | If you could have Mr. Proteau come in. |
| 4 | (Prospective Juror 31 out at 12:49 PM.) |
| 5 | (Prospective Juror 39 in at 12:49 PM.) |
| 6 | THE COURT:  Mr. Proteau, have a seat.  There's a |
| 7 | microphone right there in that first chair right there, but you |
| 8 | can sit wherever you feel comfortable. |
| 9 | You had indicated, when I was initially asking |
| 10 | questions, that either you or a close friend or family member |
| 11 | had been the victim of some form of sexual abuse.  Can you |
| 12 | share with us what the circumstances were. |
| 13 | PROSPECTIVE JUROR 39:  Yeah.  My uncle was sexually |
| 14 | abused by his uncle when he was a teenager. |
| 15 | THE COURT:  Now, was his -- so this was a family |
| 16 | situation.  Was the uncle that abused your uncle -- was he ever |
| 17 | prosecuted? |
| 18 | PROSPECTIVE JUROR 39:  I don't believe so.  I mean, I |
| 19 | haven't seen him in a long time.  But he has a family, has a |
| 20 | couple kids that are older.  Yeah. |
| 21 | THE COURT:  Anything about that, knowing that you |
| 22 | have a family member that was a victim -- anything about that |
| 23 | that would make it difficult for you to sit, listen to the |
| 24 | evidence in this case, and render a fair and impartial verdict |
| 25 | if you were called to do so? |

1     **PROSPECTIVE JUROR 39**:  I know it's had an affect on

2     me because my uncle is, essentially, my dad.  He's very, very

3     close with me.  So when that subject does come up, it kind of

4     hits a little bit.

5         **THE COURT**:  Right.

6         **PROSPECTIVE JUROR 39**:  And I also do have kids.  So

7     it's -- so I might have -- might be unfair in the reasoning or

8     anything if the evidence -- depending on the evidence, but

9     yeah.

10        **THE COURT**:  Okay.  Any questions?

11        **MR. FELICETTA**:  The question -- the only question I

12    had, Judge, was about the childcare issue, if there was any way

13    around that or if that's sort of preventative from serving.

14        **PROSPECTIVE JUROR 39**:  We don't have childcare.  We

15    can't afford childcare to have day care or anything like that.

16    The family I have in Florida live about an hour, hour and a

17    half away from us.  I also have a schedule there.  They both

18    work as well.  So the alternating schedule -- I know it sucks

19    but -- so --

20        **THE COURT**:  So is there -- is there a way that your

21    wife could take them to school if you were here during the

22    week?

23        **PROSPECTIVE JUROR 39**:  That's the thing.  They're not

24    in school.  They're five and two.  So they're at home.

25        **THE COURT**:  So she would have to be home with them

1  the whole week?

2          **PROSPECTIVE JUROR 39:**  Yep.

3          **THE COURT:**  Okay.  All right.  Any other questions?

4          **MR. FELICETTA:**  No, Your Honor.  Thank you.

5          **MR. LASNETSKI:**  No questions, Your Honor.

6          **THE COURT:**  All right.  Thank you, sir.  You can go

7  downstairs.

8          **PROSPECTIVE JUROR 39:**  No problem.

9      (Prospective Juror 39 out at 12:52 PM.)

10         **THE COURT:**  All right.  Are there any offhand

11  initially for cause?

12         **MR. FELICETTA:**  For cause, Judge?

13         **THE COURT:**  Yes.

14         **MR. FELICETTA:**  Yes.  I have several.

15         **THE COURT:**  Okay.

16         **MR. FELICETTA:**  Number 32, Number 34, Number 36,

17  Number 39 based upon his childcare issue and the statements he

18  gave regarding the uncle, and Number 41.

19         **THE COURT:**  Number 40- --

20         **MR. FELICETTA:**  Number 41.

21         **THE COURT:**  Number 41.

22         **MR. LASNETSKI:**  Your Honor, I have the same exact

23  ones as the Government.

24         **THE COURT:**  So 32, 34, 36, 39, and 40- -- wait.  36,

25  39, and 41?

1      MR. LASNETSKI: Correct.

2      THE COURT: Let me look at one thing. I just wanted

3  to make sure I had the same ones, but I marked one other one,

4  and I think I marked the wrong one.

5      All right. Take a moment.

6      (Pause in proceedings.)

7      THE COURT: Are you ready? If you need more time,

8  let me know.

9      MR. LASNETSKI: We're ready.

10     THE COURT: Okay. Are you ready?

11     MR. FELICETTA: Yes, Judge.

12     THE COURT: Okay. So we have nine remaining from the

13  first panel, which would bring up Juror Number 31, Juror

14  Number 33, and Juror Number 35.

15     Does the Government have any strikes?

16     MR. FELICETTA: Not as to those three, Your Honor.

17     THE COURT: Okay.

18     MR. LASNETSKI: Your Honor, we'll strike Juror

19  Number 31 and Number 33.

20     THE COURT: Okay. So that brings up -- so we have

21  Juror Number 35, 37, 38. Any challenges?

22     MR. LASNETSKI: Back to me? I will strike Number 38,

23  Your Honor.

24     THE COURT: All right. Mr. Felicetta, any strikes?

25     MR. FELICETTA: Not as to those jurors, Your Honor.

1          THE COURT:  Okay.

2          MR. FELICETTA:  As to the remaining jurors, the only

3     strike we have is Juror Number 40.

4          THE COURT:  Juror Number 40?

5          MR. FELICETTA:  Yes.

6          THE COURT:  All right.  So let me see.  We have 35,

7     37, and 42 remaining, and that totals 12.

8          MR. LASNETSKI:  Your Honor, I do have a question

9     about Number 42.  I know he had some issues with being a

10    caregiver for his mother.  I don't know if the Court was

11    considering any accommodations that the Court would be making

12    for him or if he's going to be distracted if he's selected as a

13    juror.

14         MR. FELICETTA:  Also concerned about proceeding with

15    no alternates.  Are there any other jurors downstairs?

16         THE COURT:  I have never in my entire time sitting on

17    the bench had so many people removed for cause, a lot of which

18    because they had friends or family or themselves were the

19    victims of sexual abuse of some degree.

20         I mean, I can try to make an accommodation for him.

21    I mean, he's going to -- where is she?  St. Cloud?  How far

22    away is St. Cloud from here?

23         THE COURTROOM DEPUTY:  Depends on traffic.  About

24    40 minutes.

25         THE COURT SECURITY OFFICER:  With traffic would be

1    like an hour.

2         THE COURT:  I mean, we just can't break.  How many

3    days?  Two days a week?

4         THE COURTROOM DEPUTY:  I think he said two.

5         MR. LASNETSKI:  I believe -- yeah.  It was Wednesday

6    and Friday.

7         THE COURT:  Friday -- I mean, I don't know how the

8    case is going to go, but Friday, if they're deliberating, he

9    can't leave a deliberation to go take his mother to her

10   dialysis.  I would hope that we'd be finished before then, but

11   if he's got to -- but we're in a situation where he's got to

12   get his mother to dialysis by 2:00.  Then he can come back

13   here.  And she's got three hours of dialysis; so he's not going

14   to be able to pick her up till 5:00.

15        We can bring him back in and ask him -- let's bring

16   him back in and ask him if there's anybody else that can do

17   that -- take her.  I mean, it's not something she can

18   reschedule.  You have to have dialysis when you have

19   dialysis [sic].

20        Juror Number 42.

21        I don't have a problem proceeding without an

22   alternate.  I mean, sometimes you can go back and see if

23   there's someone that you would be willing to have as an

24   alternate that you struck earlier; but, I mean, we can just

25   proceed and see what happens.

1    (Discussion held off the record between the Court and

2    Courtroom Deputy.)

3         THE COURT:  Seeing if we can call in some more for

4    today.  I don't know how lucky, but there are no jurors --

5    there are no trials for tomorrow, so there are no more jurors

6    coming in for tomorrow.

7         THE COURTROOM DEPUTY:  Not today.

8         THE COURT:  They can't call anyone in for today?

9         THE COURTROOM DEPUTY:  No.  I think they need so

10   many -- she said not today.  It would be for tomorrow.

11        THE COURT:  Okay.  Can't pick some people off the

12   street.  All right.

13        Let's bring Mr. Canals back in and see what he has to

14   say.

15        They can get some more jurors for tomorrow by

16   calling, but they can't get any more for this afternoon.  So if

17   we need to have more and start at 9:00 tomorrow -- you know, we

18   don't need a whole bunch.

19   (Prospective Juror 42 in at 1:07 PM.)

20        THE COURT:  Mr. Canals, if you can just have a seat

21   anywhere.  We'll get you a microphone.

22        PROSPECTIVE JUROR 42:  I'm back.

23        THE COURT:  Sure.  Have a seat.

24        I just want to inquire a little bit about your mom

25   and you having to take her to dialysis.  Is there -- and you

1    said it was Wednesday and Friday?

2             PROSPECTIVE JUROR 42:  Monday, Wednesday, and Friday.

3         THE COURT:  Monday, Wednesday, and Friday; so today,

4    Wednesday, and Friday.

5             PROSPECTIVE JUROR 42:  No.  Yesterday.

6         THE COURT:  Sorry.  I'm off today.

7             PROSPECTIVE JUROR 42:  It feels like a Monday.

8         THE COURT:  It feels like a Monday.

9             PROSPECTIVE JUROR 42:  If the trial is one day, it's

10   not a big deal.  But you can't guarantee that.

11        THE COURT:  No.  This isn't a one-day trial.  We

12   anticipate it's going to go through Friday.  Is there anybody

13   else -- because I was thinking she needs to be there at 2:00 in

14   St. Cloud.

15            PROSPECTIVE JUROR 42:  Yeah.

16        THE COURT:  And how long does it take you to get

17   there from --

18            PROSPECTIVE JUROR 42:  Oh, it's five minutes from the

19   house.

20        THE COURT:  From your house but not from here.

21        Do you have anybody else that could take her on

22   Wednesday and Friday?

23            PROSPECTIVE JUROR 42:  I can try to make other

24   arrangements.

25        THE COURT:  I mean, my father was on dialysis too; so

1  I know that's something that's absolutely needed, and I just

2  didn't know whether or not -- because I was trying to figure

3  out a way to accommodate -- where we could let you break and

4  take her and come back, but then it just seems you have to go

5  all the way back from here to St. Cloud and leave to go get

6  her, and then it would be --

7          **PROSPECTIVE JUROR 42:**  It's a long drive.

8          **THE COURT:**  -- difficult.

9          So whether or not there was anyone else that could

10  take her this week and pick her up.

11          **PROSPECTIVE JUROR 42:**  I can try, yeah.

12          **THE COURT:**  Can you check for us and let us know?

13          **PROSPECTIVE JUROR 42:**  Sure.

14          **THE COURT:**  Okay.  All right.  Thank you.

15          Any other questions?

16          **MR. FELICETTA:**  No, Your Honor.  Thank you.

17          **MR. LASNETSKI:**  No, Your Honor.

18          **THE COURT:**  All right.  Thank you, sir.

19      (Prospective Juror 42 out at 1:09 PM.)

20          **THE COURT:**  Okay.  So that's the situation with

21  Mr. Canals.  And he'll check, and if someone can take her, then

22  that will eliminate that issue with him.  Otherwise, I mean,

23  we -- if there are no other strikes, then he is 12, and we'd

24  have no alternates, unless there's an alternate -- somebody

25  that was -- you-all struck that you can agree to bring back.

1    Otherwise, I can have some people --

2            MR. FELICETTA:  I have --

3            THE COURT:  -- have them bring people, you know,

4    tomorrow.

5            MR. FELICETTA:  I have gone back, Judge, through --

6    the Government has.  We've got three from the first panel we

7    struck and one from the second panel that we just couldn't

8    agree on any of them coming back.

9            THE COURT:  Okay.  That's fine.  That's fine.  I just

10   want to see what we need to do.

11           So if we just went with this 12, if he has -- can

12   make other arrangements, then we would have -- it would be --

13   this would be our jury.  Then we would just proceed without

14   alternates if you-all can agree to that and just hope that we

15   don't lose anybody.

16           MR. LASNETSKI:  Your Honor, may I have a moment to

17   confer?

18           THE COURT:  Sure.  But let me just tell you who we

19   have.

20           MR. LASNETSKI:  Yes.

21           THE COURT:  We have Juror Number 4, 6, 7, 11, 15, 18,

22   20, 26, 30, 35, 37, and 42 remaining.

23           MR. FELICETTA:  Normally, Your Honor, a trial this

24   short, I wouldn't have a problem proceeding without an

25   alternate and hope that everyone can make it through.  I'm just

1   really concerned about the collateral consequences on the child

2   if it does not work out that way, and I have to represent her

3   interests.  And I think that --

4       **THE COURT:**  Right.  I understand.

5       (Pause in proceedings.)

6       **THE COURT:**  We're waiting to hear from Mr. Canals,

7   and I'm going to see if they can try to -- there's a group of

8   people that were called that they were instructed to call in by

9   6:00 tonight to see whether or not they needed to be here

10  tomorrow, and I'm going to ask them to try to get ten of them,

11  see if they can get ten people to come in this afternoon.

12  Whether they can or not, you know, I don't know, but it's worth

13  a shot.

14      Otherwise, you know, people will know that they need

15  to be here.  And as long as we don't start right at 9:00 and

16  start with them -- and then, you know, we can pick and go.  It

17  just eliminates an afternoon.  So you probably won't finish

18  until Friday.  But -- or, you know, we might.  That's up to

19  you-all.

20      Or if there are no other issues and Mr. Canals can

21  find somebody and there's not a strike to him and everybody's

22  fine with these 12, then we can just go -- we can just go

23  without an alternate because we have enough for a jury.  But we

24  have to finish this case on Friday because I've already made

25  arrangements for Monday and Tuesday since you-all already

1    indicated the case -- you couldn't be available those days.  So

2    I filled them.

3            (Pause in proceedings.)

4                    **THE COURT:**  All right.  So if we have jurors -- is

5    she still saying she's trying to get some for this afternoon?

6                    **THE COURTROOM DEPUTY:**  She's saying they can't.

7                    **THE COURT:**  Why can't they?  Tell her to make some

8    calls and see.  I don't want an "I can't."  That's not an "I

9    can't."  That's an "I won't."

10           We'll see if we can get more this afternoon.

11   Otherwise, if Mr. Canals is able to get somebody to take his

12   mother -- the question is whether you want to just proceed with

13   12 or whether you want to come back tomorrow morning.

14           The jurors are supposed to be here by 7:30, and

15   according to the jury coordinator, they could have them ready

16   to be up here by 8:15, 8:30; so we can start picking by 8:30.

17   And it would take no more than an hour, I don't think, to get

18   them picked if we only have between 12 -- I mean, I think we

19   could bring 12 people up tomorrow morning.  We don't need to

20   bring 40 people in here.

21           We could bring 10 or 12 up tomorrow and question them

22   like I did these -- these last 12 and get that done in probably

23   an hour -- questioned and have you-all figure out who you want

24   to keep and who you don't want to keep and then start the trial

25   after that.  It knocks out today.  It gives us, you know,

1    Wednesday, Thursday, and Friday.

2               Seeing if they can get any people to come in this

3    afternoon.  What time is it?  It's 1:25.  But probably couldn't

4    get anybody in here before maybe an hour, and it's 3:30, and

5    then it's 4:30.

6               MR. LASNETSKI:  Right.

7               THE COURT:  The only thing that would help us do is

8    pick somebody, and then we could start tomorrow morning.

9               MR. LASNETSKI:  Your Honor, I forgot to ask while we

10   were talking about housekeeping matters -- and this may affect

11   your answer, but do you have a certain time that you go to in

12   the evening, or is it just kind of a play it by ear?

13              THE COURT:  I would ask the jurors whether or not we

14   could go later.  I would be fine going to -- if they keep the

15   courthouse open and we wouldn't have problems with cars and all

16   that kind of stuff, I'd stay till later.  But, I mean, I'm

17   happy going to 6:00 every day so we can make up some of the

18   time.

19              MR. LASNETSKI:  Thank you.

20              THE COURT:  I'm happy to start the trial at 8:30 in

21   the morning so we can make up some time.

22              The way I do is we start and we go about an hour and

23   a half, take a break, then go about another hour and a half and

24   take a break.  I try to break at noon for lunch.  I usually do

25   an hour and a half, but I can do an hour, come back, and then

1    go another hour and a half, take a break, and then another hour

2    and a half and we close.  But I don't like to break in the

3    middle of somebody's testimony; so I try to gauge it that way.

4         I'll break after a direct or after a cross or

5    something like that but not, like, in the middle unless it's a

6    long, long witness.  And sometimes we do have long witnesses,

7    and we'll take -- we'll find a strategic area to break during

8    the direct or the cross for a break.  But, you know, that just

9    is dependent.  And sometimes a juror waves their hand and says

10   they need a break, and I'll take one.

11        But that's generally how I do it in terms of

12   scheduling, and we'll do -- you know, I'll have a printout --

13        Kassie, did you already give them the jury

14   instructions?

15        So we'll get a printout of the instructions as I

16   was -- gone through them, which you'll have, and we'll do our

17   charge conference.  And I usually do that, you know, in the

18   evening or over a lunch break so that we don't take up a bunch

19   of time with our charge conference, cut into the jury's time.

20   I try my best not to waste their time.

21        (Pause in proceedings.)

22        **THE COURTROOM DEPUTY**:  So jury talked to Keshia.  I

23   guess they can go down in the pool sequence list and try to

24   contact some people to see if they might be able to come in

25   this afternoon.

1    Judge.

2    THE COURT:  Uh-huh.

3    THE COURTROOM DEPUTY:  So I guess for today they can

4    run, like, this pool sequence list and try to contact some

5    people to see if they can come in.

6    How many should they start calling?  They're not sure

7    how long or what time they could be here.

8    THE COURT:  Do you want me to see if they can get

9    people to come in this afternoon?  I mean, I don't know whether

10   or not -- I don't know how you get one person and then -- you

11   tell them to come in at a certain time or ask them to, and then

12   the problem is this is a very large district.

13   MR. FELICETTA:  Right.

14   THE COURT:  Some of these people don't live in

15   Orlando.  And, basically, we'd have to pick and choose the

16   people that are in Orlando because it's going to take an hour

17   or more for some of the other people to get here.

18   MR. LASNETSKI:  I think my preference would be -- if

19   we can start early in the morning and it's only going to take

20   about an hour, then at least we have -- you know, we know

21   exactly what's going to happen and we can prepare accordingly.

22   THE COURT:  What are your thoughts?

23   MR. FELICETTA:  Yeah.  I don't -- I don't know that

24   there's much chance that we could get anything done today even

25   if we got a couple of jurors here.  By the time they get here,

1    we're probably going to be well past 3:00, and by the time

2    we're done with questioning, we're going to be at 4:00 or past

3    4:00.

4            What I was trying to avoid is we have a -- our first

5    witness is a child oncologist.  She's scheduled to fly out at

6    5:00 AM tomorrow morning.  She's up in our office waiting to

7    come here to testify.  But she was going to be Witness Number 1

8    today.  You know, that's a problem that we could try to

9    address, but she's got a roomful of patients waiting for her

10   tomorrow, which is why she's on the 5:00 AM flight home.  So

11   we're trying to accommodate that because we'll either have to

12   cancel all her patients and compel her to stay or rearrange her

13   to come back Thursday.

14           So I was hoping to hear back from Mr. Canals as to

15   whether he's Juror Number 12 and we're going to be able to go

16   or --

17           **THE COURT:**  Right.

18           **MR. FELICETTA:**  But, in any case, I agree with

19   counsel that tomorrow morning is a better option.

20           **THE COURT:**  Okay.  Tell them not to worry about

21   jurors for tonight, but tomorrow morning, 7:30, they need to be

22   here because we need to be able to go.

23           Okay.  We're still waiting to hear from Mr. Canals.

24           **THE COURTROOM DEPUTY:**  She said she's going to find

25   Mr. Canals.  7:30 is the earliest they can be here, but she'll

1    try to rush.  There's orientation they have to do downstairs,

2    but she'll try to speed through it as fast as possible.

3         THE COURT:  And we can make up that hour, I mean,

4    tomorrow.  We can make it up because we can stay till 6:00.

5    And depending on when we start, we can potentially just

6    eliminate that first break and break for lunch, save some time.

7         The only other option is to send Carlos out and pick

8    ten people off the street that live within the Middle District

9    and bring them in.

10         MS. RICARDSON-JONES:  As long as he avoids tent city,

11   Your Honor.

12         THE COURT:  Which actually used to be done in the

13   past.

14        (Pause in proceedings.)

15        (Prospective Juror 42 in at 1:49 PM.)

16         THE COURT:  All right.  Have a seat, Mr. Canals.

17         Mr. Canals is back.

18         Were you able to get somebody to help you out with

19   your mom?

20         PROSPECTIVE JUROR 42:  Yeah.  My wife can take her.

21   It's just a matter of finding somebody to help her load her in

22   the car.

23         THE COURT:  Okay.

24         PROSPECTIVE JUROR 42:  I guess she just have the

25   neighbor, I guess, make some arrangements.

1          I do have one more issue I want to ask.

2          THE COURT:  Sure.

3          PROSPECTIVE JUROR 42:  I don't drive at night.  So at

4     what time is normally these proceedings?

5          THE COURT:  We normally -- we should finish up by no

6     later than 6:00.  Is that okay?

7          PROSPECTIVE JUROR 42:  Yeah.  It's summer.  It's

8     daytime.

9          THE COURT:  And it stays light later in the summer.

10         If you're selected and the jury gets this case on

11    Thursday or Friday or any day for that matter, we are at the

12    mercy of the jury.  So the jury, you know, deliberates until --

13    until we get a verdict.  So I've had jurors that deliberated

14    for quite some time.  I've had jurors that deliberated for not

15    a lot of time.  I've had juries go out late in the afternoon

16    and go into the evening hours.  So that's just unpredictable.

17    I don't think -- it's hard to anticipate.

18         I say one thing, and then it never happens.  But, I

19    mean, I don't anticipate getting this case late in the day --

20    in the day.  I think if the jury -- if you were to serve on

21    this jury and the jury were to get the case and begin

22    deliberations, I don't think it would be, like, 5:00 in the

23    afternoon or anything like that, and it does stay lighter

24    later.

25         But we would probably go -- because this is a short

1    week, I'll try to go until 6:00 in the evening but not any

2    later than that.  That's okay?

3              **PROSPECTIVE JUROR 42**:  Yes.

4              **THE COURT**:  Okay.  All right.  Perfect.  Thank you,

5    sir.

6              Any questions for Mr. Canals before --

7              **MR. FELICETTA**:  No, Your Honor.

8              **MR. LASNETSKI**:  No, Your Honor.

9              **THE COURT**:  Okay.  All right.  Thank you.

10        (Prospective Juror 42 out at 1:51 PM.)

11             **THE COURT**:  Okay.  So were there any peremptories to

12   Juror Number 35, 37, and 42?

13             **MR. FELICETTA**:  No, Your Honor.

14             **MR. LASNETSKI**:  No, Your Honor.

15             **THE COURT**:  Okay.  So do you-all want to proceed with

16   12?  We have 12.

17             **MR. FELICETTA**:  We're ready to proceed.

18             **THE COURT**:  Okay.  And with the understanding -- go

19   ahead.

20             **MR. LASNETSKI**:  Yes, Your Honor.

21             **THE COURT**:  You're ready to proceed?  Okay.

22             These jurors have been here all day without lunch,

23   and so I want to give them an hour -- it's, like, 2:00 -- have

24   them come back, and we'll bring them back up at 3:00 and start

25   at 3:00.  Does that work?

1          **MR. FELICETTA:**  Very good, Your Honor.

2          **MR. LASNETSKI:**  Yes, Your Honor.

3          **THE COURT:**  All right.  And I'll just -- I'll bring

4    them all -- I'll let them go now, and we'll bring them up,

5    swear them, and just go straight in at 3:00.  So we'll send

6    them all out for lunch and have them come back.

7          **THE COURTROOM DEPUTY:**  Judge, can we just verify the

8    numbers of the jurors?

9          **THE COURT:**  4, 6, 7, 11, 15, 18, 20, 26, 30, 35, 37,

10   42.

11         **THE COURTROOM DEPUTY:**  Thank you, Judge.

12         **THE COURT:**  Okay.  All right.  Tell them all to be

13   back in an hour.  Tell them to be back at 3:00 -- no later than

14   3:00.  And then they can call off tomorrow.

15         **MR. FELICETTA:**  And, Judge, the only thing I'd ask,

16   then, for proceeding is if we can stay a little bit later today

17   if necessary to get through that first witness.

18         **THE COURT:**  That's fine.  We can stay till 6:00.

19         **MR. FELICETTA:**  Thank you.

20         **THE COURT:**  All right.  We'll see you back at 3:00.

21         (Recess at 1:54 PM until 3:02 PM.)

22         **THE COURT:**  All right.  Are we -- what I'll do is

23   we'll bring them in.  I'll ask if the parties accept this jury,

24   and you can tell me you do on the record, and then we'll swear

25   them, and I'll go into the preliminary instructions.

1    **MR. LASNETSKI:**  Your Honor, I do have one issue I

2    wanted to bring to the Court's attention.

3        **THE COURT:**  Okay.

4        **MR. LASNETSKI:**  I've been -- I was just notified that

5    there is body camera footage from a police officer that may

6    have taken some initial statements from witnesses, including

7    Ms. Joseph, who is about to testify.  It's my understanding

8    that they're driving this footage over right now.

9        But before I cross-examine the witness, I'm going to

10   have to be able to review that body camera footage, obviously,

11   to determine what -- you know, what was in it and what

12   statements she made.

13       **MR. FELICETTA:**  Regrettably, Your Honor, that is the

14   case.  Over the weekend I had one of the police witnesses, who

15   is not going to testify in this case, speak directly to defense

16   counsel about his role in this, and he brought to light for the

17   first time, to anyone's knowledge, that there was any body cam

18   footage.

19       We've inquired.  The agent has been able to confirm

20   that there is, in fact, body cam footage that the Orlando

21   police took.  For some reason it had never been uploaded to the

22   FBI.  They've downloaded it onto a disk.  Initially this

23   morning, they tried to send us a link to it during jury

24   selection.  That failed.  The efforts had failed to get the

25   link to provide the video.  So now they're driving a disk here.

1    They're proceeding in a police car right now to get it here as

2    quickly as possible.  It should be arriving in the next

3    five minutes or so.

4              Once it gets here, it's going to be uploaded to the

5    computer screen behind us, but we're going to need a short

6    recess between opening and the first witness for the parties to

7    be able to review this video.

8              THE COURT:  That's fine.  How long is it?

9              MR. FELICETTA:  It's just of one witness and her

10   interview, and I can't imagine it's very long, but I can't

11   speculate, Judge.  I don't know how long it is.

12             THE COURT:  So it's an interview of -- it's a video

13   of an interview of a witness?

14             MR. FELICETTA:  That's what I'm understanding.  And I

15   don't know if it's -- if this particular witness is even one of

16   the people who were interviewed on camera.  She was

17   interviewed, but I don't know if she was interviewed on camera.

18   So, I mean, there may not be one of her, but to the extent

19   there is one, we want to give them an opportunity to review

20   that.

21             THE COURT:  Okay.  So it's not a video of the

22   defendant?  It's a video of this witness's statement?

23             MR. FELICETTA:  Correct.

24             MR. LASNETSKI:  There may be videos of my client

25   because this is all coming from the body camera footage of an

1    Orlando Police Department officer.

2              **THE COURT:**  Got it.

3              **MR. LASNETSKI:**  So whoever he talked to -- and he

4    talked to each witness, including my client, I believe, or at

5    least observed him.  So that all may be on this body camera

6    footage.

7              **THE COURT:**  Okay.  All right.  We'll take a break

8    after openings so you-all can -- you-all can look at that.

9              Okay.  Let's bring them in.

10         (Selected venire members in at 3:07 PM.)

11                              *  *  *  *  *

12         (This concludes this excerpt.)

## CERTIFICATE OF REPORTER

I, HEATHER SUAREZ, RDR, CRR, FCRR, FPR-C, WA CCR, CA CSR, DO HEREBY CERTIFY that the foregoing is a correct transcript of the record of proceedings in the above-titled matter.

DATED this 20th day of March 2024.

Heather Suarez
Registered Diplomate Reporter
Certified Realtime Reporter
Federal Certified Realtime Reporter
Florida Professional Reporter-Certified #790
Washington Certified Court Reporter #23017624
California Certified Shorthand Reporter #14538

**CERTIFICATE OF REDACTION**

1

2

3          I, HEATHER SUAREZ, RDR, CRR, FCRR, FPR-C, WA CCR,

4    CA CSR, DO HEREBY CERTIFY that the foregoing is a true and

5    correct copy of the transcript originally filed with the clerk

6    of court on 03/20/2024 and incorporating redactions of personal

7    identifiers in accordance with Judicial Conference policy.

8

9    *Redacted characters appear as a black box in the transcript.*

10

11          DATED this 20th day of March 2024.

12

13    

14                        Heather Suarez
                   Registered Diplomate Reporter
15                   Certified Realtime Reporter
                 Federal Certified Realtime Reporter
16          Florida Professional Reporter-Certified #790
            Washington Certified Court Reporter #23017624
17          California Certified Shorthand Reporter #14538

18

19

20

21

22

23

24

25